Randall A. Peterman, ISB No. 1944
John C. Ward, ISB No. 1146
MOFFATT, THOMAS, BARRETT, ROCK &
    FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
rap@moffatt.com
tlm@moffatt.com

Elizabeth W. Walker, California State Bar No. 113545
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone (213) 896-6000
Facsimile (213) 896-6600
ewalker@sidley.com

Attorneys for Plaintiff Credit Suisse, as Agent for Lenders

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CREDIT SUISSE, a Swiss bank,<br><br>                Plaintiff,<br><br>vs.<br><br>JEAN-PIERRE BOESPFLUG, an individual; ALFREDO MIGUEL AFIF, an individual,<br><br>                Defendants. | Civil No. **1:08-CV-00139**<br><br>**COMPLAINT FOR BREACH OF WRITTEN GUARANTY** |



**COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 1**

COMES NOW Credit Suisse ("Plaintiff"), as Agent for Lenders (as defined herein), by and through its attorneys of record Moffatt, Thomas, Barrett, Rock & Fields, Chtd. and Sidley Austin LLP, and complain and allege against Defendants Jean-Pierre Boespflug and Alfredo Miguel Afif as follows:

## SUMMARY OF ACTION

1. This action arises out of a loan (the "Loan") in the amount of $250,000,000 obtained by Tamarack Resort LLC ("Borrower") from Plaintiff in May 2006 in connection with the refinance, development, and construction of the project known as Tamarack Resort, a master-planned upscale resort development and ski area located in the counties of Valley and Adams in the State of Idaho (the "Project"). The Loan is secured by, among other things, the real property on which the Project is situated and the improvements thereon, as well as other collateral.

2. As a condition to the making of the Loan, Defendants Jean-Pierre Boespflug and Alfredo Miguel Afif (collectively, "Guarantors") executed a Non-Recourse Guaranty ("Guaranty"). Pursuant to the Guaranty, Guarantors agreed unconditionally to guaranty to Plaintiff payment for any actual loss, costs, liability, damages or expenses (including reasonable attorneys' fees and disbursements), suffered or incurred by Plaintiff arising from, among other things, (i) any misappropriation or misapplication of funds by or on behalf of Borrower or its subsidiaries, (ii) the violation of certain single purpose entity requirements as set forth in the Credit Agreement (as defined below), (iii) additional indebtedness obtained by Borrower or its subsidiaries (except as permitted by the Credit Agreement), (iv) the transfer by Borrower or its subsidiaries to a third party of any right or interest in or to its or their property,

**COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 2**

(v) the voluntary placement of any lien on the Project in contravention of the Loan Documents (as defined below), and (vi) the failure to pay property taxes.

3. Borrower is in default under the Loan for, among other things, (i) the failure to make a scheduled payment of principal and interest in the amount of $4,855,510.27 due and payable on December 31, 2007, and (ii) the failure to comply with and cure numerous material financial covenant defaults. As a result of each of these financial covenant and monetary defaults, all unpaid principal and accrued interest under the Loan were declared immediately due and payable on February 20, 2008. To date, Borrower owes, and has failed to repay, the outstanding balance of the Loan in excess of $260,000,000, which constitutes an additional default under the Loan Documents. Accordingly, on March 11, 2008, Plaintiff filed a Complaint against Borrower seeking (i) foreclosure on the mortgages securing the Loan, and (ii) the appointment of a receiver and injunctive relief.

4. In addition, Plaintiff only recently discovered that Borrower, among other things, has (i) failed to deposit approximately $300,000-$400,000 in weekly gross revenue into an account in which Plaintiff has a security interest as required by the Credit Agreement and caused that revenue to be funneled into separate bank accounts which are not subject to Plaintiff's control, (ii) caused Borrower's subsidiaries (100% of whose membership interests were pledged to Plaintiff as additional collateral for the Loan) to merge with and into Borrower, (iii) permitted prohibited mechanics' liens totaling over $13 million to be filed against the Project, (iv) allowed the grant of a mortgage in excess of $780,000 (which is a prohibited encumbrance and transfer) to be recorded against the Project, and (v) failed to pay property taxes in excess of $7,000.

COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 3

5. Borrower's actions, as set forth in Paragraph 4, above, and as detailed below, have triggered Guarantors' liability to Plaintiff under the Guaranty. Guarantors, however, have failed to pay Plaintiff any amount pursuant to the Guaranty. As such, Plaintiff filed the instant Complaint seeking, among other things, all losses, costs, damages, and expenses suffered or incurred by Plaintiff arising from the occurrence of the events and/or conditions triggering Guarantors' liability under the Guaranty.

## THE PARTIES

6. Plaintiff Credit Suisse ("Plaintiff") is, and at all times relevant herein has been, a bank organized under the laws of Switzerland, doing business in New York, New York and, through its Cayman Islands Branch, registered with the Cayman Islands Monetary Authority. Pursuant to the Loan Documents, Plaintiff is the administrative and collateral agent for those lenders ("Lenders") which from time to time are parties to the Credit Agreement (as defined below). Pursuant to the Loan Documents, Lenders have directed Plaintiff, and Plaintiff is authorized, to maintain this action on behalf of Lenders.

7. Plaintiff is informed and believes, and based thereon alleges, that Defendant Jean-Pierre Boespflug is, and at all times relevant was, a citizen of the State of Idaho residing in the County of Valley, Idaho.

8. Plaintiff is informed and believes, and based thereon alleges, that Defendant Alfredo Miguel Afif is, and at all times relevant was, residing in the State of Idaho.

9. Plaintiff is informed and believes, and based thereon alleges, both Defendants Boespflug and Afif own beneficial interests in Borrower and/or Borrower's subsidiaries and play active roles and are actively involved in the management, operation, and development of the Project, which is located in the Counties of Valley and Adams, Idaho. In

**COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 4**

addition, both Defendants Boespflug and Afif have benefited financially from the operation and development of the Project.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000 and is between a foreign company doing business in the State of New York and individual residents of the State of Idaho.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the Project that is the subject of the Guaranty is located in counties of Valley and Adams, Idaho, and, upon information and belief, Defendants reside in Idaho.

## THE PROPERTY

12. Borrower is (i) the 100% fee simple owner of a portion of certain real property known as "Tamarack Resort" (the "Fee Property"), (ii) the tenant and holder of leasehold title in and to the ski hill and a portion of the golf course located at Tamarack Resort (the "State Leased Property"), (iii) the holder of the leasehold title to the golf course and related property (the "Golf Leased Property", and, collectively with the Fee Property and the State Leased Property, the "Borrower Real Property"), and (iv) the owner of all other Collateral (as defined in the Borrower Mortgage (as defined below) (collectively, the "Borrower Collateral")). The Borrower Real Property and Borrower Collateral are collectively referred to herein as the "Borrower Property".

13. Borrower subsidiaries Tamarack Whitewater Construction LLC ("TRC Whitewater") and Village Plaza Construction LLC ("TRC Village Plaza") collectively are (i) the

**COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 5**

100% fee simple owners of a portion of certain real property known as "Tamarack Resort" (the "TRC Whitewater/TRC Village Plaza Real Property"), and (ii) the owners of all other Collateral (as defined in the TRC Whitewater/TRC Village Plaza Mortgage (as defined below) (collectively, the "TRC Whitewater/TRC Village Plaza Collateral")). The TRC Whitewater/TRC Village Plaza Real Property and TRC Whitewater/TRC Village Plaza Collateral are collectively referred to herein as the "TRC Whitewater/TRC Village Plaza Property".

14. The Borrower Real Property, and the TRC Whitewater/TRC Village Plaza Real Property are collectively referred to herein as the "Real Property", which is legally described in Exhibit "A", attached hereto and by this reference incorporated herein. The Real Property, the Borrower Collateral, the TRC Whitewater/TRC Village Plaza Collateral, and any and all other collateral for the loan described in the Loan Documents (as defined below), are collectively referred to herein as the "Property."

