## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 09-03911-TLM |
| TAMARACK RESORT, LLC, ) | |
| ) | Involuntary Chapter 7 |
| Debtor. ) | |
| _____ ) | |

### MEMORANDUM OF DECISION
_____

An involuntary petition was filed against Tamarack Resort, LLC ("Tamarack")[1] by Banc of America Leasing & Capital, LLC ("BALC"), Petra Incorporated ("Petra"), Hobson Fabricating Corporation ("Hobson"), and TMG/DP Miller, LLC ("TMG"). *See* Doc. No. 1 ("Petition"). Tamarack Municipal Association, Inc. ("TMA") joined in the Petition. Doc. No. 118.[2]

Tamarack answered and contested the Petition, and an evidentiary hearing was held on February 24, 2010. *See* Fed. R. Bankr. P. 1013(a), 1018. The parties submitted written closing arguments and reply briefs, and the matter was taken under advisement on March 5. Having considered the record, the legal arguments

_____

[1] Tamarack is a Delaware limited liability company organized for the purpose of managing the development of a master-planned, upscale resort and real estate development in Valley County, Idaho (the "Resort").

[2] BALC, Petra, Hobson, TMG, and TMA will be referred to collectively as the "Petitioning Creditors."

MEMORANDUM OF DECISION - 1

of the parties, and applicable authorities, the Court resolves the several issues presented, and determines that an order for relief will be entered against Tamarack under chapter 7.[3]

**DISCUSSION AND DISPOSITION**

The question of whether an order for relief should be entered against Tamarack is circumscribed by the Code, Bankruptcy Rules, and case law regarding the filing of involuntary petitions.[4] Under § 303, a court is tasked with determining whether an involuntary case was properly commenced and, if the petition is timely contested, whether an order for relief should be entered because the alleged debtor is generally not paying its debts as they become due. *See* § 303(a), (b) & (h).

These issues are narrowed here by the absence of any assertion by Tamarack that it is generally paying its debts as they become due. Indeed, the entirety of the evidence presented at hearing indicated that Tamarack was not paying its debts.

Tamarack instead alleges that the number of Petitioning Creditors meeting the requirements of § 303(b)(1) is inadequate to commence this involuntary case.

---

[3] This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052, 9014.

[4] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S. Code §§ 101-1532.

MEMORANDUM OF DECISION - 2

Tamarack therefore asks the Court to dismiss the Petition.[5]  Accordingly, this Court limits its analysis to whether the requisite number of Petitioning Creditors satisfy the elements of § 303(b)(1), and those matters necessarily related thereto.[6]

### A.    Eligibility Requirements of § 303(b)(1)

As Tamarack has more than 12 creditors, the requirements of § 303(b)(1) must be satisfied for an involuntary case to be commenced against Tamarack.  *See* § 303(b)(1) & (2).  Section 303(b)(1) provides:

> (b) An involuntary case against a person[7] is commenced by the

---

[5]  Tamarack also asks, should the Petition be dismissed, that the Court award attorney's fees under § 303(i)(1) and impose punitive damages under § 303(i)(2)(B).  Because the Court will grant the Petition and enter an order for relief, Tamarack is not entitled to attorney's fees or punitive damages under § 303(i), and no discussion of those subjects is warranted.

[6]  One collateral matter can be summarily addressed.  Petra, Hobson, and TMG argued, in replying to Tamarack's Answer to the Petition, that as a procedural matter Tamarack was required to file a list of creditors with its Answer pursuant to Fed. R. Bankr. P. 1003, and that it failed to do so.  While Petra, Hobson, and TMG did not pursue this argument further in either their pretrial briefing or at the hearing, to the extent that it remains before the Court it is rejected.

On its face, Rule 1003(b) requires a debtor to file a list of creditors with its answer *only* where the involuntary petition was filed by fewer than three creditors and the debtor contends that more than 12 creditors exist.  If there are more than three petitioners, as there are here, Rule 1003(b) does not apply, and the question of how much opportunity to afford other creditors to join in the petition under § 303(c) is left to the Court's discretion.  *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1062 (9th Cir. 2002).

