JEFFREY M. WILSON ISB No. 1615
WILSON & McCOLL
420 W. Washington
P.O. Box 1544
Boise, Idaho 83701
Telephone: 208-345-9100
Facsimile: (208) 384-0442

Attorneys for Creditor **GE CAPITAL CORPORATION**

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | | |
|---|---|---|
| In re: | ) | Case No.: 09-03911-TLM |
| | ) | |
| TAMARACK RESORT, LLC, | ) | MOTION FOR RELIEF FROM |
| | ) | AUTOMATIC STAY AND |
| Debtor. | ) | NOTICE TO DEBTOR |
| | ) | |

COMES NOW **GE CAPITAL CORPORATION,** a secured creditor, and pursuant to 11

U.S.C. § 362, respectfully moves this Court for its Order granting relief to this Creditor from the

effect of the automatic stay existing by virtue of 11 U.S.C. § 362(a) on the collateral hereinafter

described, by annulling, modifying, or otherwise terminating the automatic stay so as to allow

this Creditor to enforce its rights in certain collateral. In support of this Motion, this Creditor

represents as follows:

1. On November 1, 2004, GENERAL ELECTRIC CAPITAL CORPORATION entered

into a certain Master Lease Agreement (hereinafter "Agreement"), Lease Schedule 4318169-001,

with Debtor TAMARACK RESORT, LLC. To secure the payments required by the Agreement,

Debtor executed a security agreement covering the below described leased equipment. The

terms of the security agreement provide, in part, that GENERAL ELECTRIC CAPITAL

CORPORATION was granted a security interest in certain personal property therein described.

Pursuant to the statutes of the State of Idaho, GENERAL ELECTRIC CAPITAL

CORPORATION perfected its security interest in the leased equipment. The leased equipment

consists of the following:

*2 E-Workman, Serial #240000193 and #240000133, along with all its accessories.*

*1 Multipro 5700D, Serial #240000352, along with all its accessories.*

A true and correct copy of the Agreement executed by said Debtor is attached hereto and made a part hereof.

2. The Debtor does not have any equity in the leased equipment. Notwithstanding that fact, however, the Debtor has not provided adequate protection to GENERAL ELECTRIC CAPITAL CORPORATION for its interest in (if any) or its use of (if any) GENERAL ELECTRIC CAPITAL CORPORATION's leased equipment; nor has debtor assumed such lease.

3. As of the date of filing of this Motion, there was due, owing and unpaid upon the Agreement, the sum of $1,046.83 with interest accruing thereafter at the rate of 18% per annum. The Debtor is currently in arrears per the Agreement in the sum of $1,046.83 without including late fees. The leased equipment has a value of approximately $6,000.00. The Debtor's Bankruptcy was filed on December 11, 2009.

4. On November 1, 2004, GENERAL ELECTRIC CAPITAL CORPORATION entered into a certain Master Lease Agreement (hereinafter "Agreement"), Lease Schedule 4318169-003, with Debtor TAMARACK RESORT, LLC. To secure the payments required by the Agreement, Debtor executed a security agreement covering the below described leased equipment. The terms of the security agreement provide, in part, that GENERAL ELECTRIC CAPITAL CORPORATION was granted a security interest in certain personal property therein described. Pursuant to the statutes of the State of Idaho, GENERAL ELECTRIC CAPITAL CORPORATION perfected its security interest in the leased equipment. The leased equipment consists of the following:

MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE TO DEBTOR - 2

*Hover Mowers, Serial #7983 and #8454, along with all its accessories*

*Reciprocators, Serial #201 and 194, along with all its accessories*

*Express dual Reel Grinder, Serial #16258, along with all its accessories*

*Rapid Racer, Serial #RF1000, along with all its accessories*

*Rotary Blade Sharpener, Serial #109, along with all its accessories*

*Golf Lift, Serial #GL-9, along with all its accessories*

*Material Handler, Serial #16163, along with all its accessories*

*Quick Pass, Serial #QP300, along with all its accessories*

*Anglemaster BedKnife, Serial #16271, along with all its accessories.*

A true and correct copy of the Agreement executed by said Debtor is attached hereto and made a part hereof.

5. The Debtor does not have any equity in the leased equipment. Notwithstanding that fact, however, the Debtor has not provided adequate protection to GENERAL ELECTRIC CAPITAL CORPORATION for its interest in (if any) or its use of (if any) GENERAL ELECTRIC CAPITAL CORPORATION's leased equipment; nor has debtor assumed such lease.

6. As of the date of filing of this Motion, there was due, owing and unpaid upon the Agreement, the sum of $23,305.00, with interest accruing thereafter at the rate of 18% per annum. The Debtor is currently in arrears per the Agreement in the sum of $7,862.75 without including late fees. The leased equipment has a value of approximately $30,000.00. The Debtor's Bankruptcy was filed on December 11, 2009.

7.    On August 2, 2005, GENERAL ELECTRIC CAPITAL CORPORATION entered into a certain Master Lease Agreement (hereinafter "Agreement"), Lease Schedule 4318169-004, with Debtor TAMARACK RESORT, LLC.  To secure the payments required by the Agreement, Debtor executed a security agreement covering the below described leased equipment.  The terms of the security agreement provide, in part, that GENERAL ELECTRIC CAPITAL CORPORATION was granted a security interest in certain personal property therein described. Pursuant to the statutes of the State of Idaho, GENERAL ELECTRIC CAPITAL CORPORATION perfected its security interest in the leased equipment.  The leased equipment consists of the following:

*Workman, Serial #250000217, along with all its accessories*

*Workman, Serial #250000220, along with all its accessories*

*Workman, Serial #250000216, along with all its accessories*

*Workman, Serial #250000219, along with all its accessories*

*Workman, Serial #250000230, along with all its accessories*

*Workman, Serial #250000172, along with all its accessories*

*Workman, Serial #250000173, along with all its accessories*

*Grounds Master, Serial #250000255, along with all its accessories*

*Grounds Master, Serial #250000196, along with all its accessories*

*Grounds Master, Serial #250000994, along with all its accessories*

*Grounds Master, Serial #250000257, along with all its accessories*

*Trans Pro Trailer, Serial #250000393, along with all its accessories*

*Trans Pro Trailer, Serial #250000386, along with all its accessories*

*Trans Pro Trailer, Serial #250000387, along with all its accessories*

MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE TO DEBTOR - 4

*Trans Pro Trailer, Serial #250000388, along with all its accessories*

*Sand Pro, Serial #250000421, along with all its accessories*

*Greensmaster, Serial #250000335, along with all its accessories*

*Greensmaster, Serial #250000328, along with all its accessories*

*Tri Roller Kit, Model #O4495, along with all its accessories*

*Heavy Duty (2), Serial #22177. along with all its accessories*

*Debris Blower, Serial #250000133, along with all its accessories*

*Vicon Spreader, Serial #41258, along with all its accessories*

*Thatching Reels, Serial #250000785, along with all its accessories*

*Reelmaster, Serial #250000221, along with all its accessories*

*Blade Cutting, Serial #250003609, along with all its accessories*

*Blade Cutting, Serial #250003784, along with all its accessories*

*Blade Cutting, Serial #250003785, along with all its accessories*

A true and correct copy of the Agreement executed by said Debtor is attached hereto and made a part hereof.

8. The Debtor does not have any equity in the leased equipment. Notwithstanding that fact, however, the Debtor has not provided adequate protection to GENERAL ELECTRIC CAPITAL CORPORATION for its interest in (if any) or its use of (if any) GENERAL ELECTRIC CAPITAL CORPORATION's leased equipment; nor has debtor assumed such lease.

9. As of the date of filing of this Motion, there was due, owing and unpaid upon the Agreement, the sum of $54,537.96, with interest accruing thereafter at the rate of 18% per annum. The Debtor is currently in arrears per the Agreement in the sum of $27,135.56 without

including late fees.   The leased equipment has a value of approximately $110,000.00.   The Debtor's Bankruptcy was filed on December 11, 2009.

10.     On October 25, 2005, GENERAL ELECTRIC CAPITAL CORPORATION entered into a certain Master Lease Agreement (hereinafter "Agreement"), Lease Schedule 4318169-005, with Debtor TAMARACK RESORT, LLC.  To secure the payments required by the Agreement, Debtor executed a security agreement covering the below described leased equipment.  The terms of the security agreement provide, in part, that GENERAL ELECTRIC CAPITAL CORPORATION was granted a security interest in certain personal property therein described.  Pursuant to the statutes of the State of Idaho, GENERAL ELECTRIC CAPITAL CORPORATION perfected its security interest in the leased equipment.  The leased equipment consists of the following:

*Toro Bell Trailers (3), Serial #GR1600, along with all its accessories*

*Toro Air Drag, along with all its accessories*

*Greensmaster, Serial #250000594, along with all its accessories*

*Greensmaster, Serial #250000690, along with all its accessories*

*Greensmaster, Serial #250000589, along with all its accessories*

*Greensmaster, Serial #250000306, along with all its accessories*

*Greensmaster, Serial #250000604, along with all its accessories*

*Greensmaster, Serial #250000691, along with all its accessories*

*Greensmaster, Serial #250000605, along with all its accessories*

*Greensmaster, Serial #250000624, along with all its accessories*

*Greensmaster, Serial #250001159, along with all its accessories*

*Greensmaster, Serial #250001202, along with all its accessories*

MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE TO DEBTOR - 6

*Workman, Serial #250000493, along with all its accessories*

*Workman, Serial #250000236, along with all its accessories*

*Workman, Serial #250000269, along with all its accessories*

*Workman, Serial #250000268, along with all its accessories*

*Workman, Serial #250000216, along with all its accessories*

*Workman, Serial #250000211, along with all its accessories*

*Procore, Serial #250000182, along with all its accessories*

*Procore, Serial #250000852. along with all its accessories*

*Reelmaster, Serial #250000538, along with all its accessories*

*Reelmaster, Serial #250000631, along with all its accessories*

*Sandpro, Serial #250000589, along with all its accessories*

*Sandpro, Serial #250000297, along with all its accessories*

*Hover Mower, Serial #1908589, along with all its accessories*

*Hover Mower, Serial #1908590, along with all its accessories*

*Hover Mower, Serial #1900591, along with all its accessories*

*Tri Roller Kit, along with all its accessories*

*Rops (3), Serial #RM5500D, along with all its accessories.*

A true and correct copy of the Agreement executed by said Debtor is attached hereto and made a part hereof.

11. The Debtor does not have any equity in the leased equipment. Notwithstanding that fact, however, the Debtor has not provided adequate protection to GENERAL ELECTRIC CAPITAL CORPORATION for its interest in (if any) or its use of (if any) GENERAL ELECTRIC CAPITAL CORPORATION's leased equipment; nor has debtor assumed such

MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE TO DEBTOR - 7

lease.

12. As of the date of filing of this Motion, there was due, owing and unpaid upon the Agreement, the sum of $184,631.12, with interest accruing thereafter at the rate of 18% per annum. The Debtor is currently in arrears per the Agreement in the sum of $28,678.58 without including late fees. The leased equipment has a value of approximately $150,000.00. The Debtor's Bankruptcy was filed on December 11, 2009.

