Randall A. Peterman, ISB No. 1944
MOFFATT, THOMAS, BARRETT, ROCK &
    FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho  83701
Telephone  (208) 345-2000
Facsimile  (208) 385-5384
rap@moffatt.com
23389.0000

Elizabeth W. Walker, California State Bar No. 113545
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone (213) 896-6000
Facsimile (213) 896-6600
ewalker@sidley.com

Attorneys for Credit Suisse AG, Cayman Islands Branch
(formerly known as Credit Suisse, Cayman Islands Branch)

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>TAMARACK RESORT, LLC,<br><br>                   Debtor. | Case No. 09-03911-TLM<br>Chapter 11 |

**CREDIT SUISSE AG'S MOTION (I) TO PROHIBIT USE OF CASH COLLATERAL AND (II) FOR SEQUESTRATION AND AN ACCOUNTING**

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
1

> **Notice of Motion (I) to Prohibit Use of Cash Collateral and (II) for Sequestration and an Accounting, and Opportunity to Object and for a Hearing**
>
> <u>Hearing To Be Scheduled</u>.  Credit Suisse AG, Cayman Islands Branch will provide notice of a hearing regarding this matter upon obtaining a hearing date and time to be set by the Bankruptcy Court, located at the U.S. Courthouse, Fifth Floor, Boise, Idaho.
>
> <u>No Objection</u>.  The Court may consider this request for an order without further notice unless a party in interest files an objection no later than a date to be provided by the Court.
>
> <u>Objection</u>.  Any objection shall set out the legal and/or factual basis for the objection.  A copy of the objection shall be served on the movant, Credit Suisse AG, Cayman Islands Branch.

Credit Suisse AG, Cayman Islands Branch ("<u>Agent</u>") (formerly known as Credit Suisse, Cayman Islands Branch), hereby submits this motion (the "<u>Motion</u>") for entry of an order pursuant to sections 105 and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"): (i) prohibiting the above-captioned debtor in possession ("<u>Debtor</u>") from using Agent's cash collateral (as that term is defined in section 363 of the Bankruptcy Code, the "<u>Cash Collateral</u>"); and (ii) directing Debtor to sequester and account for Agent's Cash Collateral.  The Motion is necessitated by the fact that, since converting its case to chapter 11, Debtor has used Agent's Cash Collateral without consent and with deliberate disregard for the requirements of the Bankruptcy Code.  Agent has consistently and repeatedly advised Debtor that it does not consent to Debtor's use of Cash Collateral.  Despite being so advised, Debtor has failed to obtain Agent's consent to the use of Cash Collateral, has failed to file a motion for use of Cash Collateral, and has failed to segregate and account for all of Agent's Cash Collateral as required by section

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
2

363(c)(4) of the Bankruptcy Code.  Accordingly, and as set forth below, Agent respectfully requests that this Court grant the Motion.

## I.

## FACTUAL SUMMARY

As set forth in the *Affidavit of Megan Kane in Support of Credit Suisse AG's Motion (I) to Prohibit Use of Cash Collateral, and (II) For Sequestration and an Accounting* (the "Kane Affidavit") filed concurrently herewith, Agent has a perfected security interest in the Cash Collateral.  Agent is the administrative and collateral agent for those lenders ("Pre-Petition Lenders") which from time to time are parties to the Pre-Petition Loan[1] to Debtor (Kane Affidavit ¶ 1.)  The basis for Agent's interest in the Cash Collateral is summarized below.

On or about May 19, 2006, Debtor entered into that certain Credit Agreement (the "Pre-Petition Credit Agreement"), pursuant to which Debtor obtained the Pre-Petition Loan in the initial principal amount of $250,000,000, for the purposes of (i) refinancing the existing indebtedness owed by Debtor to third party lenders, (ii) funding certain development and construction costs of the project known as Tamarack Resort, a master planned resort development and ski area located in the counties of Valley and Adams in the State of Idaho (the "Project"), and (iii) funding certain reserves, transaction costs, and repayment of accounts payable in connection with the Project.  (Kane Affidavit ¶ 7.)

