Randal J. French
BAUER & FRENCH
1501 Tyrell Lane
Post Office Box 2730
Boise, Idaho 83701-2730
Telephone (208) 383-0090
Facsimile 383-0412
E-Mail rfrench@bauerandfrench.com
  ISB No. 3032

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | Bkr. Case No. 09-03911-TLM |
| TAMARACK RESORT LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010

Tamarack Resort LLC, the debtor and debtor in possession herein (the "Debtor"), by counsel, hereby files this motion (the "Motion") for entry of an order pursuant to sections 105 and 1107 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9001(5) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the appointment of Links Realty Advisors, Inc. ("Links"), by and through Michael Fleischer, to serve as the responsible person (the "Responsible Officer") to act as or on behalf of the Debtor, effective as of the date of filing this Motion and, in support thereof, respectfully states as follows:

### Preliminary Statement

1.     The Debtor seeks entry of an order approving the appointment of Links, by and through Michael Fleischer, to serve as Responsible Officer to act as the manager and governing body for the Debtor in all respects, including to exercise any and all rights and powers of the Members, the Directors, the Board of Directors, the Chief Executive Officer, and all other Officers of the Debtor (as those terms are used in the LLC Agreement (as defined below)). Shortly, the Debtor will have utilized its limited cash collateral and will require financing in

order to fund the remaining administration of this chapter 11 case.  The Debtor has expended

considerable effort locating post-petition financing and believes the most viable financing source

is a syndicate that includes certain of the Debtor's pre-petition lenders.[1]  It became clear to the

current management and board of directors for the Debtor that new and independent management

is necessary to obtain post-petition financing and to give the Debtor the best chance for a

successful resolution of this chapter 11 case.  Thereafter, the Debtor completed an effort to locate

replacement management.  Moreover, the Debtor is at a critical juncture in this case, having

commenced a marketing process that has yielded multiple interested potential purchasers.

2.     Thus, the Debtor believes that approval of this Motion is critical in order for it to

(i) continue the marketing efforts for its assets, (ii) maintain and winterize its assets to preserve

and maximize the value of this estate, and (iii) progress this chapter 11 case towards resolution.

### Jurisdiction and Venue

3.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory bases for the relief sought herein are sections 105(a) and 1107 of the

Bankruptcy Code, Bankruptcy Rule 9001(5), and section 18-407 of the Delaware Limited

Liability Company Act.

### Background Information

A.     History of the Case

5.     On December 11, 2009, Banc of America Leasing & Capital LLC, Petra

Incorporated, Hobson Fabricating, and TMG/DPMiller LLC filed an involuntary petition against

the Debtor under chapter 7 of the Bankruptcy Code.

---

[1] Simultaneously herewith, the Debtor has filed a motion seeking approval of an order authorizing the Debtor to
obtain post-petition secured superpriority financing pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2),
364(d) and 507 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules and Rule 4001.1(b) of the Local
Rules.  The financing is conditioned upon the approval of a motion approving the appointment of a Responsible

MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF LINKS
REALTY ADVISORS, INC., BY AND THROUGH  MICHAEL FLEISCHER, AS
RESPONSIBLE OFFICER FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010,
p. 2

6.      On March 17, 2010, the Court entered an Order for Relief [Docket No. 151].

7.      On April 7, 2010, the Debtor filed a Notice of Conversion to Chapter 11 of the Bankruptcy Code [Docket No. 187].  An order converting the case was entered on April 9, 2010 [Docket No. 190].

8.      No trustee has been appointed in the case.  The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this chapter 11 case.

9.      On September 10, 2010, an Official Committee of Unsecured Creditors was appointed.

10.      The Debtor is a Delaware limited liability company that owns and operates a luxury resort located in Tamarack, Idaho (the "Tamarack Resort").  The Tamarack Resort features a lodge, golf course and ski resort and includes townhomes, cottages, chalets, and estate homes.  In order to maximize the value of its estate, the Debtor intends to pursue a sale of substantially all the assets of Tamarack Resort, including real and personal property, as a going concern through an orderly chapter 11 process.

B.      The Debtor's Current Management

11.      The Debtor operates pursuant to the Amended and Restated Limited Liability Company Agreement of Westrock Associates LLC, dated effective as of December 31, 2001 (the "LLC Agreement").[2]  A true and correct copy of the referenced portions of the LLC Agreement are attached hereto as Exhibit D.

12.      Section 15(a) of the LLC Agreement provides that the "business and affairs of the Company shall be managed by managers designated as a Board of Directors" consisting of not less than four nor more than eight directors.  Ex. D at § 8.  The LLC Agreement provides that the

---

Officer.
[2] The Debtor was formerly known as Westrock Associates LLC.

Debtor's Board of Directors shall have the right to take any all actions by and on behalf of the Debtor, except for those actions enumerated in Section 17(b) that specifically require member's consent. Ex. D at §15(a). Section 17(b) of the LLC Agreement provides that a majority of the Members may vote to approve the sale, transfer, or other disposition of all or substantially all of the Debtor's assets. Ex. D at § 17.[3]

13.    By consent of a majority of the Debtor's Board and a majority of its members, Links, by and through Michael Fleischer, was appointed as the Responsible Officer to serve as the Debtor's exclusive manager to take all actions on behalf of the Debtor, including the determination of whether to sell, transfer, or otherwise dispose of all or substantially all of the Debtor's assets. However, this appointment is subject to this Court's approval.

14.    The Debtor previously had four directors. Two of those directors recently resigned, leaving the Debtor with only two directors, Jean-Pierre Boespflug and Alfred Miguel Afif.

15.    The Debtor's key management has been Jean-Pierre Boespflug. Mr. Boespflug has undertaken efforts to market and sell the Tamarack Resort; however, he has not been successful in building consensus among the Debtor's creditors to support a potential sale transaction without new management.

16.    Certain creditors of the Debtor have raised concerns about Mr. Boespflug's management of the Debtor and his involvement in negotiating a sale of the Debtor's assets as well as other, non-estate assets. The Debtor believes that its transition of management and the resignation of Mr. Boespflug (as well as its other insider director, Mr. Afif) is in the best interests of its estate and creditors and will facilitate this chapter 11 case moving forward to a successful resolution.

---

3 The other actions requiring members' vote are: (1) dissolution or winding up of the Debtor; (2) merger or consolidation of the Debtor; and (3) issuance of certain member interests in excess of 15% of all outstanding interests.

MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 4

17.    The Debtor believes that it is in the best interests of the estate and its creditors for the Bankruptcy Court to approve the appointment of Links, by and through Michael Fleischer, to serve as Responsible Officer to act as and on behalf of the Debtor.  Upon approval of the appointment of the Responsible Officer, Mr. Boespflug and Mr. Afif will resign from the Debtor's board, and from all of their officer positions with the Debtor.

### Summary of Relief Sought

18.    Through this Motion, the Debtor seeks entry of an order approving the appointment of Links, by and through Michael Fleischer, to serve as Responsible Officer, pursuant to the terms and conditions outlined below, to act as and on behalf of the Debtor as a debtor in possession in all respects, effective as of the date of filing of this Motion.  In support of the Motion, the Debtor submits the verified statement of Mr. Boespflug (attached hereto as Exhibit B) and the declaration of Mr. Fleischer (attached hereto as Exhibit C).

