David W. Newman, ISBN 8251
Mary P. Kimmel, ISBN 3786
Jonathan D. Wasden, MSBN 100563
Office of the United States Trustee
United States Department of Justice
720 Park Blvd, Ste 220
Boise, Idaho 83712
(208) 334-1300
(208) 334-9756 [Facsimile]
ustp.region18.bs.ecf@usdoj.gov

Attorneys for the United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | | |
|---|---|---|
| In re: | ) | Case No. 09-03911-TLM |
| | ) | |
| TAMARACK RESORT, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR ENTRY OF ORDER (I) AUTHORIZING POST-PETITION FINANCING; (II) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL; AND (III) GRANTING ADEQUATE PROTECTION**

The United States Trustee, Robert D. Miller Jr., objects to the Debtor's Motion for Entry of Order (I) Authorizing Post-petition Financing; (II) Authorizing the Debtor's Use of Cash Collateral; and (III) Granting Adequate Protection ("Motion"), as set forth below:

1. The Motion does not comply with Federal Rule of Bankruptcy 4001(c) because a copy of the credit agreement does not accompany the Motion. The Debtor attached a "Summary of Preliminary Terms and Conditions for Debtor-In-Possession Financing" as Exhibit B to the Motion. It states "[i]t does not include descriptions of all of the terms, conditions and other provisions that are to be contained in the documentation relating to such DIP loan." (Motion,

-1-

Docket 322, p. 46)  This is not a mere technicality.  For example, while the Motion lists a number of expenses to be paid from the DIP loan, it also states: "Notwithstanding the foregoing, no portion of the Carve-Out, and no portion of any amounts approved for payment prior to an Event of Default, shall be utilized in a manner prohibited in the Use of Proceeds section of the Term Sheet."  (Motion, p. 8)  The Term Sheet, which controls over the language in the Motion, does not accompany the Motion.  Even though a copy of the loan documents do not accompany the motion, the proposed order granting the Motion includes a finding that the "terms of the Loan Documents (including the Debtor's use of cash collateral) are fair and reasonable . . . ."  (Motion, p. 27)

     2. The Motion indicates that Candlewood Investment Group or its "affiliates" will finance 50% to 100% of the loan.  (Motion, p. 5)  It is unclear what relationship this entity has to Credit Suisse or other pre-petition secured creditors.  Schedule 1 attached to the Summary of Preliminary Terms contains a chart of the DIP Lenders which should list the names of the lenders and the "Commitment Amount" from each lender.  The chart is blank.  The proposed order, attached as Exhibit A to the Motion, states the Debtor will be authorized to obtain the loan from Credit Suisse.  (Motion, p. 20)  The motion should fully disclose the lenders' identities.

     3. The Motion seeks superpriority secured financing for a loan in the principal amount of $2,000,000.  This can only be granted if existing secured creditors, whose collateral may be affected, are given adequate protection.  11 U.S.C. § 364(d)(1)(B).  The Debtor bears the burden of proof on this issue.  11 U.S.C. § 364(d)(2).  The Debtor asserts that the other secured creditors will be adequately protected because the loan proceeds will be used to winterize and otherwise maintain the Debtor's ski resort and to make ground lease payments to the State of Idaho Land

Board.  Further, because the Motion fails to identify all of the secured creditors, it is unclear whether they have been given notice of the Motion and an opportunity to be heard on this issue. L.B.R. 4001.1(b)(5).  The Motion indicates there are various, unnamed, pre-petition lenders owed at least nearly $300,000,000.  (Motion, p. 3)  Credit Suisse acts as the agent for these lenders.  (Id.)  The Motion also indicates that "numerous other parties have allegedly acquired liens against the Debtor's assets" and that certain lien priority issues are currently being adjudicated in a state judicial foreclosure action.  The Motion fails to identify all of these parties. It, therefore, fails to indicate whether they have been given notice of the Motion.[1]

    4.  If the DIP loan is approved, it appears the Debtor may soon default.  The maturity date is only six months from the "Closing Date."  (Motion, p. 6)  "Closing Date" is defined as a date on or before October 29, 2010.  (Motion p. 53)  Six months is particularly short where the Debtor has made no showing it will have the ability to repay the DIP loan.  While the Debtor will be required to propose a Chapter 11 plan, this does not demonstrate a sale will occur.  This is particularly true where it appears that Credit Suisse will either need to credit bid or agree to accept a sale for less than what is owed.  The loan will come due even sooner if there is a default. (Motion, p. 6)  A default is defined to include the Unsecured Creditors' Committee seeking standing to file or filing a complaint or taking other action against the DIP Agent or DIP Lenders or filing an objection to their claims or filing a pleading seeking to affect their claims or liens on collateral Default.  (Motion, p. 61)