## THE LOAN

15. On or about May 19, 2006, Borrower entered into that certain Credit Agreement, pursuant to which Borrower obtained the Loan in the initial principal amount of $250,000,000, for the purposes of (i) refinancing the existing indebtedness owed by Borrower to third party lenders, (ii) funding certain development and construction costs of the Project, and (iii) funding certain reserves, transaction costs, and repayment of accounts payable in connection with the Project. A true and correct copy of the Credit Agreement is attached hereto as Exhibit "B" and incorporated herein by this reference.

COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 6

16. To secure payment of the principal sum, interest thereon, and all other charges as provided for in the Credit Agreement, the following documents, among others, were executed and delivered to Plaintiff:

a. A Mortgage, Leasehold Mortgage, Security Agreement, Assignment of Rents and Leases and Financing Statement ("Borrower Mortgage") dated as of May 19, 2006, a true and correct copy of which is attached hereto as Exhibit "C," encumbering the Collateral (as defined in the Borrower Mortgage), including, but not limited to, the Borrower Property, which was recorded (i) with the County Recorder of Valley County, Idaho on May 19, 2006 as Instrument No. 308953, and (ii) with the County Recorder of Adams County, Idaho on May 22, 2006 as Instrument No. 111741;

b. A Mortgage, Security Agreement, Assignment of Rents and Leases and Financing Statement ("TRC Whitewater/TRC Village Plaza Mortgage", together with the Borrower Mortgage, sometimes hereinafter referred to collectively as the "Mortgages") dated May 19, 2006, a true and correct copy of which is attached hereto as Exhibit "D," encumbering the Collateral (as defined in the TRC Whitewater/TRC Village Plaza Mortgage), including, but not limited to, the TRC Whitewater/TRC Village Plaza Property, which was recorded with the County Recorder of Valley County, Idaho on May 19, 2006 as Instrument No. 308952; and

c. A Subsidiary Guaranty dated as of May 19, 2006 ("Subsidiary Guaranty"), a true and correct copy of which is attached hereto as Exhibit "E", by TRC Whitewater and TRC Village Plaza (collectively, two of the "Subsidiary Guarantors") and other subsidiaries of Borrower for the benefit of Plaintiff, pursuant to which the Subsidiary Guarantors unconditionally, absolutely and irrevocably guarantied Borrower's prompt and complete

COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 7

payment, observance, fulfillment and performance of all Guarantied Obligations (as defined in the Subsidiary Guaranty).

17. The Credit Agreement (as amended as set forth below), the Mortgages, the Subsidiary Guaranty, the Guaranty, and all other documents that evidence, govern or secure the Loan are referred to herein collectively as the "Loan Documents."

18. Lenders are now, and at all times material to this action have been, the lawful owners and holders of the beneficial interest under the Loan Documents and, pursuant to the Loan Documents, have directed and authorized Plaintiff to maintain this action on their behalf.

## THE GUARANTY

19. On or about May 19, 2006, Guarantors, for valuable consideration, made, executed and delivered the Guaranty to Plaintiff. A true and correct copy of the Guaranty is attached hereto as Exhibit "F" and incorporated herein by this reference.

20. Pursuant to Section 1 of the Guaranty, Guarantors agreed unconditionally to guaranty payment to Plaintiff for any actual loss, cost, liability, damages or expenses, including reasonable attorneys' fees and disbursements, arising from, among other things:

    a. Any misappropriation or misapplication of funds committed by or on behalf of Borrower or its Subsidiaries (as used herein, "Subsidiaries" shall have the same meaning as in the Credit Agreement) in contravention of the Loan Documents;

    b. Any violation of the single purpose entity requirements ("SPE Requirements") set forth in Section 5.16 of the Credit Agreement;

**COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 8**

  c. Any additional Indebtedness (as used herein, "Indebtedness" shall have the same meaning as in the Credit Agreement) obtained by Borrower or its Subsidiaries (except as permitted by the Credit Agreement);

  d. Any transfer in violation of Section 6.8 of the Credit Agreement;

  e. Any Lien (as used herein, "Lien" shall have the same meaning as in the Credit Agreement) which is voluntarily placed upon the Collateral or any portion thereof in contravention of the Loan Documents, where such Lien is not discharged and removed within 10 days after notice; and

  f. The failure to pay Taxes (as used herein, "Taxes" shall have the same meaning as in the Credit Agreement) assessed against the Property to the extent there were sufficient funds to pay the Taxes.