Tamarack's other creditors had ample opportunity to exercise their joinder rights under § 303(c).  Tamarack served a copy of its Answer on no less than 23 non-petitioning creditors, all of whom had already appeared in this case.  Considering these appearances and service, and the approximately forty-day period between the filing of Tamarack's Answer and the February 24, 2010 hearing, this Court is confident that creditors were afforded adequate opportunity to join in the Petition.  Indeed, one creditor, TMA, did so.

[7]  A "person" is defined in § 101(41) as inclusive of business entities, such as Tamarack. *See Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 717 (9th Cir. BAP 2004).

MEMORANDUM OF DECISION - 3

> filing with the bankruptcy court of a petition under chapter 7 or 11 of this title –
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.]

Therefore, an involuntary case will be commenced against Tamarack if the claims of at least three of the five Petitioning Creditors are not contingent as to liability or the subject of a bona fide dispute as to liability or amount, and if those noncontingent, undisputed claims aggregate at least $13,475$^8$ in unsecured amount.

### 1.    Not contingent as to liability

The Ninth Circuit Bankruptcy Appellate Panel has stated that in the context of § 303(b), "where all the facts giving rise to liability are in existence at the time of the filing of the petition, and no future occurrence is required in order to establish debtor's liability, the claim is not contingent as to liability." *In re Dill*, 30 B.R. 546, 549 (9th Cir. BAP 1983) (citing *In re New Mexico Props., Inc.*, 18 B.R. 936 (Bankr. D.N.M. 1982)), *aff'd sub nom. Semel v. Dill (In re Dill)*, 731 F.2d 629 (9th Cir. 1984).  Tamarack does not appear to contend that the claims asserted by the Petitioning Creditors are contingent.  Moreover, the evidence

---

[8]  This is the amount applicable to the Petition here.  The Code provides for adjustment of this dollar amount by the Judicial Conference of the United States at three-year intervals, *see* § 104, and the figure in § 303(b) will change to $14,425 on April 1, 2010.

MEMORANDUM OF DECISION - 4

indicates that all events giving rise to Tamarack's alleged liability to the Petitioning Creditors occurred prior to the petition date. Therefore, the Court finds that the claims of each of the Petitioning Creditors are not contingent as to liability.

### 2. Not the subject of a bona fide dispute as to liability or amount

The burden is on the Petitioning Creditors to make a *prima facie* showing that their claims are not the subject of a bona fide dispute as to liability or amount. *Vortex*, 277 F.3d at 1064 (citing *In re Rubin*, 769 F.2d 611, 615 (9th Cir. 1985)); *In re Mountain Dairies, Inc.*, 372 B.R. 623, 633-34 (Bankr. S.D.N.Y. 2007) (interpreting § 303(b) as amended in 2005). Once the Petitioning Creditors meet their burden, the burden shifts to Tamarack to demonstrate that a bona fide dispute exists as to either liability or amount. *See Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir. 2004); *Key Mechanical Inc. v. BDC 56 LLC (In re BDC LLC)*, 330 F.3d 111, 118 (2d Cir. 2003); *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir. 1991).

The term "bona fide dispute" is not defined by the Bankruptcy Code. However, the Ninth Circuit has adopted a standard that requires the Court to "determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt." *Vortex*, 277 F.3d at 1064 (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)). Under this standard, "if there is a bona fide dispute

MEMORANDUM OF DECISION - 5

as to either the law or the facts, then the creditor does not qualify and the petition must be dismissed." *Busick*, 831 F.2d at 749 (quoting *In re Lough*, 57 B.R. 993, 997 (E.D. Mich. 1986)). Because the standard is an objective one, a debtor's subjective intent or belief is irrelevant, and the mere or conclusory denial of a claim's validity or amount is not sufficient to create a bona fide dispute. *See BDC 56 LLC*, 330 F.3d at 118; *Rimell*, 946 F.2d at 1365. Further, "the statute does not require the court to determine the outcome of any dispute, only its presence or absence. Only a limited analysis of the claims at issue is necessary." *Busick*, 831 F.2d at 749 (quoting *Matter of Busick*, 65 B.R. 630, 637 (N.D. Ind. 1986)).[9]