13. On July 25, 2007, FISHER'S DOCUMENT SYSTEMS entered into a certain Fisher's One Program (hereinafter "Agreement"), Agreement No. 7522561-001, with Debtor TAMARACK RESORT, LLC. To secure the payments required by the Agreement, Debtor executed a security agreement covering the below described collateral. FISHER'S DOCUMENT SYSTEMS later assigned its rights, title and interest to GENERAL ELECTRIC CAPITAL CORPORATION. A copy of the Notification of Assignment is attached hereto. The terms of the security agreement provide, in part, that GENERAL ELECTRIC CAPITAL CORPORATION was granted a security interest in certain personal property therein described. Pursuant to the statutes of the State of Idaho, GENERAL ELECTRIC CAPITAL CORPORATION perfected its security interest in the collateral. The collateral consists of the following:

*4 Lanier LD 445 Copiers, along with all its accessories*

*4 PB 3000 Paper Bank, along with all its accessories*

*4 SR 790 Finisher, along with all its accessories*

*1 Canon IR3200, Serial #MSK18877, along with all its accessories*

*LD425/430/435 Bridge Unit, along with all its accessories.*

A true and correct copy of the Agreement executed by said Debtor is attached hereto and

MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE TO DEBTOR - 8

made a part hereof.

11. The Debtor does not have any equity in the collateral. Notwithstanding that fact, however, the Debtor has not provided adequate protection to GENERAL ELECTRIC CAPITAL CORPORATION for its interest in (if any) or its use of (if any) GENERAL ELECTRIC CAPITAL CORPORATION's collateral.

12. As of the date of filing of this Motion, there was due, owing and unpaid upon the Agreement, the sum of $4,120.06, with interest accruing thereafter at the rate of 18% per annum. The Debtor is currently in arrears per the Agreement in the sum of $1,609.94 without including late fees. The collateral has a value of approximately $3,840.00. The Debtor's Bankruptcy was filed on December 11, 2009.

WHEREFORE, in consideration of the above, this Court should forthwith order that the automatic stay in force pursuant to § 362(a) of the Bankruptcy Code be annulled, terminated and modified so as to allow GENERAL ELECTRIC CAPITAL CORPORATION to enforce its right in and to the leased equipment and collateral above described by virtue of the Agreement between GENERAL ELECTRIC CAPITAL CORPORATION and Debtor and applicable state and federal law, and that debtor's leases be deemed rejected.

Further, should GENERAL ELECTRIC CAPITAL CORPORATION exercise its rights to sell or otherwise liquidate the subject leased equipment and collateral pursuant to an Order for Relief from Stay, GE CAPITAL requests the right to file an amended Proof of Claim (within 90 days of) after the sale of the collateral for any deficiency balance remaining. GENERAL ELECTRIC CAPITAL CORPORATION pursuant to Rule 4001(a)(3), requests the Court waive the fourteen (14) day stay otherwise in effect upon entry of an Order.

MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE TO DEBTOR - 9

DATED this _____ day of March, 2010.

WILSON & McCOLL

By_____

JEFFREY M. WILSON
Attorney for Creditor

## NOTICE

Please take notice that pursuant to Local Bankruptcy Rule 4001.2 of the Local Bankruptcy Rules, and subject to FED.R.BANKR. P. 9006, any party in interest opposing the motion must file and serve an objection to the motion not later than seventeen (17) days after the date of service of the motion. The objection shall specifically identify those matters contained in the motion that are at issue and any other basis for opposition to the motion. **Absent the filing of a timely objection, the Court may grant relief sought without a hearing.** In addition, as required by Local Bankruptcy Rule 4001.2(d)(3), if an objection is filed to this motion, the objection must be served upon the movant and upon all parties receiving service of the motion. In accordance with Local Bankruptcy Rule 4001.2(e)(1), any party opposing a motion for stay relief must contact the Court's calendar clerk to schedule a preliminary hearing. At the time of the filing the objection to a motion, the objecting party shall file and serve a notice of such hearing.

In addition, pursuant to Local Bankruptcy Rule 4001.2 of the Local Bankruptcy Rules and 11 U.S.C § 362(e), thirty (30) days after a request under 11 U.S.C. § 362(d) for relief from the stay and any act against property of the estate under 11 U.S.C. § 362(a), such stay is terminated with respect to the party in interest making such request, unless the Court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.

MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE TO DEBTOR - 10

DATED this _____ day of March, 2010.

WILSON & McCOLL

By_____
JEFFREY M. WILSON
Attorney for Creditor

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on the _____ day of March, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Randal J. French
Attorney for Debtor

U.S. Trustee

And, I hereby certify that I have mailed by United States Postal Service the foregoing documents to the following non-CM/ECF Registered Participants:

Tamarack Resort LLC
311 Village Drive
Tamarack, ID 83615

By_____
JEFFREY M. WILSON



**Financing**

*Master Lease Agreement*
4318169-001

Agreement # 4318169

"**Master Agreement**" shall mean this Master Lease Agreement. "**Schedule**" shall mean any Lease Schedule signed by you and us which incorporates the terms of this Master Agreement. "**Lease**" shall mean this Master Agreement and any Schedule.

**1. COMMENCEMENT OF SCHEDULE.** Commencement of a Schedule (the "Commencement Date") and acceptance of the Equipment shall occur upon delivery of the Equipment to you. You agree to inspect the Equipment upon delivery and verify by telephone or in writing such information as we may require. The Equipment is accepted by you under the Lease unless you notify us within three (3) days of delivery that you do not accept the Equipment and specify the defect or malfunction. In that event, we will replace the defective item of Equipment or this Lease will be canceled and you will assume all our rights under any purchase order or agreement entered into by us to buy the Equipment. If you signed a purchase order or similar agreement for the purchase of the Equipment, by signing a Schedule you assign to us all of your rights, but none of your obligations under it. All attachments, accessories, replacements, replacement parts, substitutions, additions and repairs to the Equipment shall form part of the Equipment under a Schedule.

**2. SECURITY DEPOSIT.** The Security Deposit will be held by us, without interest, and may be commingled (unless otherwise required by law), until all obligations under the Lease are satisfied, and may be applied at our option against amounts due under the Lease. The Security Deposit will be returned to you upon termination of a Schedule, provided you are not in default, or applied to the last Lease Payment or to the amount we may quote for any purchase or upgrade of the Equipment.

**3. LEASE PAYMENTS.** You agree to remit to us the Lease Payment (as set forth in the Schedule) and all other sums when due and payable each Billing Period at the address we provide to you from time to time. If the Commencement Date of a Schedule is not the first or the fifteenth day of any calendar month (a "Payment Date"), the initial Term of a Schedule shall be extended by the number of days between the Commencement Date and the Payment Date which first occurs after the Commencement Date of such Schedule and your first Lease Payment will be increased by 1/30th of the monthly Lease Payments multiplied by the number of days elapsed from the Commencement Date to the day immediately preceding the Payment Date which occurs after such Commencement Date. Lease Payments are due whether or not you are invoiced. You authorize us to adjust the Lease Payments by not more than 15% to reflect any reconfiguration of the Equipment or adjustments to reflect applicable sales taxes or the cost of the Equipment by the manufacturer/supplier.

**4. LEASE CHARGES.** You agree to pay: (a) all costs and expenses associated with the use, maintenance, servicing, repair or replacement of the Equipment and (b) pay all premiums and other costs of insuring the Equipment. In addition, you will (1) reimburse us for all costs and expenses (including reasonable attorneys' fees and court costs) incurred in enforcing the Lease and (2) pay all other costs and expenses for which you are obligated under the Lease (the "Lease Charges").

If a Schedule provides you with a $1 Purchase Option (a "$1 Lease"), you agree to file all required property tax returns and promptly pay all property taxes, which may be assessed against the Equipment. If a Schedule provides you with a Fair Market Value Purchase Option (an "FMV Lease"), you agree, at our discretion, to either (i) reimburse us annually for all personal property and other similar taxes and governmental charges associated with the ownership, possession or use of the Equipment, or (ii) remit to us each Billing Period our estimate of the pro-rated equivalent of such taxes and governmental charges. You agree to pay us an administrative fee for the processing of taxes, assessments or fees which may be due and payable under the Lease. We may take on your behalf any action required under the Lease, which you fail to take, and upon receipt of our invoice you will promptly pay our costs (including insurance premiums and other payments to affiliates), plus reasonable processing fees. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25.00 for any check, which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

**5. LATE CHARGES.** For any payment, which is not received by its due date, you agree to pay a late charge equal to the higher of 10% of the amount due or $22.00 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

**6. OWNERSHIP, USE, MAINTENANCE AND REPAIR.** In the case of a $1 Lease, you shall have title to the Equipment immediately upon delivery and shall be the owner of the Equipment and we reserve a security interest in the Equipment to secure all of your obligations under the Lease. In the case of an FMV Lease, we own the Equipment and you have the right to use the Equipment under the terms of the Lease. If the Lease is deemed to be a secured transaction, you grant us a security interest in the Equipment to secure all of your obligations under the Lease. You hereby assign to us all of your rights, but none of your obligations, under any purchase agreement for the Equipment. We hereby assign to you all our rights under any manufacturer or supplier warranties, so long as you are not in default hereunder. You must keep the Equipment free of liens. You may not remove the Equipment from the address indicated on the front of a Schedule without first obtaining our approval. You agree to: (a) keep the Equipment in your exclusive control and possession; (b) USE THE EQUIPMENT ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES;

Continued on Page 2

BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS MASTER AGREEMENT AND EACH SCHEDULE SHALL BE GOVERNED BY THE LAWS OF ILLINOIS. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN ILLINOIS.

BY SIGNING THIS MASTER AGREEMENT, YOU AGREE TO THE TERMS ON BOTH PAGES 1 AND 2. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**General Electric Capital Corporation**
3000 Lakeside Dr, Bannockburn, IL 60060

By: _____

Name: _____

Title: _____

Date: 11/22/04

**TAMARACK RESORT LLC**
Full Legal Name

D/B/A

By: X _Rod Mourant_
Signature of Authorized Signer

Name: _Rod Mourant_
Please Print

Title: _Controller_

Date: 11/1/04    Fed Tax ID _____
Date of Signature

Visit us at www.torofinancing.com
Toro 1122(a) 03/02

## ADDITIONAL TERMS AND CONTIIONS OFAGREEMENT

(c) use the Equipment in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) keep the Equipment repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; and (e) give us reasonable access to inspect the Equipment and its maintenance and other records.

7. INDEMNITY. You are responsible for all losses, damage, claims, infringement claims, injuries and attorneys' fees and costs ("Claims"), incurred or asserted by any person, in any manner relating to the Equipment, including its use, condition or possession. You agree to defend and indemnify us against all Claims, although we reserve the right to control the defense and to select or approve defense counsel. This indemnity continues beyond the termination of a Schedule, for acts or omissions, which occurred during the Term of a Schedule. You also agree that the Lease has been entered into on the assumption that we will be entitled to certain tax benefits available to the owner of the Equipment. In the case of an FMV Lease, you agree to indemnify us for the loss of any income tax benefits caused by your acts or omissions inconsistent with such assumption or the Lease. In the event of any such loss, we may increase the Lease Payments and other amounts due to offset any such adverse effect.

8. LOSS OR DAMAGE. If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) promptly repair the item or replace the item with a comparable item reasonably acceptable to us; or (b) pay us the sum of: (i) all past due and current Lease Payments, (ii) the present value of all remaining Lease Payments for the item, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher), (iii) all Lease Charges, and (iv) the Fair Market Value of the Equipment (if an FMV Lease). We will then transfer to you all our right, title and interest in the Equipment AS-IS AND WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION, TITLE OR VALUE. Insurance proceeds shall be applied toward repair, replacement or payment hereunder, as applicable. In this Master Agreement, "Fair Market Value" of the Equipment means its installed fair market value at the end of the Term, assuming good order and condition (except for ordinary wear and tear from normal use), as estimated by us.