Debtor and its then-existing subsidiaries executed and delivered to Agent the Mortgages, the Security Agreement and the Subsidiary Guaranty to secure payment of all amounts due under the Pre-Petition Credit Agreement.  (Kane Affidavit ¶ 8.)  Each of the

---

[1] Except as provided herein, capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Kane Affidavit.

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
3

Mortgages was properly recorded.[2] (Kane Affidavit ¶ 8.) In addition to properly recording the Mortgages, the appropriate UCC-1 Financing Statements were filed in favor of Agent to reflect Agent's security interests related to the Pre-Petition Credit Agreement. (Kane Affidavit ¶ 9.)

Almost two years after entering into the Pre-Petition Credit Agreement and related Pre-Petition Loan Documents, Debtor (in breach of the Pre-Petition Credit Agreement) caused certain of its subsidiaries to merge into Debtor. (Kane Affidavit ¶ 10.) On or about February 22, 2008, Agent first became aware that on or about February 15, 2008 (and unbeknownst to Agent at that time), Debtor caused the following subsidiaries, among others, to merge with and into Debtor: TRC Whitewater, TRC Village Plaza, Tamarack Resort Realty LLC, Trillium Valley Construction LLC (the "Debtor Subsidiaries"). (Kane Affidavit ¶ 10.) Debtor caused these mergers even though 100% of the membership interests in the Debtor Subsidiaries had been pledged to Agent as additional collateral for the Pre-Petition Loan. (Kane Affidavit ¶ 10.)

Debtor has failed to repay the Pre-Petition Loan and all other Pre-Petition Loan Obligations owed pursuant to the Pre-Petition Loan Documents. (Kane Affidavit ¶ 11.) As of June 29, 2010, Debtor owed an amount not less than $306,585,272.92 pursuant to the Pre-Petition Loan Documents (collectively, the "Debt"). (Kane Affidavit ¶ 11.) A detailed summary of the Debt is attached to the Kane Affidavit as Exhibit 22. Interest, other expenses, costs and fees (including attorneys' fees and costs) also have accrued and will continue to accrue under the terms of the Pre-Petition Loan Documents. (Kane Affidavit ¶ 11.)

---

[2] As indicated in the Kane Affidavit, on or about June 16, 2006, to reform and correct a typographical error contained in the legal description of the TRLLC Mortgage, Debtor executed the Affidavit To Correct Legal Description, recorded with the County Recorder of Valley County, Idaho on June 19, 2006 as Instrument No. 309965. (Kane Affidavit ¶ 8(e).)

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**

## II.

## PROCEDURAL SUMMARY

Since converting its case to chapter 11, Debtor has used Agent's Cash Collateral without consent and with deliberate disregard for the requirements of the Bankruptcy Code. Agent has consistently and repeatedly advised Debtor that it does not consent to Debtor's use of Cash Collateral. Despite being so advised, Debtor has failed to obtain Agent's consent to the use of Cash Collateral, has failed to file a motion for use of Cash Collateral, and has failed to segregate and account for all of Agent's Cash Collateral as required by section 363(c)(4) of the Bankruptcy Code.

On December 11, 2009, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against Debtor (the "Petition Date"). During the pendency of the chapter 7 proceeding, on February 3, 2010, this Court entered its *Order Regarding the Amended Motion of Credit Suisse AG for Relief From the Automatic Stay* (CR 101) (the "Stay Relief Order"). The Stay Relief Order allows the State Court to proceed to determine the validity, priority and amount (including attorneys' fees and costs) of any and all mortgages, liens, claims or interests regarding Debtor's Real Property (as defined in the Stay Relief Order) in the State Court Action.

On April 9, 2010 (the "Conversion Date"), this Court granted Debtor's motion to convert its case from a case under chapter 7 of the Bankruptcy Code to a case under chapter 11 of the Bankruptcy Code (CR 190). Debtor is managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On June 17, 2010, the State Court entered its *Order Granting Plaintiff's Motion for Partial Summary Judgment as to Borrower and Borrower Subsidiaries on the Validity of Plaintiff's Mortgages* (the "Lien Validity Order", a copy of which is attached as Exhibit A to the *Affidavit of Elizabeth W. Walker in Support of Credit Suisse AG's Motion (I) to Prohibit Use of*

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
5

*Cash Collateral, and (II) For Sequestration and an Accounting* (the "Walker Affidavit") filed concurrently herewith). In the Lien Validity Order, the State Court ruled that Agent's Mortgages (as defined in the Lien Validity Order) are valid and enforceable against Debtor. (Lien Validity Order, ¶¶ 4-5.)