### Authority for the Relief Requested

A.    Authority to Approve Appointment of Responsible Officer under the Bankruptcy Code

19.    Pursuant to section 105(a) of the Bankruptcy Code, the "Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).  Section 1107(a) of the Bankruptcy Code further provides that, "subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter." 11 U.S.C. §1107(a).  The Bankruptcy Code "is silent as to the nature of the limitations and conditions that a court may impose under" section 1107.  *7 Collier on Bankruptcy*, ¶ 1107.01, at 1107-3 (16th ed. 2010).  However, the courts have noted that "it is precisely when Congress has not stated the specific limits of a statute that the interpretive role of the [bankruptcy] court [as a court of equity] becomes most important." *Stuhley v. Hyatt*, 667 F.2d 807, 809 (9th Cir. 1982).  Furthermore, Rule 9001(5) provides that the Bankruptcy Court

MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY AND THROUGH  MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 5

may designate any person to act as the "debtor." Fed. R. Bankr. P. 9001(5) ("debtor" includes any person in control if designated by the court). See also 11 U.S.C. § 101(41) (definition of "person").

20.     Where appropriate and necessary to the successful resolution of a bankruptcy case, courts have authorized the appointment of a responsible person to act as and on behalf of the debtor in possession.  In one of the earliest reported decisions on the issue, the Seventh Circuit upheld the authority of the Bankruptcy Court to appoint a responsible officer to represent the debtor in possession in *Matter of Gaslight Club, Inc.*, 782 F.2d 767, 770-771 (7th Cir. 1986). In that case, the creditors' committee and the debtor entered into a consent order whereby the Bankruptcy Court approved the appointment of a third party to exercise the powers of the debtor in possession.  *Id.* at 770.  When the Bankruptcy Court's appointee later fired the debtor's president, the president filed a motion to appoint a trustee or vacate the prior consent order on the grounds that the court lacked the authority to enter the consent order.  *Id.*  The Seventh Circuit held that the Bankruptcy Court had the authority to enter the consent order pursuant to sections 105(a) and 1107(a): "[T]he court has consideration authority to interfere with the management of a debtor corporation in order to protect the creditors' interest."  *Id.*  In recognizing the Bankruptcy Court's power to designate a person to replace the debtor's management and to assume the rights and obligations of a debtor in possession, the Seventh Circuit relied on the decision of the Ninth Circuit in *In re Boileau*, 736 F.2d 503 (9th Cir. 1984), as "implicitly approv[ing] such designation." *Gaslight* at 771.

21.     While the Ninth Circuit in *Boileau* did not directly address the appointment of a third party (in that case, an examiner) to act as and on behalf of the debtor in possession, the Ninth Circuit was confronted with the issue in deciding the case.  In *Boileau*, the Court stripped the debtor of all management functions and left it as debtor in possession in name only.  736 F.2d at 505.  The Court also transferred the "functions of [the] debtor in possession under the terms of 11 U.S.C. §1107" to an "examiner with expanded powers."  *Id.* at 506.  Later, over the debtor's

MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY AND THROUGH  MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 6

objection, the examiner waived the debtor's attorney-client privilege. *Id.* The Ninth Circuit affirmed the power of the examiner to waive the privilege. *Id.* In so doing, the Ninth Circuit also necessarily affirmed the authority of the Bankruptcy Court to appoint an examiner with expanded powers to act in place and stead of the management of the debtor.

22.     Other bankruptcy courts have also authorized the appointment of a responsible person to act as and on behalf of the debtor in possession under appropriate circumstances. *See In re Comm. Options, Inc.*, 299 B.R. 481, 482 (Bankr. S.D. Ohio 2003) (ordering the appointment of a responsible person to act on behalf of the debtor-in-possession where such appointment was necessary "to protect the reorganization process and the rights of parties in interest" and where the appointment of a trustee would "merely delay the process and incur expense that this estate cannot afford"); *In re FSC Corp.*, 38 B.R. 346, 350 (Bankr. W.D. Pa. 1983) (the bankruptcy court has the authority to designate a third party individual with "full and exclusive authority" to exercise debtor-in-possession powers); *In re United Press Int'l, Inc.*, 60 B.R. 265, 274 (Bankr. D.D.C. 1986) (reaffirming the validity of a consent order abolishing the debtor's board of directors and authorizing debtor's management to file reorganization plan in debtor's name); *In re Real Estate Partners, Inc.*, 2009 WL 3246619 at *1 & n.1 (C.D. Cal. 2009) (affirming the order of the Bankruptcy Court authorizing the appointment of responsible person and denying the appointment of a Chapter 11 trustee); *In re Blue Stone Real Estate Constr. & Dev. Corp.*, 392 B.R. 897, 908 (Bankr. M.D. Fla. 2008) (approving a person to exercise all the rights, powers, and duties of a debtor in possession pursuant to section 1007(a) of the Bankruptcy Code); *In re The 1031 Tax Group, LLC et al.*, 2007 WL 2085384 at *5 (Bankr. S.D.N.Y. 2007) (authorizing the retention of an independent third-party to oversee the debtor based on a valid business justification).

23.     Here, approval of the appointment of Links, by and through Michael Fleischer, is appropriate and necessary in order to advance this chapter 11 case. Such appointment will

resolve concerns of creditors that management will act independently and in the creditors' best interests.

24.     Additionally, approval of the appointment of Links, by and through Michael Fleischer, as Responsible Officer rather than the appointment of a chapter 11 trustee is in the best interests of the estate and its creditors.  As discussed herein, the appointment of Links, by and through Michael Fleischer, as Responsible Officer is appropriate under the Bankruptcy Code, decisional law, applicable state law, and under the Debtor's LLC Agreement.  *See* 11 U.S.C. §1107, 6 Del. C. § 18-407, and Ex. D at § 15(a).  Michael Fleischer and Links have particular expertise in the sale of distressed resort property, which a chapter 11 trustee appointed by the Court likely would not have.  Without Links' retention as Responsible Officer, the DIP lenders will not provide the post-petition financing that the Debtor needs to complete the chapter 11 process.  Michael Fleischer and Links have already invested a significant amount of time researching this bankruptcy case and becoming familiar with the Debtor's assets and business operations.  Moreover, the proposed compensation to be paid to Links, as discussed more fully below, is likely less than what a Chapter 11 trustee would ultimately receive as his commission, thereby maximizing the amount of money available for distribution to creditors.  Links, by and through Michael Fleischer, is prepared to assume responsibility immediately upon entry of an order granting this Motion and requires no additional time to be appointed as well as "ramp up," as would a newly-appointed chapter 11 trustee.

25.     Finally, approval of the appointment of Links, by and through Michael Fleischer, as Responsible Officer is supported by the Debtor's primary constituent groups.  The creditors with the most at stake in this case, Credit Suisse and the other Pre-Petition Lenders, support the Motion.  The Debtor's two remaining directors, Mr. Boespflug and Mr. Afif, also support the Motion (*see* the Unanimous Written Consent of the Board of Tamarack Resort LLC authorizing the appointment of the Responsible Officer, attached hereto as Exhibit F), as does the majority of the equity ownership, including Mr. Boespflug, Cross Atlantic Real Estate LLC (an entity owned

by Mr. Boespflug), and VPG Investments, Inc. (owned by Mr. Afif) (*see* Ex. E). Together, Mr. Boespflug, Cross Atlantic Real Estate LLC, and VPG Investments, Inc. hold a majority of the equity ownership in the Debtor and have the authority to appoint Michael Fleischer to the Board of Directors and to approve, ratify, and confirm the delegation of authority to Links, by and through Michael Fleischer, as the Responsible Officer. Ex. D at § 17(b) (the most restrictive covenant in the Agreement requires a mere majority of the members to vote in favor of certain corporate acts).