---

[1] "Given the Debtor was a resort under construction during the pre-petition period, there are many materialmen, architects, construction entities, and utilities which have also asserted various statutory and other liens against the Debtor's assets, which asserted liens are not described herein.  Liens have also been asserted for unpaid rent and personal property taxes." (Motion, p. 4)

5. The DIP loan may grant the lenders a lien in the bankruptcy estate's possible causes of action against the lenders. *See* L.B.R. 4001.1(b)(12) (adequate notice and cause must be shown before approving such a provision). The Motion indicates the "DIP Agent, for the benefit of the DIP Lenders, will receive a fully perfected first priority security interest in all pre-petition and post-petition assets of Borrower other than as expressly set forth herein (the "Collateral") including without limitation all rights, claims, and other causes of action of action of Borrower's estate (including any actions asserted by Borrower or any subsequently appointed trustees or representative of Borrower's estate under any section of the Bankruptcy Code) . . . however, that the Collateral shall not include any claims, defenses, causes of action or rights as arise under sections 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code." There is no disclosure of what causes of action the Debtor might have.

6. The proposed DIP loan contains the following additional provisions which should be scrutinized by the Court under which under Local Bankruptcy Rule 4001.1 or otherwise:

> A. Lifting of the automatic stay without further order of the court after a ten-day notice of default. (Motion, p. 8)
>
> B. A provision that limits the Debtor's discretion in formulating a plan. The summary of terms attached to the Motion indicates that the Debtor will be required to file a plan of reorganization "acceptable to the DIP Agent" within 60 days of the closing date. (Motion, p. 57) It requires that the plan include "waivers and release of any and all claims of Borrower and its bankruptcy estate arising from or related to the Pre-Petition Lenders' and Pre-Petition claims, lines, priority, actions or inactions . . . ." (Motion, p. 57)

C. Releases of the lender's liability and waivers of causes of action. The Motion states "The DIP Order contains certain provisions that limit the estate and parties in interest with respect to investigation of or challenges to the validity, priority and perfection of the Pre-petition Lenders' liens." (Motion, p. 322) The Motion indicates that one of the terms of the loan is: "No Insider Parties shall engage in or support any challenge to the validity, perfection, priority, extent or enforceability of the DIP Loan of the Pre-petition Obligations or the liens on or security interest in the assets of Borrowers securing the DIP Loan or the Pre-Petition Obligations, including without limitation seeking to equitably subordinate or avoid the liens securing the Pre-Petition Obligations, or engage in or support any investigation or assertion of any claims or causes of action (or supporting the assertion the same) against (X) the DIP Lenders, the DIP Agent and/or the Legal Arranger, (y) the Pre-Petition Agents and/or the Pre-Petition Lenders." (Motion, p. 10)

D. The proposed order irrevocably waives the Debtor's rights under 11 U.S.C. §§ 506(c), 552 and 726 as to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders' collateral. (Motion, p. 40) The proposed order also provides that is shall be binding on any trustee or other fiduciary appointed for or

on behalf of the Debtor's estate.  (Motion, p.  24)

Date: October 7 , 2010                ROBERT D. MILLER JR.
United States Trustee

/s/ David W. Newman
DAVID W. NEWMAN
Assistant United States Trustee
Attorney for the
United States Trustee
[Non ECF e-mail address
david.w.newman@usdoj.gov]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 7, 2010, I caused the foregoing document to be filed with the Court's CM/ECF system which causes a copy of the foregoing to be served by electronic means on the parties reflected on the Notice of Electronic Filing.

**Debtor's counsel**
Randal J. French

**Creditor's Committee Counsel**
David Philip Gardner
Nancy L. Isserlis

AND I FURTHER CERTIFY that on such date I caused to be served the foregoing document on the following non-CM/ECF Registered Participants via first class mail, postage prepaid addressed as follows or on the attached Mailing Matrix:

**Debtor**
Tamarack Resort LLC
311 Village Drive
PMB 3026
Tamarack, ID 83615

**Debtor's counsel**
Jorian Rose
Venable LLC
1270 Avenue of the Americas
New York, NY 10019

Date: October 7, 2010                         /s/ David W. Newman
                                              DAVID W. NEWMAN