## OCCURRENCE OF TRIGGERING EVENTS UNDER GUARANTY

21. Plaintiff is informed and believes, and based thereon alleges, that on or around February 15, 2008 (and unbeknownst to Plaintiff), and in direct violation of the Loan Documents, the following Subsidiaries of Borrower -- 100% of whose member interests were pledged to Plaintiff as additional collateral for the loan -- were merged with and into Borrower: TRC Whitewater, TRC Village Plaza, Trillium Valley Construction LLC ("TRC Trillium"), Tamarack Resort Realty LLC, Tamarack Community Housing, LLC, Tamarack Video & Telecom LLC, Club at Tamarack, LLC, Lake Plaza, LLC, West Mountain Resort Rentals LLC, Clearwater Construction LLC, Heritage Construction LLC, Tamarack Millcreek Construction LLC, Village Plaza Retail LLC (the "Unauthorized Mergers"). The Unauthorized Mergers violated the covenants set forth in Sections 5.16(d), 5.16(f), 5.16(g), and 5.16(i) of the Credit Agreement.

**COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 9**

22. Beginning on or about February 12, 2008, and continuing until February 29, 2008, Plaintiff became aware for the first time that, between November 7, 2007 and February 25, 2008, mechanics' liens totaling in excess of $9 million were filed against certain portions of the Property.

23. By letter dated March 5, 2008, a true and correct copy of which is attached hereto as Exhibit "G," Plaintiff notified Guarantors that Guarantors are liable to Plaintiff for, among other things:

    a. Violations of the covenants contained in Section 5.16 of the Credit Agreement, by virtue of the Unauthorized Mergers;

    b. A transfer in violation of Section 6.8 of the Credit Agreement, by virtue of TRC Trillium's purported grant of a mortgage on a portion of the Property to Petra Incorporated, which mortgage was recorded on February 21, 2008 as Instrument No. 329398 in the official records of Valley County, Idaho;

    c. The voluntary placement of Liens on the Collateral and/or portions thereof in contravention of the Loan Documents (which Liens were not removed within 10 days after notice), by virtue of the filing of mechanics' liens encumbering the Property and totaling in excess of $9 million; and

    d. The cost of enforcement of the provisions of the Guaranty.

24. In addition, Plaintiff is informed and believes, and based thereon alleges, that since February 29, 2008, Borrower has failed (and continues to fail) to deposit approximately $300,000-$400,000 in weekly gross revenues into an account in which Plaintiff has a security interest as required by the Credit Agreement. Plaintiff is further informed and

COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 10

believes, and based thereon alleges, that Borrower's failure to deposit funds in the appropriate account is knowing and willful.

25. By letter dated March 20, 2008, a true and correct copy of which is attached hereto as Exhibit "H," Plaintiff notified Guarantors that:

    a. By failing to deposit the funds as required by the Credit Agreement, Borrower has misappropriated and/or misapplied funds in contravention of the Loan Documents, making Guarantors liable for damages resulting therefrom pursuant to Section 1(i)(b) of the Guaranty; and

    b. By causing and permitting the deed of trust in favor of Petra Incorporated to be recorded against the Property, additional Indebtedness was obtained by Borrower or its Subsidiaries, which additional Indebtedness is not permitted by Section 6.1 of the Credit Agreement, making Guarantors liable for damages resulting therefrom pursuant to Section 1(i)(f) of the Guaranty.

26. Finally, Plaintiff recently discovered that (i) since March 4, 2008, Borrower has permitted the filing of additional mechanics' liens totaling in excess of $4 million against certain portions of the Property, and (ii) Borrower is delinquent in paying over $7000 in property taxes with respect to the Property.