The primary purpose of the § 303(b) eligibility requirements is to prevent a creditor from using the involuntary petition as a club to coerce a debtor to pay debts even when the debtor's reason for not paying is a legitimate dispute as to its liability. *See Lough*, 57 B.R. at 996 (quoting 130 CONG. REC. S7618 (daily ed. June 19, 1984) (comments of Sen. Baucus)).

### a. Tamarack Municipal Association

Tamarack Municipal Association is an Idaho non-profit corporation which was formed to act as a type of homeowners' association for the Resort community. Michael Drury, an employee of TMA, testified that as owner of real property at the

---

[9] Because the inquiry is so limited, if the Court were to determine that there is a bona fide dispute, its discussion ought not be construed as an indication of how the Court would resolve that dispute. *See Lough*, 57 B.R. at 997.

MEMORANDUM OF DECISION - 6

Resort, Tamarack owes TMA $666,933.32 for three quarters of unpaid assessment invoices. *See* Ex. 603. Tamarack has not disputed this liability, nor the amount TMA claims it is owed for the unpaid assessments. The Court finds that TMA's claim is unsecured, and is not subject to a bona fide dispute as to liability or amount.

### b.    Hobson Fabricating

Hobson is a mechanical contractor, specializing in metal fabrication. It has consistently held a valid Idaho Contracting Business License since January 1, 2006. *See* Exs. 400-404.[10] In 2007 and 2008, Hobson provided snow removal and temporary heat services at the Trillium Valley area of the Resort at the request and authorization of Tamarack. *See* Exs. 405 and 408. Hobson rendered regular billings to Tamarack for its services. While Tamarack paid a portion of the billings, it did not pay Hobson in full. On April 24, 2008, Hobson filed and recorded in Valley County, Idaho materialmen liens on certain real property lots in the Resort development, totaling $32,666.25, for its unpaid billings. *See* Exs. 406

---

[10] Tamarack has leveled a general challenge against the claims of those Petitioning Creditors who qualify as "contractors" under the Idaho Contractor Registration Act, Idaho Code §§ 54-5201 to -5219. The Act makes it unlawful, as of January 1, 2006, for any person to engage in the business of, or hold himself out as, a contractor without being registered with the Idaho contractors board. *See* Idaho Code § 54-5204. As penalties for failing to register, the Act denies an unregistered contractor, who is not otherwise exempt, from asserting his right to place a lien upon real property under the Idaho mechanics and materialmen lien statute, *see* Idaho Code § 54-5208, and precludes a contractor from bringing or maintaining any action in any court of Idaho for the collection of compensation for work performed while the contractor was not registered, *see* Idaho Code § 54-5217(2). As to Hobson, the challenge fails.

MEMORANDUM OF DECISION - 7

and 407. Tamarack has not disputed its contractual liability on, or the amount of, these unpaid bills. Hobson's claim for its unpaid billings is therefore not subject to bona fide dispute.

While Hobson's $32,666.25 contract claim is secured by a mechanics lien, the state court, on summary judgment, adjudicated that lien to be junior and subordinate to Credit Suisse's mortgages on Tamarack's property. Hobson has asserted, and Tamarack does not deny, that Credit Suisse's mortgages will consume all of the equity in Tamarack's property, rendering Hobson's lien of no value and making its $32,666.25 claim wholly unsecured.

### c. Petra

Petra is an Idaho corporation engaged in the business of general contracting and construction management. It has held a valid Idaho Contracting Business License continuously since November 22, 2005. *See* Exs. 300-305.[11] Between October 2003 and November 2008, Petra provided materials and general contracting and construction management services to Tamarack and other related entities in connection with the building of various facilities and structures on the the Resort property. *See generally* Exs. 306-320. Over time, Petra billed Tamarack a total of $46,090,209.25 for work performed and services provided.