9. INSURANCE. You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming us as loss payee (or, in the case of a $1 Lease, naming you and us as loss payees as our interests may appear); and (b) maintain public liability insurance, covering personal injury and Equipment damage for not less than $300,000 per occurrence, naming us as additional insured. You have a choice in how you satisfy these insurance requirements. First, you may obtain coverage on your own and provide us with evidence of insurance coverage. If you elect this option, the policy must be issued by an insurance carrier rated B+ or better by A.M. Best Company, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us. Second, you may elect to have us directly obtain coverage protecting our interests. UNLESS YOU PROVIDE EVIDENCE OF THE INSURANCE COVERAGE REQUIRED BY THIS MASTER AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST IN THE EQUIPMENT. THIS INSUR- ANCE MAY, BUT NEED NOT, PROTECT YOUR INTERESTS. THE COVERAGE THAT WE PURCHASE MAY NOT PAY ANY CLAIM THAT YOU MAKE OR ANY CLAIM THAT IS MADE AGAINST YOU IN CONNECTION WITH THE EQUIPMENT. YOU MAY LATER CANCEL ANY INSURANCE PURCHASED BY US, BUT ONLY AFTER PROVIDING EVIDENCE THAT YOU HAVE OBTAINED INSURANCE AS REQUIRED BY THIS MASTER AGREEMENT. IF WE PURCHASE INSURANCE FOR THE EQUIPMENT, YOU WILL BE RESPONSIBLE FOR THE COSTS OF THAT INSURANCE, INCLUDING THE INSURANCE PREMIUM, INTEREST AND ANY OTHER CHARGES WE MAY IMPOSE IN CONNECTION WITH THE PLACEMENT OF THE INSURANCE, UNTIL THE EFFECTIVE DATE OF CANCELLATION OR EXPIRATION OF THE INSURANCE. THE COSTS OF THE INSURANCE MAY BE ADDED TO YOUR TOTAL OUTSTANDING BALANCE OR OBLIGATION. THE COSTS OF THE INSURANCE MAY BE MORE THAN THE COST OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. The insurance coverage we obtain may be through an insurance carrier, which may be affiliated with our assignee or us. There will be no deductible and the coverage will include protection for earthquakes, floods and employee theft. We will pay the premium, but you must reimburse us. Each Billing Period, you must pay us with your Lease Payment the pro-rated portion of the insurance premium. At the end of the Term you must pay us any remaining portion of the premium.

10. DEFAULT. You will be in default under the Lease if: (a) you fail to remit to us any payment within ten (10) days of the due date or breach any other obligation under this Lease; (b) a petition is filed by or against you or any Guarantor under any bankruptcy or insolvency law; or (c) you default under any other agreement with us.

11. REMEDIES. If you default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the sum of: (i) all past due and current Lease Payments, (ii) the present value of all remaining Lease Payments, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher), (iii) all Lease Charges, and (iv) the Fair MarketValue of the Equipment (if an FMV Lease); (b) declare any other agreements between us in default; (c) require you to return all of the Equipment in the manner outlined in Section 12, or take possession of the Equipment, in which case we shall not be held responsible for any losses directly or indirectly arising out of, or by reason of the presence and/or use of any and all proprietary information residing on or within the Equipment, and to lease or sell the Equipment or any portion thereof, and to apply the proceeds, less reasonable selling and administrative expenses, to the amounts due hereunder; (d) charge you interest on all amounts due us from the due date until paid at the rate of 1-1/2% per month, but in no event more than the lawful maximum rate; (e) charge you for expenses incurred in connection with the enforcement of our remedies including, without limitation, repossession, repair and

collection costs, attorneys' fees and court costs. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right.

12. END OF TERM OPTIONS; RETURN OF EQUIPMENT. In the case of a $1 Lease and if you are not in default, we will release any security interest which we may have in the Equipment at the end of the Term. In the case of an FMV Lease, at the end of the Term and upon 30 days prior written notice to us, you shall either
(a) return all of the Equipment, or (b) purchase all of the Equipment AS-IS AND WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION, TITLE OR VALUE, for the Fair Market Value , plus applicable sales and other taxes. The Lease shall continue on a month-to-month basis and you shall pay us
the same Lease Payments and Lease Charges as applied during the Term until the Equipment is returned to us or you pay us the applicable purchase price (and taxes). If you are in default or, in the case of an FMV Lease, you do not purchase the Equipment at the end of the Term (or any month-to-month renewal term), you shall return all of the Equipment, freight and insurance prepaid at your cost and risk, to wherever we indicate in the continental United States, with all manuals and logs, in good order and condition (except for ordinary wear and tear from normal use), packed per the shipping company's specifications, and pay an inspection, restocking and handling fee of $100, not to exceed the maximum permitted by law, as reasonable compensation for our costs in processing returned equipment. You will pay us for any loss in value resulting from the failure to maintain the Equipment in accordance with this Master Agreement or for damages incurred in shipping and handling.

13. ASSIGNMENT. You may not assign or dispose of any rights or obligations under the Lease or sub-lease the Equipment, without our prior written consent. We may, without notifying you, (a) assign the Lease or our interest in the Equipment; and (b) release information we have about you and the Lease to the manufacturer, supplier or any prospective investor, participant or purchaser of the Lease. If we do make an assignment under subsection 13(a) above, our assignee will have all of our rights under the Lease, but none of our obligations. You agree not to assert against our assignee claims, offsets or defenses you may have against us.

14. MISCELLANEOUS. Notices must be in writing and will be deemed given 5 days after mailing to your (or our) business address. You represent that: (a) you have authority to enter into the Lease and by so doing you will not violate any law or agreement; and (b) the Lease is signed by your authorized officer or agent. The Lease is the entire agreement between us, and cannot be modified except by another document signed by us. The Lease is binding on you and your successors and assigns. All financial information you have provided is true and a reasonable representation of your financial condition. You authorize us or our agent to: (a) obtain credit reports and make credit inquiries; (b) furnish payment history to credit reporting agencies; and (c) be your attorney -in-fact for the sole purpose of signing UCC financing statements. Any claim you have against us must be made within two (2) years after the event, which caused it. If a court finds any provision of the Lease to be unenforceable, all other terms shall remain in effect and enforceable. You authorize us to insert or correct missing information on the Lease, including your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of a Schedule, you agree to pay a fee for such privilege. THE PARTIES INTEND THIS TO BE A "FINANCE LEASE" UNDER ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE ("UCC"). YOU WAIVE ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A OF THE UCC.

15. TIME PRICE. In the case of a $1 Lease, you understand that the Equipment may be purchased for cash (the "Equipment Cost") or it may be purchased pursuant to the Lease for a Time Price equal to the Lease Payment times the number of Lease Payments, plus the Document Fee, all as set forth on a Schedule, plus the Purchase Option amount, and by executing the Lease you have chosen to purchase the Equipment for that Time Price.

16. LEASE RATE FACTOR . Each Lease Payment includes a part of our investment in
the Equipment Cost and a return on our investment in the Lease. The total return on our investment (the total finance charge) is determined by multiplying the Lease Payment times the number of Lease Payments, then adding the Document Fee and Purchase Option amount (all as set forth on each Schedule), then deducting the Equipment Cost (as determined above). The difference so determined is the return to us on our investment (the total finance charge). The rate of return (finance rate) may be determined by deducting the Security Deposit from the Equipment Cost, and then applying to the amount so determined, the rate that will amortize that amount down to the Purchase Option amount by applying as payments, the Lease Payments and the Document Fee. For purposes of that amortization, each Lease Payment, including the Advance Payment, will be considered received
on the date it is required to be paid under the Lease and the Document Fee will be considered received on the date of the Lease.

17. LIMITATIONS ON CHARGES. This Section controls over every other part of this Master Agreement and over all other documents now or later pertaining to the Lease. We both intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. Any part of this Master Agreement that could, but for this Section, be read under any circumstance to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under the Lease to the maximum amount allowed under the legal limit. If in any circumstance, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under the Lease, or refunded to you.

 **Financing**

*Lease Schedule # 4318169-001*

Master Lease Agreement # 4318169

| Equipment Model & Description | Serial Number | Contracted Hours (FMV Only) | | |
|---|---|---|---|---|
| | | 0-600 | 601-900 | 901-1200 |
| 2  E-WORKMAN | | X | | |
| 1  MULTIPRO 5700D | | X | | |

NOV 5 AM 9:31

Equipment Location (if different from Billing Address) _____

---

TURF EQUIPMENT & IRRIGATION, INC
Name
8169 SOUTH STATE STREET
Address
MIDVALE        UT        84047
City            State      Zip

☒ Fair Market Value
☐ $1.00

"Master Agreement" shall mean the above referenced Master Lease Agreement. "Schedule" shall mean this Lease Schedule. "Lease" shall mean this Schedule and the Master Agreement.

YOU HAVE SELECTED THE EQUIPMENT. THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT OUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. YOU ARE AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND YOU WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF YOUR WARRANTY RIGHTS. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IM- PLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUIT- ABILITY, OR OTHERWISE. WE PROVIDE THE EQUIPMENT TO YOU AS-IS. WE SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.
YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSO- EVER. BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS LEASE SHALL BE GOVERNED BY THE LAWS OF ILLINOIS. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN ILLINOIS.

ALL OF THE TERMS AND CONDITIONS SET FORTH IN THE MASTER AGREEMENT ARE HEREBY INCORPORATED INTO THIS SCHEDULE. BY SIGNING THIS SCHEDULE, YOU AGREE TO THE TERMS OF THIS SCHEDULE AND THE MASTER AGREEMENT. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUN- DERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**Lease Payment $924.53**
(plus applicable taxes)

Equipment Purchase Price $47,412.00
Sales Tax $0.00
Total Purchase Price $47,412.00

**Term 48 months**

Billing Period: Monthly

The following additional payments are due on the date this Agreement is signed by you:

SECURITY DEPOSIT     $924.53

ADVANCE PAYMENT $0.00    Applied to: ☐ first ☐ last
(plus applicable taxes)

DOCUMENT FEE     $250.00  (included on first invoice)

---

TAMARACK RESORT LLC
Full Legal Name

DBA
960 BROADWAY AVE STE 100
Billing Address
BOISE        ID        83706
City          State      Zip

Contact Name        Phone        E-mail Address

---

**General Electric Capital Corporation**
3000 Lakeside Dr, Bannockburn, IL 60015

By: _(signature)_

Name: _____

Title: _____

Date: 11/22/04

By: X _Rod Mourant_ (signature)
     Signature of Authorized Signer
Name: Rod Mourant
     Please Print
Title: Controller
Date: 11/1/04     Fed Tax ID _____
     Date of Signature

Toro 1122(a) Sched  04/02

Page 1 of 1



**Financing**

*Master Lease Agreement*

Agreement # 4318169

"**Master Agreement**" shall mean this Master Lease Agreement. "**Schedule**" shall mean any Lease Schedule signed by you and us which incorporates the terms of this Master Agreement. "**Lease**" shall mean this Master Agreement and any Schedule.