### III.

### UNAUTHORIZED USE OF CASH COLLATERAL

Since the Conversion Date, Agent has consistently and repeatedly advised Debtor that it does not consent to the use of Cash Collateral:

1. On or about April 28, 2010, Agent's counsel sent a letter to Debtor's counsel: (a) asserting Agent's security interest in substantially all of Debtor's real and personal property assets, including, without limitation, Cash Collateral; (b) advising Debtor that Agent does not consent to Debtor's use of Cash Collateral; (c) requesting a copy of any operating agreement and other documentation and information with respect to Debtor's conducting or allowing "zipline" canopy tours on its property ("Zipline Tours"); and (d) reserving the right to contend that any and all revenues generated from the Zipline Tours constitute proceeds of Agent's Cash Collateral and thus are Cash Collateral. (Letter from Joel G. Samuels to Randal J. French dated April 28, 2010 (the "April 28 Letter"), a copy of which is attached as Exhibit B to the Walker Affidavit.)

2. On June 8, 2010, Agent's counsel sent Debtor's counsel a further letter: (a) reiterating the requests made in the April 28 Letter; (b) reiterating that Agent does not consent to the use of Cash Collateral; and (c) demanding that Debtor immediately account for and segregate all Cash Collateral in its possession, custody or control, including any revenues generated from the Zipline Tours. (Letter from Joel G. Samuels to Randal J. French dated June 8, 2010, a copy of which is attached as Exhibit C to the Walker Affidavit.)

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
6

3. On June 10, 2010, Agent's counsel sent another letter to Debtor's counsel: (a) inquiring as to the specifics of any expenditures out of Cash Collateral in May and June 2010; (b) attaching a transcript of Debtor's testimony at the section 341(a) meeting (the "341 Meeting"), which confirmed that such unauthorized expenditures had been made; (c) again requesting information related to the Zipline Tours; (d) repeating that Agent does not consent to the use of Cash Collateral; and (e) repeating the demand for a segregation of and accounting for all Cash Collateral. (Letter from Joel G. Samuels to Randal J. French dated June 10, 2010 (the "June 10 Letter"), a copy of which is attached as Exhibit D to the Walker Affidavit.)

4. On June 28, 2010, Agent's counsel again sent a letter to Debtor's counsel: (a) responding to Debtor's June 23, 2010 request to use cash collateral by denying the specific request and informing Debtor that use of Cash Collateral should be governed by an appropriate order of this Court; (b) repeating various requests for financial and other information; and (c) repeating the demand for segregation and accounting. (Letter from Joel G. Samuels to Randal J. French dated June 28, 2010, a copy of which is attached as Exhibit E to the Walker Affidavit.)

5. Finally, on June 30, 2010, Agent's counsel sent a letter to Debtor's counsel: (a) again reiterating (i) that Agent does not consent to the use of Cash Collateral, (ii) that Agent requests segregation of and an accounting for all Cash Collateral, and (iii) the request for the previously-requested financial and other information; (b) asking Debtor to indicate by 5:00 PDT on July 2, 2010 whether it intended to file an appropriate motion to use cash collateral; and (c) indicating that if such a motion were not filed, Agent intended to file this Motion. (Letter from Joel G. Samuels to Randal J. French dated June 30, 2010, a copy of which is attached as Exhibit F to the Walker Affidavit.)

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**

Notwithstanding Debtor's failure to obtain Agent's consent to use Cash Collateral, and Debtor's failure to seek this Court's permission to use Cash Collateral, Debtor has, by its own admission, engaged in the unauthorized use of Cash Collateral since the Conversion Date:

1. At the 341 Meeting on June 4, 2010, Jean-Pierre Boespflug ("Boespflug") testified on behalf of Debtor that Debtor used Cash Collateral after the Conversion Date without authorization. (Transcript of 341 Meeting at 22:3-26:7, 27:22-25, 32:11-33:25, copy attached to the June 10 Letter, which is <u>Exhibit D</u> to the Walker Affidavit.) According to Boespflug, Debtor had made monthly expenditures of about $19,000 since the Conversion Date. (<u>Id.</u> at 33:19-22.)