26.    Time is of the essence in this matter. The Debtor has filed a motion seeking approval of debtor-in-possession financing simultaneously with the filing of this Motion. The proposed DIP lenders and the proposed DIP agent will not proceed with that financing without the approval of this Motion. Any delay in the appointment of Links, by and through Michael Fleischer, as Responsible Officer will cause irreparable harm to the estate and its creditors by impeding the Debtor's ability to sell Tamarack Resort in a timely and efficient fashion, ideally with sufficient time to permit a buyer to operate the Tamarack ski resort this winter.

B.    Authority to Delegate Management Authority under the Delaware Limited Liability Company Act

27.    Section 18-407 of the Delaware Limited Liability Company Act states as follows:

Unless otherwise provided in the limited liability company agreement, a member or manager of a limited liability company has the power and authority to delegate to 1 or more other persons the member's or manager's, as the case may be, rights and powers to manage and control the business and affairs of the limited liability company, including to delegate to agents, officers and employees of a member or manager or the limited liability company, and to delegate by a management agreement or another agreement with, or otherwise to, other persons. Unless otherwise provided in the limited liability company agreement, such delegation by a member or manager of a limited liability company shall not cause the member or manager to cease to be a member or manager, as the case may be, of the limited liability company or cause the person to whom any such rights and powers have been delegated to be a member or manager, as the case may be, of the limited liability company.

MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 9

28.     The Debtor's two remaining directors, Mr. Boespflug and Mr. Afif, wish to delegate their powers to manage and control the Debtor's business and affairs to Links, by and through Michael Fleischer, pursuant to Section 18-407 of the Act.

**The Appointment of Links, by and through Michael Fleischer, as Responsible Officer**

29.     The Debtor seeks to appoint Links, by and through Michael Fleischer, as Responsible Officer because of Links' and Michael Fleischer's extensive experience and knowledge in the field of distressed real estate assets.  Links and Michael Fleischer have particular expertise in hospitality and resort assets, including ski resorts, as well as master planned developments, as set forth in the Declaration of Michael Fleischer (the "Fleischer Declaration") attached hereto as Exhibit C.  The appointment of Links, by and through Michael Fleischer, as Responsible Officer is necessary to advance this chapter 11 case given the strained relationship between the Debtor's current management and the Debtor's creditors.

30.     The Debtor proposes that Links, by and through Michael Fleischer, have the authority to act as and on behalf of the Debtor in all respects, including but not limited to the following:

- Serving as Responsible Officer for the Debtor, with full and sole decision-making authority on behalf of the Debtor (subject to any necessary court approvals);
- Preparing and finalizing the DIP budget, consistent with the DIP term sheet;
- Obtaining approval of the DIP loan, consistent with the DIP term sheet negotiated by the Debtor;
- Developing a plan for the marketing and sale of substantially all the Debtor's assets;
- Formulating a plan of liquidation on behalf of the Debtor consistent with the DIP term sheet negotiated by the Debtor;
- Retaining legal counsel and other professionals as necessary to assist the Debtor in the sale of substantially all its assets;
- Preparing and submitting financial reports as required by the Office of the U.S. Trustee and the DIP lenders;
- Retaining and overseeing service providers to provide essential maintenance and security for the Debtor's assets consistent with the approved DIP budget;
- Serving as the primary point of contact and business negotiator for potential bidders during the sale process;

- Retaining a broker to market the Debtor's assets, consistent with the DIP term sheet;
- Providing regular updates to and serving as the sole point of contact for the DIP agent and the DIP lenders;
- Serving as the sole business (non-legal) contact with the State Land Board, North Lake Recreational Sewer & Water District, TMA and other creditors and constituents in the Chapter 11 case;
- Implementing a plan of liquidation and sales procedures as approved by the Debtor's constituents and the Bankruptcy Court; and
- Such other services as the Debtor deems necessary or advisable in connection with the Chapter 11 case.

31.    In preparing to serve on behalf of the Debtor in this case, Links, by and through Michael Fleischer, has become familiar with the Debtor's business and many of the potential legal issues which may arise in the context of this chapter 11 case in connection with obtaining DIP financing, negotiating the sale of substantially all the Debtor's assets, and formulating and implementing a plan of liquidation.

32.    To the best of the Debtor's knowledge, except as otherwise disclosed in the Fleischer Declaration, neither Michael Fleischer nor Links has represented the Debtor, its creditors, equity security holders, or any other parties in interest, or their respective attorneys, in any matter relating to the Debtor or its estate.  As set forth in the Fleischer Declaration, Michael Fleischer and Links are disinterested as that term is defined section 101(14) of the Bankruptcy Code.

33.    The Debtor requests that Links be retained effective as of the date of filing this Motion.

34.    On September 1, 2010, Links provided the Debtor with a proposal letter (the "Engagement Letter") outlining the terms and conditions for Links' appointment as Responsible

Officer, including the payment of fees and expenses.  A true and correct copy of the Engagement

Letter is attached as Schedule 1 to the Fleischer Declaration.  The Debtor proposes compensating

Links consistent with the terms and conditions in the Engagement Letter.  A summary of Links'

fees and expenses follows.

(a)   Retainer: $33,500 non-refundable retainer which shall be fully earned upon execution by Links and paid in cash upon the closing of the DIP loan, provided, however, that in the event ski operations are not reopened (under a concession agreement, lease or otherwise) during the term of this engagement, this amount shall be credited against the Disposition Fee and/or any amounts owing to the Debtor upon the termination of Links services;-

(b)   Monthly Fee: $67,000 for the first month, and $33,500 per month thereafter, in each case, payable monthly in advance during the term of the engagement; and

(c)   Disposition Fee: In the event a sale, transfer or other disposition, conveyance or hypothecation, in any form whatsoever, is consummated in one or a series of transactions, of a part, all or substantially all of the Company's assets (each of the foregoing, a "Transaction") pursuant to an agreement or commitment entered into (i) during the term of Link's engagement or (ii) during the 12-month period following termination of Link's engagement to any person with whom Links or the Debtor have contact relative to such Transaction during the term of Links' engagement, which fee shall be fully earned upon consummation of such Transaction and shall be payable at closing of the Transaction (the "Disposition Fee") as follows:

- Non-Credit Bid Sale:  In the event a Transaction is consummated with a party other the lenders under that certain Credit Agreement dated as of May 19, 2006 and the lenders to the Second Amended and Restated Receivership Credit Facility Agreement dated as of May 18, 2009 (the "Pre-Petition Lenders"), Links shall earn a Disposition Fee equal to 1.0% of the Aggregate Transaction Value, minus the product of (a) (i) 2, plus (ii) the number of Monthly Fees paid to Links, multiplied by (b) $8,500 (collectively, the "Creditable Amount"); or

- Credit Bid: In the event a Transaction is consummated by the Pre-Petition Lenders acquiring all or substantially all of the Debtor's assets or stock through a plan or reorganization or otherwise through a chapter 11 proceeding, Links shall earn a Disposition Fee equal to $250,000, minus the Creditable Amount; or

MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 12

- **Other Transaction**: In the event a Transaction is consummated other than through a chapter 11 proceeding (including, without limitation, through either a chapter 7 proceeding or foreclosure proceeding outside of bankruptcy of any kind), Links shall earn a Disposition Fee equal to $175,000.

(d)    Expenses.    It is Links' policy to charge in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, long-distance telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for working meals and the cost of retaining appropriate third party professionals. Links proposes to charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to Links' other clients without any 'markup.'

35.    The Debtor proposes to pay Links for services rendered, as set forth above and in the attached Fleischer Declaration, and to reimburse Links according to its customary reimbursement policies, all subject to review by this Court. The Debtor understands that Links hereafter intends to apply to the Court for allowance and authorization of compensation and reimbursement of expenses in accordance with section 328 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and further orders of this Court for all services performed and expenses incurred in connection herewith. Links, however, seeks a waiver of any requirement for maintaining time detail in connection with their services.