27. Plaintiff is informed and believes, and based thereon alleges, that the conduct described herein constitutes, among other things:

    a. The misappropriation or misapplication of funds pursuant to Section 1(i)(b) of the Guaranty;

    b. The violation of the SPE Requirements set forth in Section 5.16 of the Credit Agreement pursuant to Section 1(i)(e) of the Guaranty;

**COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 11**

c. Additional Indebtedness obtained by Borrower or its Subsidiaries (and not permitted by the Credit Agreement) pursuant to Section 1(i)(f) of the Guaranty;

d. A transfer in violation of Section 6.8 of the Credit Agreement pursuant to Section 1(i)(d) of the Guaranty;

e. The voluntary placement of Liens on the Collateral (and certain portions thereof) in contravention of the Loan Documents pursuant to Section 1(i)(i) of the Guaranty; and

f. The failure to pay Taxes pursuant to Section 1(i)(k) of the Guaranty.

28. Because of the continuing conduct described above, and pursuant to Section 7 of the Credit Agreement, the Requisite Lenders authorized Plaintiff in writing to commence the exercise of remedies under the Loan Documents.

## CLAIM FOR RELIEF

### (Breach of Written Guaranty)

29. Plaintiff realleges and incorporates herein by this reference Paragraphs 1 through 28 of this Complaint as if set forth herein.

30. On or about May 19, 2006, in exchange for the Loan and for other valuable consideration as described herein, Guarantors executed the Guaranty in favor of Plaintiff.

31. Pursuant to the Guaranty, Guarantors agreed, among other things, to unconditionally guaranty payment to Plaintiff of any actual loss, costs, liability, damage or expense (including reasonable attorneys' fees and disbursements), suffered or incurred by

COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 12

Plaintiff arising from the occurrence of the conditions and/or events set forth in Section 1, subsection (i), subparts (b), (d), (e), (f), (i), (j) and (k) of the Guaranty.

32. Plaintiff and Lenders have performed all of the promises, conditions and covenants on their part required to be performed under the Loan Documents, including under the Guaranty.

33. The conditions and/or events described in Section 1, subsection (i), subparts (b), (d), (e), (f), (i), (j) and (k) of the Guaranty have occurred and continue to occur.

34. Upon the occurrence of the conditions and/or events described in Section 1, subsection (i), subparts (b), (d), (e), (f), (i), (j) and (k), Guarantors were required to pay Plaintiff for all actual losses, costs, liability, damages, and expenses (including reasonable attorneys' fees and disbursements) resulted from the conditions and/or events described in Section 1, subsection (i), subparts (b), (d), (e), (f), (i), (j) and (k).

35. As a direct and proximate result of the occurrence of conditions and/or events described above, Plaintiff and Lenders have suffered (and will continue to suffer) actual loss and have incurred (and will continue to incur) costs, liability, damages, and expenses in an amount subject to proof at trial but in excess of $75,000.

36. Guarantors have not paid any amount to Plaintiff pursuant to the Guaranty.

37. Accordingly, Guarantors are in breach of the Guaranty and therefore is liable to Plaintiff for all loss, costs, liability, damage or expense (including reasonable attorneys' fees and disbursements) arising from the occurrence of the conditions and/or events and any additional damages resulted from this breach, in an amount as may be proven at trial.

**COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 13**

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

1.  For judgment against Defendants Jean-Pierre Boespflug and Alfredo Miguel Afif and damages in an amount to be proven at trial;

2.  For reasonable attorneys' fees and costs and disbursements pursuant to the Guaranty and all costs of suit, including reasonable attorneys fees, pursuant to applicable law;

3.  For prejudgment and post judgment interest pursuant to applicable law; and

4.  For such other and further relief as the Court may deem just and proper.

DATED this ___ day of March, 2008.

MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED

By _____
Randall A. Peterman -- Of the Firm
Attorneys for Plaintiff

COMPLAINT FOR BREACH OF WRITTEN GUARANTY - 14
LA1 1146648v.8