---

[11] To the extent Tamarack asserts a dispute to the claim of Petra based on contractor registration, *see supra* note 10, the Court finds it is not well taken. The license was obtained prior to the January 1, 2006 effective date of the registration requirement.

MEMORANDUM OF DECISION - 8

*See* Ex. 306. As of the hearing date, Tamarack had paid Petra all but $1,227,810.26 of that amount, which with accrued and unpaid interest of $335,624.12 totals $1,563,434.38. *See* Ex. 320. To secure this unpaid obligation, Petra filed and recorded mechanics liens on certain real property owned by Tamarack. *See* Exs. 326-330.

Tamarack contends that Petra's claim is the subject of a bona fide dispute as to liability or amount on three separate grounds. The Court is unpersuaded.

### i. The "other entities" defense

Tamarack first asserts that there is a bona fide dispute as to liability because a number of the contracts upon which Petra bases its claim were entered into with entities other than Tamarack, *i.e.*, with Trillium Valley Construction, LLC ("Trillium Valley") and Tamarack Whitewater Construction, LLC ("Tamarack Whitewater").

In response, Petra has asked the Court to take judicial notice of certain matters under Federal Rule of Evidence 201. *See* Doc. Nos. 141 (motion), 141-1 (affidavit).[12] Petra seeks, first, that notice be taken of certain public documents – two certified copies of filings made with the Delaware Secretary of State, Division of Corporations, and of some information and documents Petra obtained from the

---

[12] Though Petra's request was filed after the hearing concluded, Fed. R. Evid. 201(f) provides that "[j]udicial notice may be taken at any stage of the proceeding." The Court also provided Tamarack the opportunity to respond to the request, as contemplated by Fed. R. Evid. 201(e). *See* Doc. No. 145. It has considered Tamarack's objection, Doc. No. 146.

MEMORANDUM OF DECISION - 9

Idaho Secretary of State's website.[13]  Second, Petra seeks that judicial notice be taken of comments made by a Tamarack attorney on March 4, 2010, in the state court litigation.

The Court will grant the request and take judicial notice of the certificates from the Delaware Secretary of State, which reflect the merger of both Trillium Valley and Tamarack Whitewater into Tamarack as the "surviving LLC" in February, 2008.  *See* Doc. No. 141-1 at 8-13.  Such certified public documents qualify as "sources whose accuracy cannot reasonably be questioned" as required by Fed. R. Evid. 201(b), and have provided the basis for the taking of judicial notice by other courts in this Circuit.  *See*, *e.g.*, *Smelt v. County of Orange*, 447 F.3d 673, 676 n.4 (9th Cir. 2006); *County of Fresno v. Golden State Capital Corp. (In re Golden State Capital Corp.)*, 317 B.R. 144, 148 n.4 (Bankr. E.D. Cal. 2004).

The Court will not grant the request to take judicial notice of the information Petra "obtained from the Idaho Secretary of State website."  Doc. No. 141-1 at 3, 14-17.  While the information proffered appears legitimate, it lacks the certification the Delaware documents contain.  *Cf.* Fed. R. Evid. 902(4).  In any event, these Idaho documents – which allegedly reflect the cancellation of

---

[13] Tamarack's brief supporting its objection to judicial notice, Doc. No. 147, repeatedly casts the issue presented as whether the Court can take judicial notice "of [Tamarack's] successor liability."  This is inaccurate.  Judicial notice is requested of the documents themselves; their significance and probative value, and the legal conclusions to be drawn from those documents and the rest of the evidentiary record is a separate matter.

MEMORANDUM OF DECISION - 10

registration of Trillium Valley and Tamarack Whitewater as LLC entities in Idaho in March, 2008 – are superfluous to the Delaware documents insofar as the issues before the Court are concerned.[14]

The Court will not grant the request to take judicial notice of the alleged statements of Tamarack's counsel in state court as reported by Petra's counsel, as the same do not constitute undisputable adjudicative facts within the scope of Fed. R. Evid. 201.