**1. COMMENCEMENT OF SCHEDULE.** Commencement of a Schedule (the "Commencement Date") and acceptance of the Equipment shall occur upon delivery of the Equipment to you. You agree to inspect the Equipment upon delivery and verify by telephone or in writing such information as we may require. The Equipment is accepted by you under the Lease unless you notify us within three (3) days of delivery that you do not accept the Equipment and specify the defect or malfunction. In that event, we will replace the defective item of Equipment or this Lease will be canceled and you will assume all our rights under any purchase order or agreement entered into by us to buy the Equipment. If you signed a purchase order or similar agreement for the purchase of the Equipment, by signing a Schedule you assign to us all of your rights, but none of your obligations under it. All attachments, accessories, replacements, replacement parts, substitutions, additions and repairs to the Equipment shall form part of the Equipment under a Schedule.

**2. SECURITY DEPOSIT.** The Security Deposit will be held by us, without interest, and may be commingled (unless otherwise required by law), until all obligations under the Lease are satisfied, and may be applied at our option against amounts due under the Lease. The Security Deposit will be returned to you upon termination of a Schedule, provided you are not in default, or applied to the last Lease Payment or to the amount we may quote for any purchase or upgrade of the Equipment.

**3. LEASE PAYMENTS.** You agree to remit to us the Lease Payment (as set forth in the Schedule) and all other sums when due and payable each Billing Period at the address we provide to you from time to time. If the Commencement Date of a Schedule is not the first or the fifteenth day of any calendar month (a "Payment Date"), the initial Term of a Schedule shall be extended by the number of days between the Commencement Date and the Payment Date which first occurs after the Commencement Date of such Schedule and your first Lease Payment will be increased by 1/30th of the monthly Lease Payment multiplied by the number of days elapsed from the Commencement Date to the day immediately preceding the Payment Date which occurs after such Commencement Date. Lease Payments are due whether or not you are invoiced. You authorize us to adjust the Lease Payments by not more than 15% to reflect any reconfiguration of the Equipment or adjustments to reflect applicable sales taxes or the cost of the Equipment by the manufacturer/supplier.

**4. LEASE CHARGES.** You agree to: (a) pay all costs and expenses associated with the use, maintenance, servicing, repair or replacement of the Equipment and (b) pay all premiums and other costs of insuring the Equipment. In addition, you will (1) reimburse us for all costs and expenses (including reasonable attorneys' fees and court costs) incurred in enforcing the Lease and (2) pay all other costs and expenses for which you are obligated under the Lease (the "Lease Charges").

If a Schedule provides you with a $1 Purchase Option (a "$1 Lease"), you agree to file all required property tax returns and promptly pay all property taxes, which may be assessed against the Equipment. If a Schedule provides you with a Fair Market Value Purchase Option (an "FMV Lease"), you agree, at our discretion, to either (i) reimburse us annually for all personal property and other similar taxes and governmental charges associated with the ownership, possession or use of the Equipment, or (ii) remit to us each Billing Period our estimate of the pro-rated equivalent of such taxes and governmental charges. You agree to pay us an administrative fee for the processing of taxes, assessments or fees which may be due and payable under the Lease. We may take on your behalf any action required under the Lease, which you fail to take, and upon receipt of our invoice you will promptly pay our costs (including insurance premiums and other payments to affiliates), plus reasonable processing fees. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25.00 for any check, which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

**5. LATE CHARGES.** For any payment, which is not received by its due date, you agree to pay a late charge equal to the higher of 10% of the amount due or $22.00 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

**6. OWNERSHIP, USE, MAINTENANCE AND REPAIR.** In the case of a $1 Lease, you shall have title to the Equipment immediately upon delivery and shall be the owner of the Equipment and we reserve a security interest in the Equipment to secure all of your obligations under the Lease. In the case of an FMV Lease, we own the Equipment and you have the right to use the Equipment under the terms of the Lease. If the Lease is deemed to be a secured transaction, you grant us a security interest in the Equipment to secure all of your obligations under the Lease. You hereby assign to us all of your rights, but none of your obligations, under any purchase agreement for the Equipment. We hereby assign to you all our rights under any manufacturer or supplier warranties, so long as you are not in default hereunder. You must keep the Equipment free of liens. You may not remove the Equipment from the address indicated on the front of a Schedule without first obtaining our approval. You agree to: (a) keep the Equipment in your exclusive control and possession; (b) **USE THE EQUIPMENT ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES;**

Continued on Page 2

BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS MASTER AGREEMENT AND EACH SCHEDULE SHALL BE GOVERNED BY THE LAWS OF ILLINOIS. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN ILLINOIS.

BY SIGNING THIS MASTER AGREEMENT, YOU AGREE TO THE TERMS ON BOTH PAGES 1 AND 2. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**General Electric Capital Corporation**
3000 Lakeside Dr, Bannockburn, IL 60060

By: _____

Name: _____

Title: _____

Date: ___11/22/04___

**TAMARACK RESORT LLC**
Full Legal Name

D/B/A

By: X _Rod Mourant_
Signature of Authorized Signer

Name: _Rod Mourant_
Please Print

Title: _Controller_

Date: _11/1/04_     Fed Tax ID _____

## ADDITIONAL TERMS AND CONTIIONS OF AGREEMENT

(c) use the Equipment in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) keep the Equipment repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; and (e) give us reasonable access to inspect the Equipment and its maintenance and other records.

7. INDEMNITY. You are responsible for all losses, damage, claims, infringement claims, injuries and attorneys' fees and costs ("Claims"), incurred or asserted by any person, in any manner relating to the Equipment, including its use, condition or possession. You agree to defend and indemnify us against all Claims, although we reserve the right to control the defense and to select or approve defense counsel. This indemnity continues beyond the termination of a Schedule, for acts or omissions, which occurred during the Term of a Schedule. You also agree that the Lease has been entered into on the assumption that we will be entitled to certain tax benefits available to the owner of the Equipment. In the case of an FMV Lease, you agree to indemnify us for the loss of any income tax benefits caused by your acts or omissions inconsistent with such assumption or the Lease. In the event of any such loss, we may increase the Lease Payments and other amounts due to offset any such adverse effect.

8. LOSS OR DAMAGE. If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) promptly repair the item or replace the item with a comparable item reasonably acceptable to us; or (b) pay us the sum of: (i) all past due and current Lease Payments, (ii) the present value of all remaining Lease Payments for the item, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher), (iii) all Lease Charges, and (iv) the Fair Market Value of the Equipment (if an FMV Lease). We will then transfer to you all our right, title and interest in the Equipment AS-IS AND WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION, TITLE OR VALUE. Insurance proceeds shall be applied toward repair, replacement or payment hereunder, as applicable. In this Master Agreement, "Fair Market Value" of the Equipment means its installed fair market value at the end of the Term, assuming good order and condition (except for ordinary wear and tear from normal use), as estimated by us.

9. INSURANCE. You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming us as loss payee (or, in the case of a $1 Lease, naming you and us as loss payees as our interests may appear); and (b) maintain public liability insurance, covering personal injury and Equipment damage for not less than $300,000 per occurrence, naming us as additional insured. You have a choice in how you satisfy these insurance requirements. First, you may obtain coverage on your own and provide us with evidence of insurance coverage. If you elect this option, the policy must be issued by an insurance carrier rated B+ or better by A.M. Best Company, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us. Second, you may elect to have us directly obtain coverage protecting our interests. UNLESS YOU PROVIDE EVIDENCE OF THE INSURANCE COVERAGE REQUIRED BY THIS MASTER AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST IN THE EQUIPMENT. THIS INSUR- ANCE MAY, BUT NEED NOT, PROTECT YOUR INTERESTS. THE COVERAGE THAT WE PURCHASE MAY NOT PAY ANY CLAIM THAT YOU MAKE OR ANY CLAIM THAT IS MADE AGAINST YOU IN CONNECTION WITH THE EQUIPMENT. YOU MAY LATER CANCEL ANY INSURANCE PURCHASED BY US, BUT ONLY AFTER PROVIDING EVIDENCE THAT YOU HAVE OBTAINED INSURANCE AS REQUIRED BY THIS MASTER AGREEMENT. IF WE PURCHASE INSURANCE FOR THE EQUIPMENT, YOU WILL BE RESPONSIBLE FOR THE COSTS OF THAT INSURANCE, INCLUDING THE INSURANCE PREMIUM, INTEREST AND ANY OTHER CHARGES WE MAY IMPOSE IN CONNECTION WITH THE PLACEMENT OF THE INSURANCE, UNTIL THE EFFECTIVE DATE OF CANCELLATION OR EXPIRATION OF THE INSURANCE. THE COSTS OF THE INSURANCE MAY BE ADDED TO YOUR TOTAL OUTSTANDING BALANCE OR OBLIGATION. THE COSTS OF THE INSURANCE MAY BE MORE THAN THE COST OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. The insurance coverage we obtain may be through an insurance carrier, which may be affiliated with our assignee or us. There will be no deductible and the coverage will include protection for earthquakes, floods and employee theft. We will pay the premium, but you must reimburse us. Each Billing Period, you must pay us with your Lease Payment the pro-rated portion of the insurance premium. At the end of the Term you must pay us any remaining portion of the premium.

10. DEFAULT. You will be in default under the Lease if: (a) you fail to remit to us any payment within ten (10) days of the due date or breach any other obligation under this Lease; (b) a petition is filed by or against you or any Guarantor under any bankruptcy or insolvency law; or (c) you default under any other agreement with us.

11. REMEDIES. If you default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the sum of: (i) all past due and current Lease Payments, (ii) the present value of all remaining Lease Payments, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher), (iii) all Lease Charges, and (iv) the Fair MarketValue of the Equipment (if an FMV Lease); (b) declare any other agreements between us in default; (c) require you to return all the Equipment in the manner outlined in Section 12, or take possession of the Equipment, in which case we shall not be held responsible for any losses directly or indirectly arising out of, or by reason of the presence and/or use of any and all proprietary information residing on or within the Equipment, and to lease or sell the Equipment or any portion thereof, and to apply the proceeds, less reasonable selling and administrative expenses, to the amounts due hereunder; (d) charge you interest on all amounts due us from the due date until paid at the rate of 1-1/2% per month, but in no event more than the lawful maximum rate; (e) charge you for expenses incurred in connection with the enforcement of our remedies including, without limitation, repossession, repair and

collection costs, attorneys' fees and court costs. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right.

12. END OF TERM OPTIONS; RETURN OF EQUIPMENT. In the case of a $1 Lease and if you are not in default, we will release any security interest which we may have in the Equipment at the end of the Term. In the case of an FMV Lease, at the end of the Term and upon 30 days prior written notice to us, you shall either: (a) return all of the Equipment, or (b) purchase all of the Equipment AS-IS AND WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION, TITLE OR VALUE, for the Fair Market Value , plus applicable sales and other taxes. The Lease shall continue on a month-to-month basis and you shall pay us the same Lease Payments and Lease Charges as applied during the Term until the Equipment is returned to us or you pay us the applicable purchase price (and taxes). If you are in default or, in the case of an FMV Lease, you do not purchase the Equipment at the end of the Term (or any month-to-month renewal term), you shall return all of the Equipment, freight and insurance prepaid at your cost and risk, to wherever we indicate in the continental United States, with all manuals and logs, in good order and condition (except for ordinary wear and tear from normal use), packed per the shipping company's specifications, and pay an inspection, restocking and handling fee of $100, not to exceed the maximum permitted by law, as reasonable compensation for our costs in processing returned equipment. You will pay us for any loss in value resulting from the failure to maintain the Equipment in accordance with this Master Agreement or for damages incurred in shipping and handling.