2. On June 19, 2010, Debtor's counsel sent Agent's counsel an e-mail that attached a "profit and loss" statement for the period from April 7, 2010 to June 17, 2010 (the "<u>Profit and Loss Statement</u>"). (E-mail from Randal J. French to Joel G. Samuels dated June 19, 2010, a copy of which is attached as <u>Exhibit G</u> to the Walker Affidavit.) Although the Profit and Loss Statement was prepared on an accrual basis and not a cash basis, it identified total expenditures for the period in question as $128,843.17, including expenditures to (a) "Friends of Tamarack"[3] in April and May 2010 totaling $21,000 for "salary"[4]; and (b) West Mountain Golf[5]

---

[3] As Boespflug testified at the 341 Meeting, "Friends of Tamarack" is a limited liability company whose members are the same as the members of Debtor — Boespflug, Alfredo Miguel, Richard K. Getty, and Jerry R. Barnett. (Transcript of 341 Meeting, at 47:4-19.)

[4] One of the two "employees" of Friends of Tamarack with respect to such salary amounts is Charles Boespflug, Mr. Boespflug's son. <u>See</u> Transcript of 341 Meeting, copy attached as part of Exhibit D to the Walker Affidavit, at pp. 56-57.

[5] West Mountain Golf, LLC ("WMG") is a limited liability company in which Debtor holds a 40% membership interest. WMG owns the real property underlying a golf course and amenities at the Tamarack Resort. (*Motion of Pacific Continental Bank for Relief from the Automatic Stay* at 2 (CR 199).) Pursuant to a lease agreement, WMG leased the golf course and amenities to Debtor. (<u>Id.</u>) After entering into the Lease, WMG borrowed $3.5 million from Pacific Continental Bank's predecessor-in-interest. (<u>Id.</u>) On January 13, 2010, WMG filed a motion for relief from the stay (CR 78) to confirm the termination of the golf course lease and permit it to exercise its contractual rights and remedies to obtain possession of the golf course. That motion was granted by order of the Bankruptcy Court entered on February 9, 2010 (CR 104). It is also relevant here that Boespflug (and certain of the other

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
8

in April and May 2010 totaling $38,667 for "golf course maintenance." Notably, the *Chapter 11 Monthly Operating Report* (CR 253) for April 2010 (the "April MOR") that Debtor filed on June 6, 2010 identifies total April 2010 paid expenses as $0.00. In its May 2010 *Chapter 11 Monthly Operating Report* (CR 268) (the "May MOR") filed on July 1, 2010, Debtor admits to paid expenses during May 2010 in the amount of $10,062.47. The May MOR identifies these paid expenses as $57.47 for "utilities" and $10,005.00 for "maintenance & security," but provides no further detail regarding this unauthorized use of Cash Collateral. The June 2010 monthly operating report has not yet been filed.

        3.      Most recently, on July 8, 2010, Debtor's proposed "special DIP loan counsel" (see CR 239-241, 263-264) sent Agent's counsel an email: (a) indicating that Debtor agreed not to use Cash Collateral on a going forward basis without Agent's consent; and (b) attaching a draft June 2010 check register (the "June Check Register").[6] (Email from Jorian Rose to Paul Walker and Joel G. Samuels dated July 8, 2010 (the "July 8 Email," a copy of which is attached as Exhibit H to the Walker Affidavit.) The June Check Register clearly indicates that Debtor made unauthorized expenditures of Cash Collateral during the month of June 2010 totaling $89,830.72. This sum includes payments of (i) $21,200.00 to Friends of Tamarack as "reimbursement" for salaries paid by Friends of Tamarack for the months of April and May 2010, and (ii) $38,667.00 on behalf of West Mountain Golf (apparently representing

---

members of Debtor who are also members of Friends of Tamarack) is a guarantor of the obligations owed by WMG to Pacific Continental Bank. See Schedule H — Codebtors to Debtor's filed Schedules of Assets and Liabilities (CR 213), p. 100. It appears that Boespflug has caused Debtor to make payments, out of Cash Collateral, for the purpose of satisfying WMG's obligations with respect to the golf course, and for the apparent purpose of attempting to minimize the guaranty exposure of Boespflug and the other guarantors of the obligations of WMG to Pacific Continental Bank. See Profit and Loss Statement, copy attached as part of Exhibit G to the Walker Affidavit.