36.    In connection with its appointment as Responsible Officer to act as and on behalf of the Debtor, Links has requested certain indemnity and exculpation protections, as provided in the Engagement Letter and under applicable Delaware corporate law.

37.    Additionally, in recognition that prior management and the members of the Debtor's Board of Directors will no longer be in control of the Debtor, they have requested a "comfort" provision that clarifies that they will no longer be liable for the Debtor's acts from and

after their resignation and appointment of the Responsible Officer, and no continuing duty or obligation to operate the property.

## **NOTICE**

38.    No trustee or examiner has been appointed in this chapter 11 case. Notice of this Motion has been given by facsimile, electronic transmission, overnight delivery, first-class U.S. Mail (postage pre-paid), or hand delivery to (a) counsel for the United States Trustee for the District of Idaho, (b) each of the members of the Committee, (c) proposed counsel to the Committee, (d) each of the other twenty-five (25) largest unsecured creditors, (e) counsel for those creditors listed on Schedule D to the Debtor's Schedules and Statement of Financial Affairs, (f) all other parties in interest who have filed requests for notices and pleadings in this case, (g) each of the Debtor's members, (h) all members and former members of the Debtor's Board of Directors (including former directors Messrs. Barnett, Getty and Weilmunster), and (i) all former officers of the Debtor (including, without limitation, Messrs. Zurkoff and De Los Prados). The Debtor submits that no other notice need be given.

WHEREFORE, based on the foregoing, the Debtor respectfully requests that the Court grant the Motion for Entry of an Order Approving the Appointment of Links Realty Advisors, Inc., by and through Michael Fleischer, as Responsible Officer for the Debtor Effective as of September 24, 2010, and grant such other and further relief as may be just and proper.

DATED this _____ day of September, 2010.

BAUER & FRENCH

By: _____

Randal J. French

Attorneys for the Debtor and Debtor-in-Possession

EXHIBIT A
PROPOSED ORDER
UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

In Re:                          )
                                )    Bkr. Case No. 09-03911-TLM
TAMARACK RESORT LLC,            )    Chapter 11
                                )
            Debtor.             )
                                )
_____

**ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC.,
BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER
FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010**

UPON CONSIDERATION of the motion (the "Motion") for entry of an order approving

the appointment of Links Realty Advisors, Inc. ("Links"), by and through Michael Fleischer, to

serve as the responsible person (the "Responsible Officer") for Tamarack Resort LLC, the debtor

and debtor-in-possession herein (the "Debtor"), effective as of September 24, 2010, to act as or

on behalf of the Debtor pursuant to sections 105 and 1107 of Title 11 of the United States Code

(the "Bankruptcy Code") and Rule 9001(5) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"); and upon consideration of the Declaration of Michael L. Fleischer (the

"Fleischer Declaration") filed in support of the Motion; and upon consideration of the Verified

Statement of Jean-Pierre Boespflug (the "Boespflug Statement") and the Court finding, on the

representations made in the Motion, the Fleischer Declaration and the Boespflug Statement, that

Links does not represent or hold any interest adverse to the Debtor or its estate as to the matters

upon for which it is to be appointed and is a disinterested person within the meaning of section

101(14) of the Bankruptcy Code, and that the appointment of Links is consistent with the

provisions of sections 105(a) and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 9001(5);

ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY
AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE PERSON FOR THE
EFFECTIVE AS OF SEPTEMBER 24, 2010

EXHIBIT

A

due and proper notice of the Motion having been provided as set forth in the Motion; the Court

finding that no other or further notice need be provided; any objections to the Motion having

been either withdrawn or overruled by the Court; and the Court finding that the approval of the

appointment of Links, by and through Michael Fleischer, to act for and on behalf of the Debtor is

appropriate, necessary and in the best interests of the Debtor, its estate, its creditors and all other

parties in interest; and upon the Motion, the Fleischer Declaration, the Boespflug Statement and

all of the proceedings had before the Court; and after due deliberation and finding good cause

therefor, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that pursuant to sections 105(a) and 1107 of the Bankruptcy Code and

Bankruptcy Rule 9001(5), the appointment of Links, by and through Michael Fleischer, to serve

as Responsible Officer to act as or on behalf of the Debtor upon the terms and conditions set

forth in the Motion, effective as of September 24, 2010, is hereby approved; and it is further

ORDERED, that pursuant to sections 105(a) and 1107 of the Bankruptcy Code,

Bankruptcy Rule 9001(5), and Section 18-407 of the Delaware Limited Liability Company Act,

the delegation of management and all other authority to Links, by and through, Michael

Fleischer, from (i) the Board of Directors pursuant to the Unanimous Consent attached as Exhibit

F to the Motion, and (ii) the majority Members of the Debtor pursuant to the form of Consent

attached as Exhibit E to the Motion, is hereby approved; and it is further

ORDERED, that as Responsible Officer, Links, by and through Michael Fleischer, shall

have the sole and exclusive authority to make all decisions and exercise all rights of the Debtor

ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY
AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE
DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 2

as the debtor in possession in this case and shall fulfill all the duties and responsibilities on

behalf of the Debtor in this case; and it is further

ORDERED, that Links shall be entitled to receive compensation for services rendered

and reimbursement of actual, necessary expenses in accordance with the terms and conditions set

forth in the Motion, subject to application to this Court for allowance and authorization of

compensation and reimbursement of expenses in accordance with section 328 of the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules and further orders of this Court; and it is further

ORDERED, that Links shall file applications on a monthly basis within ten (10) days of

the conclusion of the calendar month for the work performed during the previous month

describing the services it performed in summary text (without the need to maintain detailed time

entries) and describing the expenses incurred during that monthly period; and it is further

ORDERED, in the event there is an objection by any party-in-interest or the United States

Trustee's Office to payment of any monthly fee or the reimbursement of any expense to Links,

Links shall be required to withhold (to the extent of such objection) the payment of the

succeeding monthly fee until the objection is resolved either consensually or by the Bankruptcy

Court; and it is further

ORDERED, that Jean-Pierre Boespflug and Alfred Miguel Afif (the Debtor's directors

and managers that resign effective upon the approval of the appointment of the Responsible

Officer by this Order), shall have no personal liability for any actions taken by taken by the

Responsible Officer, or by the Debtor at the direction of the Responsible Officer, and shall have

no duty to operate or manage the estate of the Debtor from and after resignation of their positions

ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY
AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE
DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 3

as members of the Board of Directors of the Debtor; and it is further

ORDERED, that Links and Michael Fleischer shall each be entitled to the benefits of the

indemnification and exculpation provisions set forth in the Engagement Letter and in accordance

with applicable Delaware law.

Dated: _____ __, 2010

                     _____

                     TERRY L. MYERS
                     CHIEF UNITED STATES BANKRUPTCY JUDGE

**// END OF TEXT //**

Order submitted by

/s/
Randal J. French (ISB No. 3032)
BAUER & FRENCH
1501 Tyrell Lane
Post Office Box 2730
Boise, Idaho 83701-2730
Telephone (208) 383-0090
Facsimile 383-0412
E-Mail rfrench@bauerandfrench.com
*Attorneys for Tamarack Resort, LLC*

ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY
AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE
DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 4

EXHIBIT B

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

In Re:                                       )        Bkr. Case No. 09-03911-TLM
                                             )        Chapter 11
TAMARACK RESORT LLC,                         )
                                             )
              Debtor.                        )
_____      )
                                             )

**VERIFIED STATEMENT OF JEAN-PIERRE BOESPFLUG IN SUPPORT OF
MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF
LINKS REALTY ADVISORS, INC., BY AND THROUGH MICHAEL FLEISCHER,
AS RESPONSIBLE OFFICER FOR THE DEBTOR
EFFECTIVE AS OF SEPTEMBER 24, 2010**

The undersigned, having been duly sworn, deposes and says:

1.      I am over eighteen (18) years of age.

2.      I have personal knowledge of and am competent to testify as to each of the matters set

forth herein.