The Delaware documents establish that, in February, 2008, Trillium Valley and Tamarack Whitewater merged into Tamarack, which was left as the surviving LLC. When those entities were merged, all of the debts and liabilities of Trillium Valley and Tamarack Whitewater attached to Tamarack. *See* Del. Code Ann. tit. 6, § 18-209.[15] Thus, Petra may pursue and enforce its claims against Tamarack on contracts entered into with Trillium Valley and Tamarack Whitewater to the same extent as if Tamarack had entered into the contracts. *See id.*

### ii.    The note/satisfaction defense

Tamarack further argues that a promissory note executed by Trillium Valley for payment of the $780,161.89 Tamarack owed Petra for work on an area of the

---

[14] Merger of the entities into Tamarack under Delaware law is sufficient for purposes of this Decision, and whether Trillium Valley and Tamarack Whitewater also cancelled their registration in Idaho is inconsequential.

[15] Tamarack, Trillium Valley, and Tamarack Whitewater are, or were, all Delaware limited liability companies. *See* Exs. 310, 312, & 313.

MEMORANDUM OF DECISION - 11

Resort referred to by the parties generally as the Mid Mountain Restaurant, Ex. 322, which note was secured by mortgages on real property owned by Trillium Valley, Ex. 323, represented a partial satisfaction of Tamarack's debt to Petra, thereby putting the amount of Petra's claim against Tamarack in dispute.

With respect to this argument, the merger under Delaware law previously described results in any debt Trillium Valley incurred on the promissory note now being an obligation of Tamarack. Secondly, even if the note did constitute an agreement by a third party (Trillium Valley) to pay Tamarack's debt to Petra, and assuming that agreement and independent liability somehow survived the merger, no payment was ever made on the note, nor has Petra been able to foreclose its interest, if any, in the mortgaged properties.[16] Therefore, Tamarack's original debt was never satisfied, to any extent. *See Jones v. Whiteley*, 736 P.2d 1340, 1344 (Idaho Ct. App. 1987) (underlying debt is not discharged until the accord is satisfied); s*ee also* Idaho Code § 28-3-310 (providing that a claim is not discharged unless the claimant obtains payment of the negotiable instrument tendered in satisfaction of the claim).

### iii. The stipulation defense

A third argument Tamarack raises regarding Petra is that a stipulation

---

[16] Jerrold Franks, owner and CEO of Petra, testified that he later discovered that at the time the note and mortgage were executed, the subject properties were already encumbered by Tamarack's single largest creditor, Credit Suisse.

MEMORANDUM OF DECISION - 12

entered into by Petra and Credit Suisse earlier in this involuntary bankruptcy case, Doc. No. 86, evidences a bona fide dispute as to the amount of Petra's claim. In paragraph 4 of the subject stipulation, Credit Suisse and Petra agreed that:

> (a) the Petra Lien is second and subordinate to the Credit Suisse Mortgages; (b) the amount of the Petra Lien shall not be determined by Judge Owen in the State Court Litigation; and (c) the amount of the Petra Lien shall be determined by an arbitrator, to be chosen by Credit Suisse and Petra, whose decision regarding the amount of the Petra Lien shall be final between Credit Suisse and Petra . . . .

Doc. No. 86 at 3. While the stipulation suggests a lingering dispute between Credit Suisse and Petra concerning the value of Petra's *lien*, which could require arbitration, it does not preclude this Court from finding that Petra's *claim* against Tamarack is not subject to a bona fide dispute. The Court rejects Tamarack's conclusory assertion that "the amount of the Petra lien is in fact the amount that Petra is owed." *See* Doc. No. 137 at 11. Petra's "claim" against Tamarack consists of its "right to payment," whether secured or unsecured, for work it performed under its contracts with Tamarack and with the entities that have since merged into Tamarack. *See* § 101(5)(A). Petra's contract claim exists independent of the question of any lien, *i.e.*, security, Petra may have for that claim.