13. ASSIGNMENT. You may not assign or dispose of any rights or obligations under the Lease or sub-lease the Equipment, without our prior written consent. We may , without notifying you, (a) assign the Lease or our interest in the Equipment; and (b) release information we have about you and the Lease to the manufacturer, supplier or any prospective investor, participant or purchaser of the Lease. If we do make an assignment under subsection 13(a) above, our assignee will have all of our rights under the Lease, but none of our obligations. You agree not to assert against our assignee claims, offsets or defenses you may have against us.

14. MISCELLANEOUS. Notices must be in writing and will be deemed given 5 days after mailing to your (or our) business address. You represent that: (a) you have authority to enter into the Lease and by so doing you will not violate any law or agreement; and (b) the Lease is signed by your authorized officer or agent. The Lease is the entire agreement between us, and cannot be modified except by another document signed by us. The Lease is binding on you and your successors and assigns. All financial information you have provided is true and a reasonable representation of your financial condition. You authorize us or our agent to: (a) obtain credit reports and make credit inquiries; (b) furnish payment history to credit reporting agencies; and (c) be your attorney-in-fact for the sole purpose of signing UCC financing statements. Any claim you have against us must be made within two (2) years after the event, which caused it. If a court finds any provision of the Lease to be unenforceable, all other terms shall remain in effect and enforceable. You authorize us to insert or correct missing information on the Lease, including your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of a Schedule, you agree to pay a fee for such privilege. THE PARTIES INTEND THIS TO BE A "FINANCE LEASE" UNDER ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE ("UCC"). YOU WAIVE ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A OF THE UCC.

15. TIME PRICE. In the case of a $1 Lease, you understand that the Equipment may be purchased for cash (the "Equipment Cost") or it may be purchased pursuant to the Lease for a Time Price equal to the Lease Payment times the number of Lease Payments, plus the Document Fee, all as set forth on a Schedule, plus the Purchase Option amount, and by executing the Lease you have chosen to purchase the Equipment for that Time Price.

16. LEASE RATE FACTOR . Each Lease Payment includes a part of our investment in

the Equipment Cost and a return on our investment in the Lease. The total return on our investment (the total finance charge) is determined by multiplying the Lease Payment times the number of Lease Payments, then adding the Document Fee and Purchase Option amount (all as set forth on each Schedule), then deducting the Equipment Cost (as determined above). The difference so determined is the return to us on our investment (the total finance charge). The rate of return (finance rate) may be determined by deducting the Security Deposit from the Equipment Cost, and then applying to the amount so determined, the rate that will amortize that amount down to the Purchase Option amount by applying as payments, the Lease Payments and the Document Fee. For purposes of that amortization, each Lease Payment, including the Advance Payment, will be considered received on the date it is required to be paid under the Lease and the Document Fee will be considered received on the date of the Lease.

17. LIMITATIONS ON CHARGES. This Section controls over every other part of this Master Agreement and over all other documents now or later pertaining to the Lease. We both intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. Any part of this Master Agreement that could, but for this Section, be read under any circumstance to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under the Lease to the maximum amount allowed under the legal limit. If in any circumstance, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under the Lease, or refunded to you.

 **Financing**

*Lease Schedule # 4318169-003*

Master Lease Agreement # 4318169

## EQUIPMENT

| Equipment Model & Description | Serial Number | Contracted Hours (FMV Only) | | |
|---|---|---|---|---|
| | | 0-600 | 601-900 | 901-1200 |
| ☒ See attached schedule for additional Equipment / Accessories | | | | |

AUG 3 AM11:03

Equipment Location (if different from Billing Address) _____

## SUPPLIER

TURF EQUIPMENT & IRRIGATION, INC
Name
8169 SOUTH STATE STREET
Address
MIDVALE            UT            84047
City                State            Zip

"Master Agreement" shall mean the above referenced Master Lease Agreement. "Schedule" shall mean this Lease Schedule. "Lease" shall mean this Schedule and the Master Agreement.

YOU HAVE SELECTED THE EQUIPMENT. THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT YOUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. YOU ARE AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND YOU WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF YOUR WARRANTY RIGHTS. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IM- PLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUIT- ABILITY, OR OTHERWISE. WE PROVIDE THE EQUIPMENT TO YOU AS-IS. WE SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSO- EVER. BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS LEASE SHALL BE GOVERNED BY THE LAWS OF ILLINOIS. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN ILLINOIS.

ALL OF THE TERMS AND CONDITIONS SET FORTH IN THE MASTER AGREEMENT ARE HEREBY INCORPORATED INTO THIS SCHEDULE. BY SIGNING THIS SCHEDULE, YOU AGREE TO THE TERMS OF THIS SCHEDULE AND THE MASTER AGREEMENT. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUN- DERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

## PURCHASE OPTION AT END OF TERM

☐ Fair Market Value
☒ $1.00

## TRANSACTION TERMS

Lease Payment $1,911.87
(plus applicable taxes)

Equipment Purchase Price $86,714.00
Sales Tax $5,202.84
Total Purchase Price $91,916.84

Term 60 months

*LEASE RATE FACTOR 0.0208  Billing Period: Monthly

The following additional payments are due on the date this Agreement is signed by you:

SECURITY DEPOSIT    N/A

ADVANCE PAYMENT $1,911.87    Applied to: ☒ first ☐ last
(plus applicable taxes)

DOCUMENT FEE    $250.00 (included on first invoice)

## LESSEE ("You")

TAMARACK RESORT LLC
Full Legal Name
-
D/B/A
960 BROADWAY AVE
Billing Address
BOISE            ID            83706
City            State            Zip

Contact Name            (208) 472-1750
                        Phone            E-mail Address

By: X _____
Signature of Authorized Signer
Name: Jonathan Zurkoff
Please Print
Title: CFO
Date: Aug 02 2005    Fed Tax ID _____
Date of Signature

## LESSOR ("We", "Us")

General Electric Capital Corporation
3000 Lakeside Dr, Bannockburn, IL 60015

By: DMatta
Name: _____
Title: _____
Date: 8/05/05



**Financing**                    *Lease Schedule # 4318169-004*

Master Lease Agreement # 4318169

---

**EQUIPMENT**

| Equipment Model & Description | Serial Number | Contracted Hours (FMV Only) | | |
|---|---|---|---|---|
| | | 0-600 | 601-900 | 901-1200 |

☒ See attached schedule for additional Equipment / Accessories

AUG 3 AM 11:02

Equipment Location (if different from Billing Address) _____

---

**SUPPLIER**

TURF EQUIPMENT & IRRIGATION, INC.
Name
8169 SOUTH STATE STREET
Address
MIDVALE          UT          84047
City              State       Zip

"**Master Agreement**" shall mean the above referenced Master Lease Agreement. "**Schedule**" shall mean this Lease Schedule. "**Lease**" shall mean this Schedule and the Master Agreement.

YOU HAVE SELECTED THE EQUIPMENT. THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT OUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. YOU ARE AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND YOU WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF YOUR WARRANTY RIGHTS. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IM- PLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUIT- ABILITY, OR OTHERWISE. WE PROVIDE THE EQUIPMENT TO YOU AS-IS. WE SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.
YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSO- EVER. BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS LEASE SHALL BE GOVERNED BY THE LAWS OF ILLINOIS. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN ILLINOIS.

ALL OF THE TERMS AND CONDITIONS SET FORTH IN THE MASTER AGREEMENT ARE HEREBY INCORPORATED INTO THIS SCHEDULE. BY SIGNING THIS SCHEDULE, YOU AGREE TO THE TERMS OF THIS SCHEDULE AND THE MASTER AGREEMENT. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUN- DERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

---

**PURCHASE OPTION AT END OF TERM**

☒ Fair Market Value
☐ $1.00

---

**TRANSACTION TERMS**          Lease Payment $6,089.27
                                     (plus applicable taxes)

Equipment Purchase Price $310,677.00
          Sales Tax $0.00          Term 48 months
Total Purchase Price $310,677.00

Billing Period: Monthly

The following additional payments are due on the date this Agreement is signed by you:

SECURITY DEPOSIT          N/A

ADVANCE PAYMENT $6,089.27          Applied to: ☒ first ☐ last
                    (plus applicable taxes)

DOCUMENT FEE          $250.00  (included on first invoice)

---

**LESSEE ("You")**

TAMARACK RESORT LLC
Full Legal Name

DBA
960 BROADWAY AVE
Billing Address
BOISE                    ID          83706
City                     State       Zip

Contact Name          (208) 472-1750          E-mail Address
                      Phone

By: X _____
      Signature of Authorized Signer
Name: Jonathan Zuckoff
      Please Print
Title: CFO
Date: 8/02/2005          Fed Tax ID _____
      Date of Signature

---

**LESSOR ("We", "Us")**

General Electric Capital Corporation
3000 Lakeside Dr. Bannockburn, IL 60015

By: _____
Name: CHRIS VESSELL
Title: CONTRACTS MGR
Date: 9-5-05

---

10/18/2005  14:19    2084721759    TAMARACK RESORT LLC    PAGE  03/11

 **Financing**

*Lease Schedule # 4318169-005*

Master Lease Agreement # 4318169

**EQUIPMENT**

| Equipment Model & Description | Serial Number | Contracted Hours (FMV Only) | | | |
|---|---|---|---|---|---|
| | | 0-800 | 801-900 | 901-1200 | |
| ☒ See attached schedule for additional Equipment / Accessories | | | | | |

Equipment Location (if different from Billing Address) _____

**SUPPLIER**

TURF EQUIPMENT & IRRIGATION, INC.
Name
8100 SOUTH STATE STREET
Address
MIDVALE          UT          84047
City              State        Zip

"Master Agreement" shall mean the above referenced Master Lease Agreement. "Schedule" shall mean this Lease Schedule. "Lessor" shall mean this Schedule and the Master Agreement.

YOU HAVE SELECTED THE EQUIPMENT. THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT OUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THE LEASE. YOU ARE AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND YOU WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF YOUR WARRANTY RIGHTS. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUIT-ABILITY, OR OTHERWISE. WE PROVIDE THE EQUIPMENT TO YOU AS-IS. WE SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.
YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSO-EVER. BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS LEASE SHALL BE GOVERNED BY THE LAWS OF ILLINOIS. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN ILLINOIS.