[6] The July 8 Email also attached copies of the April MOR and the May MOR, which are not included in Exhibit H to the Walker Affidavit.

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
9

Debtor's 40% share of its non-debtor affiliate West Mountain Golf's obligations for the months of April and May 2010).[7]

Taken together, the May MOR and the June Check Register evidence Debtor's admission to using not less than $101,985.33 of Cash Collateral without authorization. Although the July 8 Email indicates that Debtor <u>now</u> intends to begin abiding by the requirements of the Bankruptcy Code, based on Debtor's actions to date, Agent believes the relief sought in this Motion is necessary and appropriate. The statements in the July 8 Email from Debtor's proposed special DIP loan counsel do not have the force of a Court order and are not legally binding upon Debtor. Debtor's conduct to date in the face of Agent's repeated statements, going back to April 28, 2010, that Agent does not consent to use of Cash Collateral necessitates the relief sought in the Motion.

## IV.

## **BASIS FOR RELIEF**

Pursuant to section 363(c)(2) of the Bankruptcy Code, Debtor "may not use cash collateral . . . unless — (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). As detailed above, Agent has not consented to Debtor's use of Cash Collateral, and Debtor has not sought or obtained this Court's permission for such use. Given the fact that the resort is not operating and the Debtor's ongoing costs and liabilities substantially exceed its minimal revenues, Agent is not adequately protected with

---

[7] As such, apart from constituting an unpermitted use of Cash Collateral, Debtor's payment of a portion of the obligations of West Mountain Golf is in the nature of a post-petition equity contribution by Debtor to its 40%-owned affiliate, without appropriate authorization from the Court upon motion made and after notice and a hearing.

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
10

respect to Debtor's use of Cash Collateral, separate and apart from the lack of any statutory authorization for such use. See 11 U.S.C. § 363(e).

Moreover, section 363(c)(4) provides that, absent Agent's consent or an order of the Court authorizing use of Cash Collateral, Debtor "shall segregate and account for any cash collateral in the [Debtor's] possession, custody, or control." 11 U.S.C § 363(c)(4). Debtor has ignored Agent's multiple demands for segregation of, and an accounting for, Cash Collateral.

Agent reserves all of its rights and remedies with respect to Debtor's unauthorized use of Cash Collateral, including, without limitation, all rights and remedies available under section 549(a) of the Bankruptcy Code.[8]

## V.

## CONCLUSION

WHEREFORE, Agent requests that the Court grant the Motion and enter an order (i) prohibiting Debtor's use of Cash Collateral, (ii) directing Debtor to sequester and account to Agent for all Cash Collateral, (iii) imposing appropriate sanctions against Debtor for noncompliance with the Bankruptcy Code, and (iv) granting such other relief as justice requires.

DATED this 26th day of July, 2010.

SIDLEY AUSTIN LLP

By *Elizabeth W. Walker*
Elizabeth W. Walker – Of the Firm
Attorneys for Credit Suisse AG, Cayman
Islands Branch (formerly known as
Credit Suisse, Cayman Islands Branch)