3.      I am a member of the Board of Directors of Tamarack Resort, LLC (the "Debtor").  I

am currently serving as the chief executive officer of the Debtor.

4.      The Debtor is a Delaware limited liability company that owns and operates a luxury

resort located in Tamarack, Idaho (the "Tamarack Resort").

5.      The Debtor operates pursuant to the Amended and Restated Limited Liability

Company Agreement of Westrock Associates LLC, dated effective as of December 31, 2001 (the

"LLC Agreement").[4]

6.      Section 17(b) of the LLC Agreement provides that a majority of the Members may

vote to approve the sale, transfer, or other disposition of all or substantially all of the Debtor's

assets.  By the consent of a majority of the Members, the Members voted to authorize the

Responsible Officer to determine whether to sell, transfer, or other dispose of all or substantially

---

[4] The Debtor was formerly known as Westrock Associates LLC.

EXHIBIT
**B**

all of the Debtor's assets, in accordance with both the provisions of the LLC Agreement and applicable Delaware law permitting such delegation of authority to the Responsible Officer.

7.      Section 15(a) of the LLC Agreement provides that the "business and affairs of the Company shall managed by managers designated as a Board of Directors" consisting of not less than four nor more than eight directors.

8.      The Debtor currently has only two directors, including me.

9.      It is in the best interests of the estate and creditors to transition the Debtor's management and approve the appointment of Links Realty Advisors, Inc. ("Links"), by and through Michael Fleischer, to act as Responsible Officer.

10.      Based on discussions with creditors and with certain professionals for the Debtor, I believe that the approval of the appointment of Links, by and through Michael Fleischer, to serve as Responsible Officer will resolve concerns of creditors that management will act independently and in their best interest.

11.      I have previously caused the Debtor to retain CB Richard Ellis ("CBRE") to market the Tamarack Resort for sale, and have interfaced with CBRE professionals regarding such marketing efforts.  (An application for approval of the retention of CBRE as real estate broker for the Debtor has been filed with the Court and remains pending.)  Multiple parties have submitted indications of interest to purchase the Resort and various assets within the Tamarack Resort.  I do not believe that the DIP lenders will advance funds unless new management is selected.  I believe that the proposed DIP lenders provide the best source of post-petition financing for the Debtor under the facts and circumstances of this case.[5]  In order to advance this chapter 11 case, to fund a marketing, sale and confirmation process, and to maintain and winterize the Debtor's assets, I

---

[5] Simultaneously herewith, the Debtor has filed a motion seeking approval of an order authorizing the Debtor to obtain post-petition secured superpriority financing pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(d) and 507 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules and Rule 4001.1(b) of the Local Rules.

VERIFIED STATEMENT IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER APPROVING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR EFFECTIVE AS OF SEPTEMBER 24, 2010, p. 2

believe that the Responsible Officer appointment should be approved by the Court as being in the
best interests of the Debtor's estate and its creditors and other parties in interest.

I DECLARE under the penalty of perjury under 28 U.S.C. §1746 that the contents of the
foregoing affidavit are true and correct.

Dated:        September 17th, 2010

_Jean-Pierre Boespflug_

VERIFIED STATEMENT IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE APPOINTMENT OF LINKS REALTY ADVISORS, INC., BY AND
THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR
EFFECTIVE AS OF SEPTEMBER [ ], 2010, p. 3

NY1DOCS1#59567

EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TAMARACK RESORT, LLC | ) | Case No. 09 -03911 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### DECLARATION AND DISCLOSURE STATEMENT FOR MICHAEL FLEISCHER AND LINKS REALTY ADVISORS INC. AS RESPONSIBLE OFFICER FOR THE DEBTOR AND DEBTOR IN POSSESSION

      I, Michael L. Fleischer, hereby declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information and belief.

      1.      I am the President of Links Realty Advisors, Inc. ("Links"), a California S-corporation, which maintains offices at 9777 Wilshire Blvd., Suite 600, Beverly Hills, CA 90212.

      2.      This Declaration (the "Declaration") is submitted in support of the motion (the "Motion") for entry of an order pursuant to sections 105 and 1107 of Title 11 of the United States Code (the "Bankruptcy Code") approving the appointment of Links Realty Advisors, Inc. ("Links"), by and through Michael Fleischer, to serve as the responsible person (the "Responsible Officer") to act as or on behalf of the debtor and debtor in possession (the "Debtor"), effective as of September 24, 2010, pursuant to the Engagement Letter dated September 1, 2010 and attached hereto as Schedule 1.

DECLARATION AND DISCLOSURE STATEMENT FOR LINKS REALTY ADVISORS INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR, p. 1

EXHIBIT
C

3.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.  I have relied on the work of other staff at Links in ascertaining and confirming certain information set forth herein.  To the extent that any information disclosed herein requires amendment or modification upon Links' completion of further analysis or as additional information becomes available to it, a supplemental Declaration will be submitted to the Court reflecting such amended of modified information.

4.      By the accompanying Motion, the Debtor seeks Court approval of the retention of Links, by and through the undersigned, to act as the Responsible Officer for the Debtor. This Declaration is submitted in support of that Motion, in accordance with Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure.

## LINKS' CONNECTIONS WITH THE DEBTOR

5.      Links utilizes a number of procedures ("Procedures") to determine its relationships, if any, to parties that may have connections to a client debtor.  In implementing the Procedures, Links took the following actions to identify parties that may have connections with the Debtor and Links' connections with such parties:

    a.  Links reviewed a list of parties in interest, including the Debtor, their insiders and significant creditors of the Debtor (the "Initial Conflicts Checklist").

    b.  Links compared the Initial Conflicts Checklist with the names of its current and former clients and such clients' legal counsel in its electronic database.

    c.  Links also confirms with members of its deal team that they have no personal conflicts with Debtor, its insiders and significant creditors.

DECLARATION AND DISCLOSURE STATEMENT FOR LINKS REALTY ADVISORS INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR, p. 2

6.      As a result of the foregoing Procedures, Links has determined that it has no conflicts with Debtor, their insiders and significant creditors of Debtor.

7.      Links has identified the following pre-existing relationships with Debtor, their insiders and significant creditors:

    a.   In approximately 2003, while I was employed by a prior employer, I met with Jean-Pierre Boespflug in connection with his effort to finance the acquisition of Tamarack Resort. My prior employer did not participate in the financing of the acquisition of Tamarack Resort;

    b.   In approximately 2006, while I was employed by a prior employer, I made several site visits to the Tamarack Resort and I met with several representatives of Credit Suisse and Mr. Boespflug in connection with Debtor's effort to recapitalize Tamarack Resort. My prior employer did not participate in the recapitalization of the Facility;

    c.   I have no ongoing relationship with my prior employer and have no knowledge of their relationship, if any, with Debtor's creditors. To my knowledge, my prior employer has no economic interest in Tamarack Resort.

    d.   Sidley Austin (counsel to Credit Suisse in this matter) was transaction counsel to my prior employer for several transactions while I was an employee. I have not worked with Sidley Austin on any matter since January 1, 2008.

    e.   Starting in early 2008, Links, alone and together with others, has met in person and telephonically with members of the loan syndicate to discuss Tamarack Resort and its potential engagement by the Debtor as responsible officer;

    f.   In late 2009 and early 2010, I served in a brief advisory capacity in an effort to resolve a dispute involving a member of the loan syndicate that is subject to confidentiality. The dispute was unrelated to this matter. Amounts billed in respect of such matter represent less than 1.0% of Links' revenue for 2009 and 2010.