However, the amount of Petra's lien has relevance to whether, and if so to what extent, Petra's noncontingent, undisputed claim is unsecured. Indeed, Petra, by its stipulation with Credit Suisse, appears to assert that its lien has at least some

MEMORANDUM OF DECISION - 13

value – to be determined through arbitration – despite conceding that the lien is second to Credit Suisse's mortgages. *See* Doc. No. 86. Thus, on the record before it, it is impossible for the Court to determine with accuracy the extent to which Petra's claim is an unsecured claim.

There is no objective basis for finding Petra's claim is subject to a bona fide dispute as to liability or amount. Like TMA and Hobson, Petra holds a noncontingent, undisputed claim against Tamarack. The first two requirements of § 303(b)(1) have been satisfied. The Court further finds that the unsecured claims of TMA, Hobson, and Petra – when aggregated – are more than $13,475, as discussed in the following section.[17]

### 3. The aggregated amount of the unsecured claims of TMA, Hobson, and Petra exceeds $13,475

Because of its inability to ascertain the value of Petra's lien and, thus, the unsecured portion of Petra's claim, the Court refrains from including the amount of Petra's claim to determine whether the $13,475 threshold of § 303(b)(1) has been met. However, this is not fatal to the Petition. Section 303(b)(1) does not require that the unsecured claim of any one petitioning creditor be of a prescribed amount. Rather, it requires only that the *total* unsecured claims of the petitioning creditors be at least $13,475. Accordingly, courts have held that even a fully secured

---

[17] Because the Court has concluded these three creditors meet the eligibility requirements of § 303(b)(1), it need not, and does not, address whether the claims of TMG and BALC are subject to a bona fide dispute.

MEMORANDUM OF DECISION - 14

creditor may be a petitioning creditor under § 303(b)(1), provided the creditor holds a noncontingent, undisputed claim, and provided the other petitioning creditors' noncontingent, undisputed, unsecured claims aggregate at least $13,475. *See*, *e.g.*, *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 49 (3d Cir. 1988); *CC Britain Equities, LLC v. Allen-Main Assocs. Ltd. P'ship (In re Allen-Main Assocs. Ltd. P'ship)*, 223 B.R. 59, 61 (2d Cir. BAP 1998); *In re Everett*, 178 B.R. 132, 142 (Bankr. N.D. Ohio 1994); *In re Knoth*, 168 B.R. 311, 315-16 (Bankr. D.S.C. 1994).[18]

As noted above, Petra's claim is noncontingent and undisputed. The noncontingent, undisputed, unsecured claims of TMA and Hobson total $699,599.57, well above the amount required by § 303(b)(1). Consequently, the status of Petra's claim (whether unsecured, partially secured, or secured) is irrelevant. The Court finds that the noncontingent, undisputed, unsecured claims of TMA, Hobson, and Petra total more than the requisite $13,475.

**CONCLUSION**

Petitioning Creditors have shown that TMA, Hobson, and Petra hold

---

[18] As one legal treatise notes, had Congress intended to exclude creditors holding secured claims from being petitioning creditors it would have done so, just as it did in § 303(c) by specifically providing that only creditors "holding an *unsecured* claim" may join in an involuntary petition after the petition is filed. *See* 2 Collier on Bankruptcy ¶ 303.12[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009); *see also Egebjerg v. Anderson (In re Egebjerg)*, 574 F.3d 1045, 1050 (9th Cir. 2009) (presuming that if Congress includes particular language in one section of a statute but omits it in another, it acted intentionally in that exclusion).

MEMORANDUM OF DECISION - 15

noncontingent, undisputed claims aggregating at least $13,475 in unsecured liabilities.  The Court further concludes that Tamarack is generally not paying its debts as they become due.  An order for relief will be entered against Tamarack under chapter 7 of the Bankruptcy Code.

DATED: March 17, 2010

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 16