ALL OF THE TERMS AND CONDITIONS SET FORTH IN THE MASTER AGREEMENT ARE HEREBY INCORPORATED INTO THIS SCHEDULE. BY SIGNING THIS SCHEDULE, YOU AGREE TO THE TERMS OF THIS SCHEDULE AND THE MASTER AGREEMENT. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUN-DERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**LESSOR ("We", "Us")**

General Electric Capital Corporation
3000 Lakeside Dr., Bannockburn, IL 60015

By: _____

Name: _____

Title: _____

Date: _____

**PURCHASE OPTION AT END OF TERM**

☒ Fair Market Value

☐ $1.00

**TRANSACTION TERMS**                    Lease Payment (plus applicable taxes)
                                          (plus applicable taxes)

Equipment Purchase Price $423,907.00
        Sales Tax $0.00              Term 55 months
Total Purchase Price $423,907.00

Billing Period  Monthly

The following additional payments are due on the date this Agreement is signed by you:

SECURITY DEPOSIT    N/A

ADVANCE PAYMENT: $0.00
                            (plus applicable taxes)
DOCUMENT FEE    $250.00  (included on first invoice)

**LESSEE ("You")**

TAMARACK RESORT LLC
Full Legal Name

D/B/A
960 BROADWAY AVE
Billing Address
BOISE              ID              83708
City                State          Zip
Contact Name        (208) 972-1750
                    Phone Number    E-mail Address

By: X _____
        Signature of Authorized Signer
Name: JONATHAN ZURKOFF
        Please Print
Title: CHIEF FINANCIAL OFFICER

Date: 10/18/05    Fed Tax ID        ?
        Date of Signature

Visit us at www.torofinancing.com

Toro 1122(s) Sched 04/02

Page 1 of 1



**Financing**

*Lease Schedule # 4318169-005*

Master Lease Agreement # 4318169

## EQUIPMENT

| Equipment Model & Description | Serial Number | Contracted Hours (FMV Only) | | |
|---|---|---|---|---|
| | | 0-600 | 601-900 | 901-1200 |
| ☒ See attached schedule for additional Equipment / Accessories | | | | |

OCT 19 AM 10:35

Equipment Location (if different from Billing Address) _____

## SUPPLIER

TURF EQUIPMENT & IRRIGATION, INC.
Name
8169 SOUTH STATE STREET
Address

| MIDVALE | UT | 84047 |
|---|---|---|
| City | State | Zip |

"Master Agreement" shall mean the above referenced Master Lease Agreement. "Schedule" shall mean this Lease Schedule. "Lease" shall mean this Schedule and the Master Agreement.

YOU HAVE SELECTED THE EQUIPMENT. THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT OUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. YOU ARE AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND YOU WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF YOUR WARRANTY RIGHTS. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IM- PLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUIT- ABILITY, OR OTHERWISE. WE PROVIDE THE EQUIPMENT TO YOU AS-IS. WE SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSO- EVER. BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS LEASE SHALL BE GOVERNED BY THE LAWS OF ILLINOIS. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN ILLINOIS.

ALL OF THE TERMS AND CONDITIONS SET FORTH IN THE MASTER AGREEMENT ARE HEREBY INCORPORATED INTO THIS SCHEDULE. BY SIGNING THIS SCHEDULE, YOU AGREE TO THE TERMS OF THIS SCHEDULE AND THE MASTER AGREEMENT. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUN- DERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

## PURCHASE OPTION AT END OF TERM

☒ Fair Market Value
☐ $1.00

## TRANSACTION TERMS

Equipment Purchase Price $425,907.00
Sales Tax $0.00
Total Purchase Price $425,907.00

Billing Period: Monthly

**Lease Payment** SEE AMENDMENT
(plus applicable taxes)

Term 55 months

The following additional payments are due on the date this Agreement is signed by you:

SECURITY DEPOSIT   N/A

ADVANCE PAYMENT: $0.00
(plus applicable taxes)

DOCUMENT FEE   $250.00 (Included on first invoice)

## LESSEE ("You")

TAMARACK RESORT LLC
Full Legal Name
-
D/B/A
960 BROADWAY AVE
Billing Address

| BOISE | ID | 83706 |
|---|---|---|
| City | State | Zip |

Contact Name   (208) 672-1750
Phone

E-mail Address

By: X _____
Signature of Authorized Signer

Name: *JONATHAN ZURKOFF*
Please Print

Title: *CHIEF FINANCIAL OFFICER*

Date: *10/18/05*      Fed Tax ID ____
Date of Signature

## LESSOR ("We", "Us")

General Electric Capital Corporation
3000 Lakeside Dr, Bannockburn, IL 60015

By: _____

Name: _____

Title: _____

Date: *10/05/05*

**FISHER'S** DOCUMENT SYSTEMS

Fisher's One Program

Agreement No. 752286 | -001

| **CUSTOMER** (hereinafter referred to as "You" or "Your") | | | |
|---|---|---|---|
| Full Legal Name | | | |
| Tamarack Resort LLC | | | |
| Address | City | State | Zip |
| 960 Broadway Ave. #100 | Boise | Idaho | 83706 |

| **SUPPLIER** (Supplier is not Owner's Agent nor is Supplier authorized to waive or alter any term or condition of this Agreement) | | |
|---|---|---|
| Name | City | State |
| Fisher's Document Systems | Boise | Idaho |

**TERMS AND CONDITIONS · PLEASE READ CAREFULLY BEFORE SIGNING**

| | **DESCRIPTION OF EQUIPMENT RENTED** | | | Beginning Meter Reading | | Monthly Image Allowance Per Machine (If not Consolidated) | |
|---|---|---|---|---|---|---|---|
| Quantity | Type, Make, Model Number | Serial # | | Color | Black and White | Color | Black and White |
| 4 | Lanier LD 445 Copiers | | | | | N/A | N/A |
| 4 | PB 3000 Paper Bank | | | | | N/A | N/A |
| 4 | SR 790 Finisher | | | | | N/A | N/A |
| ☑ See attached schedule for additional equipment. | | | Total Consolidated Monthly Image Allowance | | | 35000 | 60000 |
| | | | | | | (Insert N/A if not applicable) | |

| **EQUIPMENT LOCATION** (If other than above) | City | State | County |
|---|---|---|---|
| Please see attached invoices, equipment location | Boise | Idaho | Ada |

| Number of Monthly Payments | Monthly Minimum Rental Payment | Excess Per Image Charge Black & White | Excess Per Image Charge Color | Advance Rental Payment |
|---|---|---|---|---|
| 36 | $ 5874.00 (plus tax) | $ 0.0167 (plus tax) | $ 0.1139 (plus tax) | $ 0 (plus tax) If more than one rental payment is required in advance, any additional amount will be applied at the end of the term or renewal term. |

YOU HAVE SELECTED THE EQUIPMENT. THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT OUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS AGREEMENT. YOU ARE AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND YOU WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF YOUR WARRANTY RIGHTS. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE PROVIDE THE EQUIPMENT TO YOU AS-IS. WE SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.

YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF IOWA. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN IOWA.

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE RECEIPT OF PAGE 2 OF THIS AGREEMENT, AND AGREE TO THE TERMS ON BOTH PAGES 1 AND 2. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS**

THIS AGREEMENT IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ON THIS SIDE AND ON THE REVERSE SIDE, ALL OF WHICH PERTAIN TO THIS AGREEMENT AND WHICH YOU ACKNOWLEDGE HAVING READ. THIS AGREEMENT IS NOT BINDING UNTIL ACCEPTED BY US. YOU CERTIFY ALL ACTIONS REQUIRED TO AUTHORIZE EXECUTION OF THIS AGREEMENT, INCLUDING YOUR AUTHORITY, HAVE BEEN FULFILLED.

| **OWNER:** Fisher's Document Systems | | **CUSTOMER:** (As Stated Above) | |
|---|---|---|---|
| By: | Date Accepted: 9/19/07 | (X) | Date: 7-25-07 |
| Title: | | Title: VP OF IT   Jay Td | |

**Unconditional Personal Guaranty**

In consideration of Owner entering into the Agreement in reliance on this guaranty, the undersigned unconditionally and irrevocably guarantees to Owner, its successors and assigns, the prompt payment and performance of all existing and future obligations to Owner, including the Agreement. I agree that (a) this is a guaranty of payment and not of collection, and that Owner can proceed directly against me personally without resorting to any security or seeking to collect from Customer, (b) I waive all surety ship defenses including impairment of collateral, failure to properly perfect a security interest in the collateral, and all notices, including those of protest, presentment and demand, (c) Owner may renew, extend or otherwise change the terms of the Agreement without notice to me and I will be bound by such changes, and (d) I will pay all of Owner's costs of enforcement and collection, including attorneys' fees. This guaranty survives the bankruptcy of Customer and binds my administrators, successors and assigns. My obligations under this guaranty continue even if Customer becomes insolvent or bankrupt or is discharged from bankruptcy and I agree not to seek to be repaid by Customer in the event I must pay Owner, until you have been paid all amounts owed. This guaranty shall be governed by the laws of Iowa. I consent to the personal jurisdiction and venue of federal and state courts in Iowa.

X _____, Individually    X _____, Individually

SEP 28 '07 AM 9:21

**1. COMMENCEMENT OF AGREEMENT.** Commencement of this Agreement and acceptance of the Equipment shall occur upon delivery of the Equipment to you. You agree to inspect the Equipment upon delivery and verify by telephone or in writing such information as we may require. If you signed a purchase order or similar agreement for the purchase of the Equipment, by signing this Agreement you assign to us all of your rights, but none of your obligations under it. All attachments, accessories, replacements, replacement parts, substitutions, additions and repairs to the Equipment shall form part of the Equipment under this Agreement.

**2. SECURITY DEPOSIT.** The Security Deposit will be held by us, without interest, and may be commingled (unless otherwise required by law), until all obligations under this Agreement are satisfied, and may be applied at our option against amounts due under this Agreement. The Security Deposit will be returned to you upon termination of the Agreement, provided you are not in default, or applied to the last Payment or to the amount we may quote for any purchase or upgrade of the Equipment.

**3. AGREEMENT PAYMENTS.** You agree to remit to us the Agreement Payment and all other sums when due and payable each Billing Period at the address we provide to you from time to time. Payments are due whether or not you are invoiced. You authorize us to adjust the Payments by not more than 15% to reflect any reconfiguration of the Equipment or adjustments to reflect applicable sales taxes or the cost of the Equipment by the manufacturer/supplier. If the Commencement of this Agreement falls on any day other than the 20th day of a month, you agree to pay to us interim rent from Commencement through, but not including, the 20th day of the month next following Commencement (the Interim Rent Period") at a rate equal to 1/30th of the Payment set forth herein for each calendar day during the Interim Rent Period.