---

[8] See, e.g., Marathon Petroleum Co. v. Cohen (In re Delco Oil, Inc.), 599 F.3d 1255, 1263 (11th Cir. 2010) (affirming the grant of summary judgment in favor of the trustee, and authorizing the recovery under § 549 of cash collateral transferred postpetition without authorization).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th of July, 2010, I caused a true and correct copy of the foregoing **CREDIT SUISSE AG'S MOTION (I) TO PROHIBIT USE OF CASH COLLATERAL AND (II) FOR SEQUESTRATION AND AN ACCOUNTING** to be served by electronic mail through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Charles W. Fawcett<br>SKINNER FAWCETT<br>515 S. 6th St.<br>P.O. Box 700<br>Boise, ID 83701-0700<br>Fax: 208.345.2668<br>cfawcett@skinnerfawcett.com<br>Accepting Service on behalf of:<br>American Stair Corporation, Inc.<br>Attorneys for: Sunbelt Rentals, Inc. | Ford Elsaesser<br>Doug B. Marks<br>James S. Macdonald<br>Suzanne M. Fegelein<br>ELSAESSER JARZABEK ANDERSON<br>MARKS ELLIOTT & MACDONALD, CHTD.<br>102 South Euclid, Suite 307<br>P. O. Box 1049<br>Sandpoint, Idaho 83864<br>Tel: 208.263.8517<br>Fax: 208.263.0759<br>ford@ejame.com<br>dmarks@ejame.com<br>james@ejame.com<br>sue@ejame.com<br>Attorneys for BAG Property Holdings, LLC |
| Brad A. Goergen<br>GRAHAM & DUNN PC<br>Pier 70<br>2801 Alaskan Way, Ste 300<br>Seattle, WA 98121-1128<br>bgoergen@grahamdunn.com<br>Attorneys for Banc of America Leasing & Capital, LLC | Kelly G. McConnell<br>GIVENS PURSLEY, LLP<br>601 W. Bannock St.<br>P.O. Box 2720<br>Boise, ID 83701-2720<br>laurierehder@givenspursley.com<br>Attorneys for Bank of the West |
| Bart W. Harwood<br>HALL FARLEY OBERRECHT<br>& BLANTON, P A<br>702 W. Idaho, Suite 700<br>P.O. Box 1271<br>Boise, ID 83701-1271<br>Fax: 208.395.8585<br>bwh@hallfarley.com<br>Attorneys for Banner/Sabey II, LLC | Thomas J. Angstman<br>Wyatt B. Johnson<br>ANGSTMAN JOHNSON & ASSOCIATES, PLLC<br>3649 Lake Harbor Lane<br>Boise, ID 83703-6913<br>tj@angstman.com<br>wyatt@angstman.com<br>Attorneys for Jean-Pierre Boespflug |

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**

| | |
|---|---|
| Randall A. Peterman<br>MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED<br>101 S. Capitol Blvd., 10th Floor<br>Post Office Box 829<br>Boise, Idaho 83701<br>Tel: 208.345.2000<br>Fax: 208.385.5384<br>rap@moffatt.com<br>Attorneys for Credit Suisse AG, Cayman Islands Branch | P. Bruce Badger<br>FABIAN & CLENDENIN<br>215 S. State St., Suite 1200<br>Salt Lake City, UT 84111<br>Fax: 801.531.1716<br>bbadger@fabianlaw.com<br>Attorneys for Credit Suisse AG, Cayman Islands Branch |
| Randal J. French<br>BAUER & FRENCH<br>1501 Tyrell Lane<br>Post Office Box 2730<br>Boise, Idaho 83701-2730<br>Fax: 208.383.0412<br>rfrench@bauerandfrench.com<br>nichole@bauerandfrench.com<br>nancy@bauerandfrench.com<br>jheineman@bauerandfrench.com<br>Attorneys for the Debtor | Lynnette M. Davis<br>John K. Olson<br>HAWLEY TROXELL ENNIS & HAWLEY LLP<br>877 W. Main St., Suite 1000<br>P.O. Box 1617<br>Boise, ID 83701-1617<br>Fax: 208.954.5213<br>ldavis@hawleytroxell.com<br>jkolson@hawleytroxell.com<br>Attorneys for EZA, P.C. dba OZ Architecture of Boulder, Inc.; Quality Tile Roofing, Inc. |
| David M. Penny<br>COSHO HUMPHREY, LLP<br>800 Park Blvd., Suite 790<br>P.O. Box 9518<br>Boise, ID 83707-9518<br>dpenny@cosholaw.com<br>Attorneys for Hobson Fabricating | Mark D. Perison<br>MARK D. PERISON, P A<br>314 S. 9th St., Suite 300<br>P.O. Box 6575<br>Boise, ID 83707<br>mark@markperison.com<br>Attorneys for Hopkins Growth Fund LLC |
| James B. Alderman<br>John R. Hammond, Jr.<br>BATT FISHER PUSCH & ALDERMAN LLP<br>U.S. Bank Plaza, 5th Floor<br>101 S. Capitol Boulevard<br>Post Office Box 1308<br>Boise, ID 83701<br>Tel: 208.331.1000<br>Fax: 208.331.2400<br>jba@battfisher.com<br>jrh@battfisher.com<br>Attorneys for Inland Crane, Inc., an Idaho corporation | Geoffrey J. McConnell<br>Richard L. Stacey<br>Anna E. Eberlin<br>MEULEMAN MOLLERUP LLP<br>755 W. Front Street, Suite 200<br>Boise, Idaho 83702<br>Tel: 208.342.6066<br>Fax: 208.336.9712<br>mcconnell@lawidaho.com<br>Stacey@lawidaho.com<br>aeberlin@lawidaho.com<br>Attorneys for Interior Systems, Inc. and YMC, Inc. |