DECLARATION AND DISCLOSURE STATEMENT FOR LINKS REALTY ADVISORS INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR, p. 3

8.      Neither I, Links, nor any member, counsel or associate thereof, insofar as I have been able to ascertain, has any current connection with the Debtor, its creditors, or any other party-in-interest herein, or their respective attorneys, other than as mentioned above.

9.      The Debtor has retained Bauer and French as bankruptcy counsel and Venable LLP as its Special Counsel and may retain other professionals in connection with this case. Links may have previously worked with such professionals, at times representing the same parties and at other times representing parties with similar interests or parties with adverse interests.

10.     As part of its practice, Links appears in cases, proceedings and transactions involving many different creditors, shareholders, attorneys, accountants, financial consultants, investment bankers and other entities, some of which may be or may represent claimants and parties in interest in these cases. Links does not represent any such entity in connection with the pending case or have a relationship with any such entity or professionals which would be adverse to the Debtor. Links, however, may represent in the future parties in interest in this case in matters that are wholly unrelated to the instant case. Links will not represent any entity other than the Debtor in this case. In addition, if Links has or hires professionals who worked at another company on this matter for any party actually or potentially adverse to the Debtor, Links will procedurally "wall off" such staff from those that work on this case.

11.     I therefore believe that both the undersigned and Links are each a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the undersigned, Links, and its partners, associates and counsel:

DECLARATION AND DISCLOSURE STATEMENT FOR LINKS REALTY ADVISORS INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR, p. 4

a.   are not creditors, equity security holders or insiders of the Debtor;

b.   are not and were not within two (2) years before the date of the filing of the petition, directors, officers, or employees of the Debtor; and

c.   do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

## LINKS' COMPENSATION

12.    Links has not received any payment from the Debtor or any other source in connection with these cases. Links intends to apply for compensation for professional services rendered in connection with this chapter 11 case on the basis described in the Motion and in the Engagement Letter, plus reimbursement of actual, necessary expenses and other charges incurred by Links, from the Debtor subject to the approval of this Court and subject to review under section 328 of the Bankruptcy Code, applicable rules of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for this District, and any other procedures as may be adopted by the Court in this chapter 11 case.

13.    It is Links' policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case.  The expenses charged to clients include, among other things, long-distance telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, and expenses for "working meals."  Links will charge the Debtor for these expenses in a

DECLARATION AND DISCLOSURE STATEMENT FOR LINKS REALTY ADVISORS INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE DEBTOR, p. 5

manner and at rates consistent with charges made generally to Links' other clients and without a

markup.


*REMAINDER OF PAGE INTENTIONALLY BLANK*

*SIGNATURE PAGE TO FOLLOW*


DECLARATION AND DISCLOSURE STATEMENT FOR LINKS REALTY ADVISORS
INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE OFFICER FOR THE
DEBTOR, p. 6

I certify under penalty of perjury that the foregoing is true and correct as set forth in this declaration. To the extent that any information disclosed herein requires amendment or modification upon further analysis or as subsequent information becomes available to me, I will submit supplemental declarations to the Court.

Dated: September __, 2010.

Michael L. Fleischer

DECLARATION AND DISCLOSURE STATEMENT FOR LINKS REALTY
ADVISORS INC., BY AND THROUGH MICHAEL FLEISCHER, AS RESPONSIBLE
OFFICER FOR THE DEBTOR

NY1DOCS1#59567

## *Links Realty Advisors, Inc.*

If this Agreement correctly sets forth the understanding between us, please so indicate by signing on the designated space below and returning a signed copy to us. If you have any questions about this Agreement, or wish to discuss these matters further, please contact Michael Fleischer at 310-246-3525.

Sincerely,

**LINKS REALTY ADVISORS, INC.**

Michael Fleischer
President

ACCEPTED AND AGREED TO AS OF
THE DATE FIRST WRITTEN ABOVE

**TAMARACK RESORT, LLC**

By:    _____
          Name:  Jean Pierre Boespflug
          Title:

Links Tamarack Engagement Letter

*Links Realty Advisors, Inc.*

If this Agreement correctly sets forth the understanding between us, please so indicate by signing on the designated space below and returning a signed copy to us.  If you have any questions about this Agreement, or wish to discuss these matters further, please contact Michael Fleischer at 310-246-3525.

Sincerely,

**LINKS REALTY ADVISORS, INC.**

_____
Michael Fleischer
President

ACCEPTED AND AGREED TO AS OF
THE DATE FIRST WRITTEN ABOVE

**TAMARACK RESORT, LLC**

By: _____     subject to approval of the courts.
    Name:  Jean Pierre Boespflug
    Title:

Links Tamarack Engagement Letter

EXHIBIT D

AMENDED AND RESTATED
LIMITED LIABILITY COMPANY AGREEMENT

OF

WESTROCK ASSOCIATES LLC,

a Delaware limited liability company

Dated effective as of December 31, 2001

15438\527609.4



principal place of business of the Company and shall be accessible to the Members in accordance with the Act.

(b)    Fiscal Year; Accounting.  The Company's fiscal year shall be the calendar year. The accounting methods and principles to be followed by the Company shall be selected from time to time by the Board.

(c)    Reports.  The Company shall provide to the Members (or, in the case of Members having a purchaser representative, to such purchaser representative) annual reports concerning the financial condition and results of operation of the Company within 90 days after the end of each fiscal year.

**SECTION 14.  Company Funds.**  The funds of the Company shall be deposited in such bank or other financial institution account or accounts, or invested in such interest-bearing or non-interest-bearing investments, as shall be designated by the Board.  All withdrawals from any such bank accounts shall be made only upon the signature of the President and Chief Executive Officer or such other duly authorized individuals as may be designated by the Board.

**SECTION 15.  Management.**

(a)    Management to be by the Board.  The business and affairs of the Company shall be managed by managers designated as a Board of Directors consisting of not less than four and not more than eight individuals (each, a "Director," and collectively, the "Directors," the "Board" or the "Board of Directors"), which Board of Directors, and each Director thereof, shall have, except to the extent specifically provided otherwise in this Agreement, all of the rights, authority, duties, obligations, liabilities and protections granted to managers under the Act.  The Board shall have authority to take any and all actions on behalf of and in the name of the Company, and to grant authority to take any and all such actions to any Directors and/or officers of the Company, without the vote or consent of any Members, except for those actions specifically identified in Section 17(b) where consent of the Members is required.  The Board shall initially have four Directors.  In addition to the three Class N Directors identified below, the fourth initial Director is Donald K. Weilmunster.  The Board may at any time by resolution add up to four more Directors and, specifically, shall, at the time the capital raise known as the PC Debt is completed, as determined by the Board in its sole discretion, add one Director to be. known as the "PC Director" and shall, at the time the capital raise known as the Class P Shares is completed, as determined by the Board in its sole discretion, add two Directors to be known as the "Class P Directors."  Each Director shall have one vote on each matter upon which the Board acts.  Directors shall receive such compensation for serving as Directors as shall from time to time be determined by the Board and shall be reimbursed by the Company for any reasonable out-of-pocket expenses incurred by them on behalf of the Company.

(b)    Election of Directors.