**4. AGREEMENT CHARGES.** You agree to: (a) pay all costs and expenses associated with the use, maintenance, servicing, repair or replacement of the Equipment; (b) pay all premiums and other costs of insuring the Equipment; (c) reimburse us for all costs and expenses (including reasonable attorneys' fees and court costs) incurred in enforcing this Agreement; and (d) pay all other costs and expenses for which you are obligated under this Agreement. You agree, at our discretion, to either (i) reimburse us annually for all personal property and other similar taxes and governmental charges associated with the ownership, possession or use of the Equipment, or (ii) remit to us each Billing Period our estimate of the pro-rated equivalent of such taxes and governmental charges. You agree to pay us an administrative fee for the processing of taxes, assessments or fees which may be due and payable under this Agreement. We may take on your behalf any action required under this Agreement which you fail to take, and upon receipt of our invoice you will promptly pay our costs (including insurance premiums and other payments to affiliates), plus reasonable processing fees. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25.00 for any check which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

**5. IMAGE CHARGES.** Payments are due monthly, beginning the date the Equipment is delivered to You or any later date designated by Us and continuing on the same day of each following month until fully paid. Your Monthly Minimum Rental Payment obligation is unconditional and is not subject to any reduction, set-off, defense or counterclaim for any reason whatsoever. In return for Monthly Minimum Rental Payments, You are entitled to make the total number of images reflected in the Monthly Image Allowance(s) shown on the front of this Agreement each month (if consolidated), or the Monthly Image Allowance(s) Per Machine (if not consolidated), all as set forth on the front of this Agreement. If You use more than the applicable Allowance(s) in any month, You will pay Us an additional charge equal to the number of additional metered images multiplied by the applicable Excess Per Image Charge. Notwithstanding any adjustment, You will never pay less than the Monthly Minimum Rental Payment. You agree to provide Us or the Supplier with the actual meter reading on any business day of each month as designated by Us or the Supplier, provided that We may estimate the number of images used if such meter reading is not received by Us within five days after it is requested. We will adjust the estimated charge for excess images upon receipt of actual meter readings. Per Image Charges are based on average page coverage. All Black & White Image Charges are based on 6% average page coverage. Color Image Charges are based on 20% average page coverage. These percentages are based on an 8.5 x 11 sheet of paper. You agree that We may proportionately increase or decrease your Per Image Charges at any time should the average page coverage percentage increase or decrease during the term of this Agreement. In addition to the foregoing, You also agree that each day during the term of this Agreement We may increase both the Monthly Minimum Rental Payment and the Excess Per Image Charge on an annual basis in an amount determined in Our discretion, but not to exceed ten percent (10%) of the then existing payment and charge. Any such annual increase or increases made by Us will be effective as of the next anniversary date of this Agreement. We may charge You a fee to cover documentation and investigation costs, not to exceed $75.00. Security deposits are refundable when the Agreement expires, provided all Agreement terms and conditions have been properly fulfilled by You. Security deposits do not earn interest. You may not pay off this Agreement prior to the end of the Agreement term without our consent and We may charge You, in addition to the other amounts owed under this Agreement, an early termination fee equal to three monthly payments.

**6. LATE CHARGES.** For any payment which is not received by its due date, you agree to pay a late charge equal to the higher of 5% of the amount due or $22.00 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

**7. OWNERSHIP, USE MAINTENANCE AND REPAIR.** We own the Equipment and you have the right to use the Equipment under the terms of this Agreement. If this Agreement is deemed to be a secured transaction, you grant us a security interest in the Equipment to secure all of your obligations under this Agreement. We hereby assign to you all our rights under any manufacturer or supplier warranties, so long as you are not in default hereunder. You must keep the Equipment free of liens. You may not remove the Equipment from the address indicated on the front of this Agreement without first obtaining our approval. You agree to: (a) keep the Equipment in your exclusive control and possession; (b) USE THE EQUIPMENT ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES; (c) use the Equipment in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) keep the Equipment repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; and (e) give us reasonable access to inspect the Equipment and its maintenance and other records.

**8. INDEMNITY.** You are responsible for all losses, damage, claims, infringement claims, injuries and attorneys' fees and costs ("Claims"), incurred or asserted by any person, in any manner relating to the Equipment, including its use, condition or possession. You agree to defend and indemnify us against all Claims, but we reserve the right to control the defense and to select or approve defense counsel. This indemnity continues beyond the termination of this Agreement, for acts or omissions which occurred during the Term of this Agreement. You also agree that this Agreement has been entered into on the assumption that we will be entitled to certain tax benefits available to the owner of the Equipment. You agree to indemnify us for the loss of any income tax benefits caused by your acts or omissions inconsistent with such assumption or this Agreement. In the event of any such loss, we may increase the Agreement Payments and other amounts due to offset any such adverse effect.

**9. LOSS OR DAMAGE.** If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) repair the item or replace the item with a comparable item reasonably acceptable to us; or (b) pay us the sum of: (i) all past due and current Agreement Payments and Agreement Charges, (ii) the present value of all remaining Agreement Payments and Agreement Charges for the item, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher) and (iii) the Fair Market Value of the Equipment. We will then transfer to you all our right, title and interest in the Equipment AS-IS AND WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION, TITLE OR VALUE. Insurance proceeds shall be applied toward repair, replacement or payment hereunder, as applicable. In this Agreement, "Fair Market Value" of the Equipment means its fair market value at the end of the Term, assuming good order and condition (except for ordinary wear and tear from normal use), as estimated by us.

**10. INSURANCE.** You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming us as loss payee; and (b) maintain public liability insurance, covering personal injury and Equipment damage for not less than $300,000 per occurrence, naming us as additional insured. The policy must be issued by an insurance carrier acceptable to Owner, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us.

**11. DEFAULT.** You will be in default under this Agreement if: (a) you fail to remit to us any payment within ten (10) days of the due date or breach any other obligation under this Agreement; (b) a petition is filed by or against you or any Guarantor under any bankruptcy or insolvency law; or (c) you default under any other Agreement with us.

**12. REMEDIES.** If you default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the sum of: (i) all past due and current Agreement Payments and Agreement Charges, (ii) the present value of all remaining Agreement Payments and Agreement Charges, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher) and (iii) the Fair Market Value of the Equipment; (b) declare any other agreements between us in default; (c) require you to return all of the Equipment in the manner outlined in Section 12, or take possession of the Equipment, in which case we shall not be held responsible for any losses directly or indirectly arising out of, or by reason of the presence and/or use of any and all proprietary information residing on or within the Equipment, and to lease or sell the Equipment or any portion thereof, and to apply the proceeds, less reasonable selling and administrative expenses, to the amounts due hereunder; (d) charge you interest on all amounts due us from the due date until paid at the rate of 1-1/2% per month, but in no event more than the lawful maximum rate; (e) charge you for expenses incurred in connection with the enforcement of our remedies including, without limitation, repossession, repair and collection costs, attorneys' fees and court costs. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right.

**13. END OF TERM OPTIONS; RETURN OF EQUIPMENT.** At the end of the Term and upon 30 days prior written notice to us, you shall either (a) return all of the Equipment, or (b) purchase all of the Equipment AS-IS AND WHERE-IS, WITH OUT ANY WARRANTY AS TO CONDITION, TITLE OR VALUE, for the Fair Market Value, plus applicable taxes and other taxes. This Agreement shall continue on a month-to-month basis and you shall pay us the same Payments and Charges as applied during the Term until the Equipment is returned to us or you pay us the applicable purchase price (and taxes). If you are in default, or you do not purchase the Equipment at the end of the Term (or any month-to-month renewal term), you shall return all of the Equipment, freight and insurance prepaid at your cost and risk, to wherever we indicate in the continental United States, with all manuals and logs, in good order and condition (except for ordinary wear and tear from normal use), packed per the shipping company's specifications. You will pay us for any loss in value resulting from the failure to maintain the Equipment in accordance with this Agreement or for damages incurred in shipping and handling.

**14. ASSIGNMENT.** You may not assign or dispose of any rights or obligations under this Agreement or sub-lease the Equipment, without our prior written consent. We may, without notifying you, (a) assign this Agreement or our interest in the Equipment; and (b) release information we have about you and this Agreement to the manufacturer, Supplier or any prospective investor, participant or purchaser of this Agreement. If we do make an assignment under subsection 13(a) above, our assignee will have all of our rights under this Agreement, but none of our obligations. You agree not to assert against our assignee claims, offsets or defenses you may have against us.

**15. MISCELLANEOUS.** Notices must be in writing and will be deemed given 5 days after mailing to your (or our) business address. You represent that: (a) you have authority to enter into this Agreement and by so doing you will not violate any law or agreement; and (b) this Agreement is signed by your authorized officer or agent. This Agreement is the entire agreement between us, and may not be modified except by another document signed by us. This Agreement is binding on you and your successors and assigns. All financial information you have provided is true and a reasonable representation of your financial condition. You authorize us or our agent to: (a) obtain credit reports and make credit inquiries; (b) furnish payment history to credit reporting agencies; and (c) file UCC financing statements. Any claim you have against us must be made within two (2) years after the event which caused it. If a court finds any provision of this Agreement to be unenforceable, all other terms shall remain in effect and enforceable. You authorize us to insert or correct missing information on this Agreement, including your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of this Agreement, you agree to pay (in addition to the prepayment amount we quote to you) a fee of $100 per item of Equipment (not to exceed $400 or the maximum permitted by law) for such privilege. THE PARTIES INTEND THIS TO BE A "FINANCE LEASE" UNDER ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE ("UCC"). YOU WAIVE ALL RIGHTS AND REMEDIES CONFERRED UPON A CUSTOMER BY ARTICLE 2A OF THE UCC.

Initials

04/03/2009   12:43    2084721759                    TAMARACK RESORT LLC                    PAGE   02/02
                                                                                          Page:2/2
2008/03/31 09:13:39

03/31/2008 MON 07:42 FAX 319 841 6365        UBB                                          ☒002

Fisher's One Plan
**Agreement**

Agreement: 7322561-001

**EQUIPMENT INFORMATION**

| Activity | Manufacture &<br>Model No. | Description | Attachment Description | Serial Number | Beginning / End<br>Meter Read |
|----------|---------------------------|-------------|------------------------|---------------|-------------------------------|
| Adjustment | | | Remove allowance from the account | | |

**NEW PAYMENT INFORMATION**

| Monthly Payment | PREVIOUS | NEW | |
|-----------------|----------|-----|--|
| Minimum Payment | $ 8,228.44 | $ 1,669.94 | plus applicable<br>sales/use tax |
| **Black & White Images** | | | |
| Per Image Charge | 0.10377 | 0.00000 | |
| Image Allowance | 60,000 | 0 | |
| Excess Per Image Charge | 0.01979 | 0.00000 | |
| **Color Images** | | | |
| Per Image Charge | 0.00000 | 0.00000 | |
| Image Allowance | 33,000 | 0 | |
| Excess Per Image Charge | 0.11999 | 0.00000 | |

New Term (months):                72

Effective With Payment Due On:     4-Feb-2008

Document Fee:                      0

Excess Image Billing Frequency:    Quarterly

** Excess Images to be billed by Supplier **

**TERMS & CONDITIONS**

Reference is made to that certain agreement (as amended), the "Terminated Agreement") by and between the customer/lessee identified below ("Customer/Lessor") and the manufacturer identified below ("Owner/Lessor"), a copy of the original agreement is attached hereto as an exhibit. At the request of Customer/Lessee, the Terminated Agreement is hereby terminated. This agreement ("this Agreement") constitutes a new agreement between the parties hereto and incorporates by reference all of the terms of the Terminated Agreement ("Terminated Agreement Terms") as if the Terminated Agreement Terms were set forth herein in full, except (b) the equipment subject to this Agreement shall be all equipment subject to the Terminated Agreement, modified as described in the "Equipment Information" section above (with equipment described as added below subject to this Agreement, and equipment being deleted as deleted not being subject to this Agreement, and (b) the "Revised Payment Information" and the "Terms and Conditions" set forth above shall replace the corresponding terms of the Terminated Agreement.

Notwithstanding the fact that the Terminated Agreement has been terminated, all of Customer's payment obligations due immediately prior to such termination, or which would have accrued but had the Terminated Agreement not been terminated, are due hereunder as if they were originally incurred hereunder, including without limitation amounts relating to meter readings (whether or not such meter readings have been delivered or invoiced), taxes, and returned equipment. However, the payment amounts specifically described in the "New Payment Information" set forth herein replace the corresponding amounts (which would have become due) under the Terminated Agreement.

YOU HAVE SELECTED THIS EQUIPMENT, THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT OUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS AGREEMENT, YOU ARE AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND YOU WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF YOUR WARRANTY RIGHTS. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY OR OTHERWISE. WE PROVIDE THE EQUIPMENT TO YOU AS-IS. WE SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.

YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER. BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF IOWA. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN IOWA. THIS AGREEMENT CONSISTS OF 1 PAGE, PLUS THE EXHIBIT AND ANY SCHEDULE ATTACHED HERETO. BY SIGNING THIS AGREEMENT YOU ACKNOWLEDGE RECEIPT OF BOTH THIS AGREEMENT PLUS THE EXHIBIT AND AGREE TO THE TERMS ON BOTH THIS AGREEMENT PLUS EXHIBIT.

| Owner/Lessor:    Fisher's | Customer/Lessee:    Tamarack Resort LLC |
|---------------------------|------------------------------------------|
| By: _____ | By: _____ |
| Name: Tracie Vendola | Name: SHELBY WEIMER |
| Title: UBB Dealer Service | Title: VP OF IT |
| Date: 4-7-08 | Date: 4-3-08 |

# AMENDMENT FOR EQUIPMENT EXCHANGE
## ACCOUNT 7522561-001 ASSET #0022

**THIS AMENDMENT AGREEMENT,** (the "Amendment") entered into this 18th day of October, 2007 by Tamarack Resort LLC, ("Customer") and Fisher's Document Systems, ("Owner"), amends the Agreement entered into by the parties on September 19, 2007, together with any and all prior amendments thereof (hereafter the "Agreement"). [This Amendment and its modifications relate to Account No. 7522561-001 of the Agreement.] All capitalized terms used in this Amendment that are not otherwise defined herein shall have the meanings given to such terms in the Agreement.

Owner and Customer have agreed to amend the Agreement as follows:

The terms "Quantity, Equipment Model & Description and Serial Number," as they appear on the face of the Agreement, are amended to **ADD** the following equipment:

| QUANTITY | EQUIPMENT MODEL & DESCRIPTION | SERIAL NUMBER | START METER READ | START METER READ DATE |
|---|---|---|---|---|
| 1 | Canon IR3200 (Service Only) | MSK18977 | | 257537 |

The terms "Quantity, Equipment Model & Description and Serial Number," as they appear on the face of the Agreement, are amended to **REMOVE** the following equipment:

| QUANTITY | EQUIPMENT MODEL & DESCRIPTION | SERIAL NUMBER | ENDING METER READ | ENDING METER READ DATE |
|---|---|---|---|---|
| 1 | Canon IR3200 (Service Only) | MSM12641 | | |

Except as specifically amended herein, all other provisions of the Agreement shall remain in full force and effect.

**IN WITNESS WHEREOF,** the parties have caused this Amendment to be executed by their duly authorized representatives as of the date of the Agreement.

[IN THE EVENT CUSTOMER SHALL FAIL TO (A) SIGN AND RETURN THE ORIGINAL OF THIS AMENDMENT TO OWNER WITHIN FIVE (5) DAYS OF RECEIPT OR (B) CONTACT OWNER TO DISPUTE THE TERMS OF THIS AMENDMENT WITHIN FIVE (5) DAYS OF RECEIPT, OWNER SHALL ASSUME THAT (1) CUSTOMER HAS AGREED TO THESE TERMS, AND (2) THE TERMS OF THIS AMENDMENT SHALL BE ENFORCEABLE AGAINST OWNER]

OWNER: Fisher's Document Systems

By: _____

Name: ___Tracey Vontalge_____

Title: ____UBB Dealer Service Rep_____

Date: _____October 18, 2007_____

CUSTOMER: Tamarack Resort LLC

By: _____

Name: _____

Title: _____

## ADDENDUM TO FISHER'S ONE PROGRAM AGREEMENT

**THIS ADDENDUM TO FISHER'S ONE PROGRAM AGREEMENT** is made this 30th day of July, 2007 by and between, **FISHER'S DOCUMENT SYSTEMS** ("Owner") and **TAMARACK RESORT LLC**, as Lessee ("Customer").

### BACKGROUND

A. By that certain **FISHER'S ONE PROGRAM AGREEMENT**,       dated       by and between Owner and Customer (the "Agreement"), Owner has agreed to extend financing to Customer upon and subject to the terms and conditions set forth in the Agreement.

B. Owner and Customer desire to amend the terms and conditions of the Agreement, upon and subject to the terms and conditions of this Amendment.

C. All capitalized terms not otherwise defined herein will have the meanings set forth in the Agreement.

**NOW, THEREFORE**, in consideration of good and valuable consideration, the parties intending to be legally bound agree as follows:

1. Purchase Option at End of Term: **$1.00**

2. Rate % *.0340*     (must complete for AR, GA, MD, NH, NJ, NM, TX, WI)
   Rate Factor .0340 (must complete for ALL states, including the above special states)

3. **Agreement Charges.** The second (2nd) and third (3rd) sentences of Section 4 of the Agreement are replaced in their entirety with the following:

   "You agree to: (a) pay all premiums and other costs of insuring the Equipment; (b) reimburse us for all costs and expenses (including reasonable attorneys' fees and court costs) incurred in enforcing this Agreement; and (c) pay all other costs and expenses for which you are obligated under this Agreement. You agree to file all required property tax returns and promptly pay all property taxes which may be assessed against the Equipment."

4. **Ownership, Use Maintenance and Repair.** The first (1st) and second (2nd) sentences of Section 7 of the Agreement are replaced in their entirety with the following:

   "You shall have title to the Equipment immediately upon delivery and shall be the owner of the Equipment and we reserve a security interest in the Equipment to secure all of your obligations under this Agreement. In the event of a default, title to the Equipment shall revert to us free and clear of any rights or interests you may have in the Equipment."

5. **Indemnity.** The last three sentences of Section 8 of the Agreement are deleted in their entirety.

6. **Loss or Damage.** Section 9 of the Agreement is replaced in its entirety with the following:

   **9. Loss or Damage.** If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) repair the item or replace the item with a comparable item reasonably acceptable to us; or (b) pay us the sum of: (i) all past due and current Agreement Payments and Agreement Charges and  (ii) the present value of all remaining Agreement Payments and Agreement Charges for the item, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher). We will then release any security interest which we may have in the Equipment. Insurance proceeds shall be applied toward repair, replacement or payment hereunder, as applicable.

7. **End of Term Options; Return of Equipment.** Section 13 of the Agreement is replaced in its entirety with the following:

   *Boise, ID . S(w)*

   **13. End of Term Options; Return of Equipment.** If you are not in default, we will release any security interest which we may have in the Equipment at the end of the Term. If you are in default, you shall return all of the Equipment, freight and insurance prepaid at your cost and risk, to ~~wherever we indicate in the continental United States,~~ with all manuals and logs, in good order and condition (except for ordinary wear and tear from normal use), packed per the shipping company's specifications, and pay an inspection, restocking and handling fee of $100, not to exceed the maximum permitted by law, as reasonable compensation for our costs in processing returned equipment. You will pay us for any loss in value resulting from the failure to maintain the Equipment in accordance with this Agreement or for damages incurred in shipping and handling.

8. The following provisions are inserted as Sections 16, 17 and 18 of the Agreement:

   **16. Time Price.** You understand that the Equipment may be purchased for cash (the "Equipment Cost") or it may be purchased pursuant to this Agreement for a Time Price equal to the Equipment Component (as defined below) times the number of

**SEP 28 '07 AM 9:21**

payments, plus the Document Fee (if applicable) , all as set forth on the other side, or Page 1, of this Agreement, plus the $1.00 Purchase Option, and by executing this Agreement you have chosen to purchase the Equipment for that Time Price.

**17. Rate Factor.** Each Agreement Payment includes a part of our investment in the Equipment Cost and a return on our investment in this Agreement. Of each Agreement Payment, $ _1257.50_ is attributable to principal and interest based upon the amortization of the Equipment Cost (the "**Equipment Component**") and $ _4616.50_ is attributable to the full service maintenance provided in accordance with the terms of this Agreement (the "**Service Component**"). The Equipment Cost may be determined by dividing the Equipment Component by the Rate Factor. The total return on our investment (the total finance charge) is determined by multiplying the Equipment Component times the number of months in the Term, then adding the Document Fee (if applicable) and (as set forth on the reverse side, or Page 1, of this Agreement) plus the $1.00 Purchase Option, then deducting the Equipment Cost (as determined above). The difference so determined is the return to us on our investment (the total finance charge). The rate of return (finance rate) may be determined by deducting the Security Deposit (if applicable) from the Equipment Cost, and then applying to the amount so determined, the rate that will amortize that amount down to the Purchase Option amount by applying as payments, the Equipment Component and the Document Fee (if applicable). For purposes of that amortization, each Agreement Payment, including the Advance Rental Payment, will be considered received on the date it is required to be paid under this Agreement, and the Document Fee (if applicable) will be considered received on the date of this Agreement.

**18. Limitations on Charges.** This Section controls over every other part of this Agreement and over all other documents now or later pertaining to this Agreement. We both intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. Any part of this Agreement that could, be read under any circumstance to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under this Agreement to the maximum amount allowed under the legal limit. If in any circumstance, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under this Agreement, or refunded to you.

**9. Effective Date.** This Addendum is executed to be effective the same day as the Agreement, and is incorporated into and made a part of the Agreement.

**10. Effect of Addendum.** All terms and conditions of the Agreement not expressly modified hereby remain in full force and are hereby ratified by the parties.

**IN WITNESS WHEREOF,** the duly authorized representatives of the parties have executed this Addendum effective as of the date first set forth above.

**FISHER'S DOCUMENT SYSTEMS**                    **TAMARACK RESORT LLC**

By: _____          By: _____
                                                                    Signature of Authorized Signer

Name: _____          Name: _____ _SHELBY  WEIMER_____

Title: _____          Title: _____ _VP OF IT_____

SEP 28 '07 AM 9:21

## NOTIFICATION OF ASSIGNMENT

August 18, 2008

TO: Tamarack Resort Llc
311 Village
Pmb 3047
Donnelly,ID 83615

RE:  Equipment Lease Agreement No. 7522561-001, dated 09/19/07
     (the "Lease")

Dear Lessee:

Please be advised that FISHERS DOCUMENT SYSTEMS ("FISHERS DOCUMENT SYSTEMS")
sold and assigned to General Electric Capital Corporation ("GE Capital") all
of FISHERS DOCUMENT SYSTEMS's right, title and interest in and to (1) the
Lease and all rights and remedies thereunder,(2) the equipment subject to the
Lease, and (3) all payments due and to become due under Lease.

FISHERS DOCUMENT SYSTEMS did not transfer to GE Capital any of FISHERS
DOCUMENT SYSTEMS's obligations under the Lease. All correspondence and
questions regarding maintenance and performance of the equipment should be
directed to your FISHERS DOCUMENT SYSTEMS representative. Under the terms of
the Lease, you are required to remit Rent and all the other payments even if
you have an issue with the servicing dealer concerning maintenance, service,
or supplies.

Please acknowledge your receipt of this Notice of Assignment
("Notice") in the space provided below and return a copy to
GE Capital at 1010 Thomas Edison Boulevard SW, Cedar Rapids, IA 52404,
Attn: Travis Hempstead.

In the event that you do not acknowledge and return this Notice
within ten (10) days of the above date, GE Capital shall assume you
have read and agree with the information contained herein and will
remit to GE Capital all payments due and to become due under the
Lease.

Sincerely,

FISHERS DOCUMENT SYSTEMS

_____

ACKNOWLEDGED THIS  _____  DAY OF _____,20___.

By: _____

Name and Title: _____