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**

| | |
|---|---|
| David T. Krueck<br>TROUT JONES GLEDHILL FUHRMAN, P.A.<br>225 North 9th Street, Suite 820<br>P.O. Box 1097<br>Boise, Idaho 83701<br>Tel: 208.331.1170<br>Fax: 208.331.1529<br>dkrueck@idalaw.com<br>Attorneys for Kesler Construction, Inc. | John W. Kluksdal<br>HEPWORTH, JANIS & BRODY, CHTD.<br>537 W. Bannock Street, Ste. 200<br>P.O Box 2582<br>Boise, ID 83701-2582<br>Fax: 208.342.2927<br>hljklux@aol.com<br>Attorneys for Creditor Monique Lafleur |
| William F. Nichols<br>Davis F. VanderVelde<br>WHITE PETERSON GIGRAY ROSSMAN NYE & NICHOLS, P.A.<br>5700 E. Franklin Rd., Suite 200<br>Nampa, ID 83687-7901<br>Fax: 208.466.4405<br>wfn@whitepeterson.com<br>dvandervelde@whitepeterson.com<br>Attorneys for North Lake Recreational Sewer & Water District | Daniel C. Green<br>RACINE, OLSON, NYE, BUDGE & BAILEY, CHARTERED<br>201 E. Center/Center Plaza<br>P.O. Box 1391<br>Pocatello, Idaho 83204-1391<br>Fax: 208.232-6109<br>dan@racinelaw.net<br>Attorneys for Pacific Continental Bank |
| Thomas G. Walker<br>COSHO HUMPHREY, LLP<br>800 Park Blvd., Suite 790<br>P.O. Box 9518<br>Boise, Idaho 83707<br>Tel: 208.344.7811<br>Fax: 208.338.3290<br>twalker@cosholaw.com<br>Attorneys for Petra Incorporated | Kimbell D. Gourley<br>TROUT JONES GLEDHILL FUHRMAN GOURLEY, P.A.<br>P.O. Box 1097<br>Boise, ID 83701<br>Fax: 208.331.1529<br>kgourley@idalaw.com<br>Attorneys for Randolph & Deann Snook |
| Arnold L. Wagner<br>Anna E. Eberlin<br>MEULEMAN MOLLERUP LLP<br>755 West Front Street, Suite 200<br>Boise, Idaho 83702<br>Tel: 208.342.6066<br>Fax: 208.336.9712<br>wagner@lawidaho.com<br>aeberlin@lawidaho.com<br>Attorneys For Scott Hedrick Construction, Inc. | Jill S. Holinka<br>Paul J. Fitzer<br>MOORE SMITH BUXTON & TURCKE, CHTD.<br>950 W. Bannock, Suite 520<br>Boise,ID 83702<br>jsh@msbtlaw.com<br>pjf@msbtlaw.com<br>Attorneys for TMG/DPMiller LLC |
| Stephen J. Lord<br>ATTORNEY AT LAW<br>800 W. State St., Suite 200<br>Boise,ID 83702-5851<br>Fax: 208.343.3282<br>slatty@aol.com<br>Attorney for Tamarack Municipal Association | Jorian L. Rose<br>VENABLE LLP<br>2 Byron Lane<br>Larchmont, NY 10538<br>Fax: 212.307.5598<br>Attorneys for Tamarack Resort, LLC |