(i)    The holders of the Class N Shares shall, by Majority Interest thereof, nominate and elect three Directors who shall be known as the Class N Directors, and in the event of the death, disability, removal, resignation or refusal to act of any or all of the Class N Directors, the holders of the Class N Shares, to the exclusion of the holders of all other classes of Shares of the Company, shall nominate and elect a Director to fill the vacancy so created by such

thereof would be to cause the aggregate number of restricted Shares, which either may be issued or have theretofore been issued, to exceed fifteen percent (15%) of all then-outstanding Shares. The Board shall establish the vesting period and methods, purchase price, dates of grant, exercise and expiration, and all other terms and conditions for such restricted Shares, or options to purchase such Shares, in its sole discretion.

## SECTION 16. Meetings of Members.

(a)    Meetings of Members.  Meetings of Members for any proper purpose may be called at any time by any Member or Members whose Membership Interests equal or exceed ten percent (10%) of all Shares.  The Company shall give written notice of the date, time, place and purpose of any meeting to all Members at least ten (10) days and not more than sixty (60) days prior to the date fixed for the meeting.  Notice may be waived by any Member.

(b)    Consent of Members.  Any action required or permitted to be taken at any meeting of Members may be taken by a written consent without a meeting, without prior notice and without a vote.  The written consent shall set forth the action so taken and shall be signed by Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voting.  Prompt notice shall be given to all Members who did not sign the written consent of any action taken pursuant to a written consent if the written consent is signed by less than all of the Members.

## SECTION 17. Membership Voting.

(a)    One Vote Per Share.  The affirmative vote or written consent of a Majority Interest of all Shares, or of each Class of Shares when specifically provided for in this Agreement, shall decide matters properly brought before the Members except as otherwise provided herein.  All holders of the PC Debt shall have, until such time as the PC Debt is converted to Class N Shares or Class P Shares, the same rights to vote on matters as are provided to all other Members pursuant to this Agreement, with such voting to be conducted under the formula set forth in Section 15(b)(ii).

(b)    Actions Requiring Member Approval.  The affirmative vote or written consent of a Majority Interest of all Shares shall be required to approve the following matters:

(i)    The dissolution or winding up of the Company;

(ii)    The merger or consolidation of the Company;

(iii)    The sale, transfer, contribution, exchange, lease or other disposition or transfer of all or substantially all of the assets of the Company in a manner that would effectively end the Company's efforts to complete the Project; and

(iv)    The issuance of restricted Shares pursuant to Section 15(h) representing more than 15% of all then-outstanding Membership Interests to employees, consultants or others.

**SECTION 18.  Limitation of Liability, Indemnification and Exculpation.**

(a)    Limitation of Liability.  The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member or Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Director.  The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or the management of its affairs under this Agreement or the Act shall not, of itself, be grounds for imposing such personal liability on a Member or a Director.

(b)    Indemnification.  The Company shall indemnify, in accordance with and to the full extent now or hereafter permitted by law, any Person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including, without limitation, an action by or in the right of the Company) by reason of the fact that such Person is or was a Member, Director manager, officer, employee or agent of the Company (and the Company shall so indemnify a Person by reason of the fact that such Person is or was serving at the request of the Company as a director, trustee, Member, manager, partner, officer, employee or agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise), against any liabilities, damages, losses, expenses (including, without limitation, attorneys' fees and expenses and any other costs and expenses incurred in connection with defending such action, suit or proceeding), judgments, fines and amounts paid in settlement actually and reasonably incurred by such Person in connection with such action, suit or proceeding if such Person acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Company unless such Person acted fraudulently or with gross negligence or willful misconduct, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful.  The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption (a) that the Person did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the Company or fraudulently or with gross negligence or willful misconduct, or (b) with respect to any criminal action or proceeding, that the Person had reasonable cause to believe that his or her conduct was unlawful.  "Other enterprise" shall include employee benefit plans; references to "fines" shall include any excise taxes assessed on a Person with respect to an employee benefit plan; and references to serving at the request of the Company shall include, without limitation, any service as a Member, manager, officer, employee or agent of the Company or any other entities in which it has an ownership interest which imposes duties on, or involves services by, such Member, manager, partner, officer, employee or agent with respect to an employee benefit plan, its participants or beneficiaries.

(c)    Expenses.  Expenses (including, without limitation, attorneys' fees and expenses) incurred by a Member, Director or officer of the Company in defending a civil, criminal, administrative or investigative action, suit or proceeding shall be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the Member, Director or officer to repay such amount if it shall ultimately be determined that such Member, Director or officer is not entitled to be indemnified by the Company under this Section 18 or under any other contract or agreement between such Member, Director or officer and the Company.  Such expenses (including attorneys' fees) incurred by

employees or agents of the Company or persons serving other entities at the request of the Company may be so paid upon the receipt of the aforesaid undertaking and such terms and conditions, if any, as the Board deems appropriate.

(d)    Not Exclusive. The indemnification and advancement of expenses provided by this Section 18 shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any by-law, agreement, vote of Members or otherwise, both as to action in such Person's official capacity and as to action in another capacity while holding such office, and shall continue as to a Person who has ceased to be a Member, manager, Director, partner, officer, employee or agent and shall inure to the benefit of the successors, assigns, heirs, executors and administrators of such a Person.

(e)    Insurance. The Company may purchase and maintain insurance on behalf of any Person who is or was a Member, manager, Director, partner, officer, employee or agent of the Company, or is or was serving at the request of the Company as a director, trustee, Member, manager, partner, officer, employee or agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such Person and incurred by such Person in any such capacity, or arising out of such Person's status as such, whether or not such Person would be entitled to indemnity against such liability under the provisions of this Section 18.

(f)    Exculpation. Notwithstanding anything to the contrary set forth in this Agreement, no Director or Member shall be liable to the Company or to any other Director or Member for monetary damages for any losses, claims, damages or liabilities arising from any act or omission of such Director or Member arising out of or in connection with this Agreement or the Company's business or affairs, but only to the extent that such act or omission (1) is not attributable to such Director's or Member's fraud, bad faith, willful misconduct or gross negligence and (2) was not clearly outside the scope of authority granted to such Director or Member under this Agreement.

## SECTION 19.  Assignment of Membership Interests and New Members.

(a)    Assignment. In addition to any other restrictions on transfer contained in this Agreement (including, but not limited to, those contained in Section 24 below), a Membership Interest shall not be assignable in whole or in part, except as expressly provided in this Agreement. Any attempted action in contravention of this Section 19 shall be void and of no force or effect. An assignment of a Membership Interest shall not entitle the assignee to become or to exercise any rights or powers of a Member until such assignee is admitted as a Member in accordance with this Agreement. An assignment shall entitle the assignee only to receive such distributions, to share in such profits and to receive such allocations of income, gain, loss, deduction, credit, tax preference and similar items to which the assignor was entitled to the extent assigned.