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
14

| | |
|---|---|
| Terri R. Pickens<br>Justin T. Cranney<br>PICKENS LAW, P A<br>398 S. 9th St., Suite 240<br>P.O. Box 915<br>Boise, ID 83701<br>Fax: 208.954.5099<br>terri@pickenslawboise.com<br>justin@pickenslawboise.com<br>Attorneys for Teufel Nursery, Inc. | Terry C. Copple<br>DAVISON COPPLE & COPPLE, LLP<br>199 N. Capitol Blvd., Suite 600<br>P.O. Box 1583<br>Boise, ID 83701-1583<br>Fax: 208.386.9428<br>tc@davisoncopple.com<br>Attorneys for Tri-State Electric, Inc. |
| David W. Newman<br>UNITED STATES TRUSTEE<br>Washington Group Central Plaza<br>720 Park Blvd., Suite 220<br>Boise, ID 83712<br>David.w.newman@usdoj.gov<br>Ustp.region18.bs.ecf@usdoj.gov | Monte C. Gray<br>GRAY LAW OFFICES, PLLC<br>P.O. Box 37<br>Pocatello, ID 83204-0037<br>montegray@cableone.net<br>Attorneys for Chapter 7 Trustee |
| Jeffrey M. Wilson<br>WILSON & MCCOLL<br>420 W. Washington<br>P.O. Box 1544<br>Boise, Idaho 83701<br>Tel: 208.345.9100<br>Fax: 208.384.0442<br>jeff@wilsonmccoll.com<br>Attorneys for Creditor United Rentals and GE Capital Corporation | Larry E. Prince<br>HOLLAND & HART LLP<br>Suite 1400, U.S. Bank Plaza<br>101 South Capitol Boulevard<br>P.O. Box 2527<br>Boise, Idaho 83701-2527<br>Tel: 208.342.5000<br>Fax: 208.343.8869<br>lprince@hollandhart.com<br>Attorneys for Creditor Wells Fargo Bank, National Association, as Trustee and State Board of Land Commissioners |
| Kenneth C. Howell<br>HAWLEY TROXELL ENNIS & HAWLEY LLP<br>877 Main Street, Suite 1000<br>P.O. Box 1617<br>Boise, ID 83701-1617<br>Tel: (208) 344-6000<br>Fax: (208) 954-5289<br>khowell@hawleytroxell.com<br>Attorneys for Wells Fargo Equipment Finance, Inc. | Fredric V. Shoemaker<br>Christopher C. Burke<br>Soo Y. Kang<br>GREENER BURKE SHOEMAKER<br>950 W. Bannock St., Suite 900<br>Boise, ID 83702<br>Fax: 208.319.2601<br>fshoemaker@greenerlaw.com<br>cburke@greenerlaw.com<br>skang@greenerlaw.com<br>Attorneys for West Mountain Golf, LLC<br>West Mountain Golf |

**CREDIT SUISSE'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**
15

AND, I FURTHER CERTIFY that on such date I served the foregoing **CREDIT SUISSE AG'S MOTION (I) TO PROHIBIT USE OF CASH COLLATERAL AND (II) FOR SEQUESTRATION AND AN ACCOUNTING** on the following non-CM/ECF Registered Participants in the manner indicated:

| | |
|---|---|
| Tamarack Resort LLC<br>311 Village Drive<br>PMB 3026<br>Tamarack, ID 83615 | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Manuel F. Cachan<br>MUNGER TOLLES & OLSON<br>355 S. Grand Ave., 35th Floor<br>Los Angeles, CA 90071-1560<br>Fax: 213.683.4014 | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Cascade Medical Center<br>Hospital District<br>P.O. Box 1330<br>Cascade, Idaho 83611<br>Fax: 208.382.3580 | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Linda Boyle<br>tw telecom inc.<br>10475 Park Meadows Drive, #400<br>Littleton, CO 80124<br>Tel: 303.566.1284<br>Fax: 303.566.1010 | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Mountain Utility<br>P.O. Box 1210<br>Donnelly, ID 83615 | (X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |

_____/s/_____
Elizabeth W. Walker