(b)    Limitations on Assignment. In addition to any other restrictions on transfer contained in this Agreement (including, but not limited to, those contained in Section 24 below), no Member may assign any Membership Interest (or any portion thereof or interest therein), and no Person shall become a Member, unless in the opinion of counsel selected by or acceptable to the Board, such action will not subject the Company to federal income taxation as an association

### WRITTEN CONSENT IN LIEU OF
### A SPECIAL MEETING OF THE MEMBERS OF
### TAMARACK RESORT LLC

### -AND-

### UNANIMOUS WRITTEN CONSENT
### OF THE BOARD OF
### TAMARACK RESORT LLC

The undersigned, being (i) members of TAMARACK RESORT LLC., a Delaware limited liability company (the "*Company*"), pursuant to Section 18-302 of the Delaware Limited Liability Company Act (the "*Act*") and the Amended and Restated Limited Liability Company Agreement of Westrock Associates LLC, dated effective as of December 31, 2001 (the "*Agreement*"), by this consent ("*Consent*"), do hereby waive the requirements of notice under the Act and consent to take and adopt the following resolutions and actions, (ii) all the members of the Board of Directors (the "*Board*") of the Company, do hereby consent to and adopt the following resolutions in any applicable capacity:

**WHEREAS,** the Company is a debtor in possession in a chapter 11 proceeding (Case No. 09-03911-TLM) (the "*Bankruptcy Case*") pending before the United States Bankruptcy Court for the District of Idaho (the "*Bankruptcy Court*"); and

**WHEREAS,** certain of the Company's creditors have raised concerns about the current management of the Company and the current management's involvement in negotiating a sale of the Debtor's assets as well as other, non-estate assets; and

**WHEREAS,** the Board of Directors of the Company has recommended that a transition of management is in the best interests of the bankruptcy estate and creditors and will allow the Bankruptcy Case to move toward a successful resolution; and

**WHEREAS,** the Board of Directors of the Company has approved and ratified the appointment of Links Realty Advisors, Inc.("*Links*"), by and through Michael Fleischer, as Responsible Officer (the "*Responsible Officer*") to act as and on behalf of the Company and to assume all responsibilities of the Board and the Company's management; and

**WHEREAS,** the Board of Directors of the Company has recommended (i) the appointment of Links, by and through Mr. Fleischer, as Responsible Officer to the members of the Company (the "*Members*") and requested that the Members approve certain actions in connection therewith, and (ii) it is in the best interest of the Company and its stakeholder to negotiation and approve of a sale of all or substantially all of the Company's assets; and

**NOW THEREFORE, BE IT**

**1.**    **Approval of Appointment of Responsible Officer**

**RESOLVED,** the Unanimous written consent of the Board of Directors of the Company dated August 12, 2010 is hereby ratified; and it be further

**RESOLVED,** that the Members hereby approve, ratify and confirm the appointment of Links, by and through Mr. Fleischer, as Responsible Officer, effective upon the Bankruptcy Court's approval thereof; and be it further



**RESOLVED**, that the Members hereby agree that they shall not interfere, directly or indirectly, with duties and responsibilities of the Responsible Officer, and that such Members will permit the Responsible Officer to act as and on behalf of the Company in all respects and to assume all responsibilities of the Board and the Company's management without interruption.

2.    **Approval of Delegation of Authority to Sell Company Assets**

**RESOLVED**, that the Members hereby vote unanimously to approve, ratify and confirm the delegation of all their authority and right to pursue the sale, transfer, or other disposition of all or substantially all of the Company's assets to Links, by and through Mr. Fleischer; and be it further

**RESOLVED**, that the Members hereby approve, ratify and confirm the delegation of their authority and right to approve the sale, transfer, or other disposition of all or substantially all of the Company's assets to the ResponsibleOfficer.

3.    **General Authorization, Ratification and Approval.**

**RESOLVED,** that in addition to and without limiting the foregoing, the Responsible Officer is hereby authorized, directed and empowered to take or cause to be taken on behalf of the Company such further action, to negotiate or enter into such other agreements, to execute such documents, to make such commitments, and to pay such fees, expenses and disbursements as he deems necessary or appropriate in order to effect the purpose and intent of the foregoing resolutions (as conclusively evidenced by the taking of such action or the execution and delivery of such instruments and documents, as the case may be), and all legal actions heretofore taken by the officers and agents of the Company in connection with the subject of the foregoing resolutions be, and hereby are, approved, ratified and confirmed in all respects as the act and deed of the Company; and be it further

**RESOLVED,** that all legal actions taken by the directors, officers, employees, agents and representatives of the Company and of any person(s) designated and authorized to act by the Board of Directors or an officer of the Company, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to this Consent, are hereby severally ratified, confirmed, approved and adopted in all respects as the acts of the Company.

This Consent may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and in the same document.  Facsimile signatures on this Consent may be accepted in lieu of original signatures.

*(Signatures on the following page)*

### Unanimous Written Consent
### of the
### Board
### of
## TAMARACK RESORT LLC

THE UNDERSIGNED, being all the members of the Board of Directors (the "Board") of Tamarack Resort LLC, a Delaware limited liability company (the "Company"), do hereby consent to and adopt the following resolutions:

WHEREAS, the Company is a debtor in possession in a chapter 11 proceeding pending before the United States Bankruptcy Court for the District of Idaho (the "Bankruptcy Court"); and

WHEREAS, the Company has an immediate need for financing; and

WHEREAS, Company and its professionals have sought financing from several alternative sources; and

WHEREAS, Borrower has negotiated a term sheet for debtor-in-possession financing (the "Loan") with Credit Suisse as the Agent, a copy of which is attached hereto as Schedule 1; and

WHEREAS, the potential Loan is the best financing proposal available to the Company; and

WHEREAS, the Loan (i) is to be secured by, among other things, a first priority priming lien on almost all of the Company's property; and (ii) requires that certain steps be taken to market and sell the Company's assets and change the Company's management; and

WHEREAS, the Loan will require, among other things, the resignation of each member of the Board and the Company's management, and the appointment of a person (the "Responsible Officer") to assume all responsibilities of the Board and the Company's management; and

WHEREAS, the Company wishes to grant an individual authority to execute and deliver all documents and take all actions on behalf of the Company in connection with the Loan and to evidence its consent to the Loan, including, without limitation, appointment of the Responsible Officer.

NOW, THEREFORE, IT IS RESOLVED, that each person listed below (each an "Authorized Signatory") acting singularly be, and each of them hereby is, authorized to execute and deliver, on behalf of the Company, all agreements, documents and instruments in connection with the Loan Transaction, including, without limitation, the appointment of the Responsible Officer, as required in connection with, or consistent with, the Loan, and accepting the resignation of the Company's directors and officers (collectively, the "Authorized Documents"):

| Person | Title |
|--------|-------|
| Jean-Pierre Boespflug | Authorized Signatory |

FURTHER RESOLVED, on behalf of the Company and on behalf of all directors and officers, the Company hereby consents to the Loan and hereby approves, without limitation, the execution, delivery and performance on behalf of the Company and its officers and directors, as applicable, as their respective interests and obligations may arise, all of the obligations pursuant to the Authorized Documents; and

#5B493_v1


EXHIBIT
F

FURTHER RESOLVED, that each officer and director of the Company shall be deemed to resign upon the execution of such Authorized Documents that provide for the Loan and upon the appointment of the Responsible Officer, effective upon Bankruptcy Court approval; and

FURTHER RESOLVED, that any and all action heretofore taken by Jean-Pierre Boespflug on behalf of the Company and on behalf of its officers and directors with the respect to the Loan Transaction and any other matter described in these resolutions be, and hereby is, ratified and confirmed by the Company; and

FURTHER RESOLVED, for the avoidance of doubt and to the extent necessary, the Company's Amended and Restated Limited Liability Agreement and any other Company documents shall be deemed amended to permit the appointment of a Responsible Officer and the Loan; and

FURTHER RESOLVED, that this Unanimous Written Consent may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument; and

FURTHER RESOLVED, that the Lender and its respective successors and assigns shall be entitled to act in reliance upon the matters herein contained without further inquiry of any kind and notwithstanding anything to the contrary contained in the limited liability company agreements, certificates of formation, or minutes of the Company, or in any other agreements or documents.

[signatures appear on following page]

IN WITNESS WHEREOF, the undersigned members of the Board have subscribed their names to this Unanimous Written Consent as of the 12th day of August 2010.

_____
Alfredo Miguel Afif

_____
Jean-Pierre Boespflug

_____
Jerry Barnett

_____
Richard Getty

*Directors Getty and Barnett having resigned, the above represents unanimous consent by the Board.*