Randall A. Peterman, ISB No. 1944
MOFFATT, THOMAS, BARRETT, ROCK &
 FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
rap@moffatt.com
23389.0000

Elizabeth W. Walker, California State Bar No. 113545
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone (213) 896-6000
Facsimile (213) 896-6600
ewalker@sidley.com

Attorneys for Credit Suisse AG, Cayman Islands Branch
(formerly known as Credit Suisse, Cayman Islands Branch)

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>TAMARACK RESORT, LLC,<br><br>   Debtor. | Case No. 09-03911-TLM<br>Chapter 11 |

**CREDIT SUISSE AG'S MOTION FOR AN ORDER CONVERTING THE DEBTOR'S CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, OR ALTERNATIVELY DISMISSING THE DEBTOR'S CHAPTER 11 CASE**

Credit Suisse AG, Cayman Islands Branch (the "Agent"), (formerly known as Credit Suisse, Cayman Islands Branch), hereby submits this motion (the "Motion") for entry of an order pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), converting the chapter 11 case of the above-captioned debtor in possession (the "Debtor") to a case under chapter 7 of the Bankruptcy Code, or, in the alternative, dismissing the Debtor's chapter 11 case.[1]  This Motion is necessitated by the fact that, since converting its case to chapter 11, the Debtor: (i) has operated at a substantial and continuing loss and is clearly administratively insolvent, and its administrative insolvency is accelerating with the passage of time; (ii) has grossly mismanaged its estate; (iii) has failed to maintain appropriate insurance; and (iv) has used the Agent's cash collateral (as defined in § 363(a) of the Bankruptcy Code, "Cash Collateral") without consent and with deliberate disregard for the requirements of the Bankruptcy Code.  Accordingly, and for the reasons more fully set forth below, the Agent respectfully requests that this Court grant the Motion.

I.

## PRELIMINARY STATEMENT

Since converting its case to chapter 11 in April 2010, the Debtor has squandered cash, mismanaged its estate, and operated at a substantial and continuing loss.  As this Court has recognized, "Tamarack, in this chapter 11, has always had inadequate funds with which to operate, even on a skeletal basis." (*Memorandum of Decision* at 3 (CR 366), the "DIP Denial Opinion".)  The Debtor freely admits that it does not have the liquidity to operate, let alone maintain its assets long enough to complete a sale process.  The Debtor has failed in every attempt to sell or reorganize its business, including its most recent failure to obtain financing by

---

[1] The determination of whether conversion or dismissal is in the best interests of creditors is within the Court's discretion.  11 U.S.C. § 1112(b)(1); In re Wallace, 2010 WL 378351 at *8–9 (Bankr. D. Idaho Jan. 26, 2010).

LA1 1899356    **CREDIT SUISSE AG'S MOTION TO CONVERT OR DISMISS**
2

failing to satisfy the procedural and substantive requirements of the Bankruptcy Code. (DIP Denial Opinion, *passim*.) The Debtor has not provided evidence of any viable business or realistic sale and has succeeded only in depleting the limited assets available to satisfy creditors. There is no hope of a viable reorganization, nor any advantage to liquidating under chapter 11. This case should be converted or dismissed now, so as to conserve whatever value the Debtor's assets may still have.

As this Court is familiar with the background facts surrounding the Debtor's bankruptcy case and the events leading to the original involuntary petition, they will not be repeated in detail here. (See DIP Denial Opinion, at 2–8.) The Agent's previously filed *Motion (I) to Prohibit Use of Cash Collateral and (II) for Sequestration and an Accounting* (CR 282) (the "Motion to Prohibit") is incorporated herein by reference.

## II.

## PROCEDURAL SUMMARY

On December 11, 2009, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against the Debtor (the "Petition Date"). During the pendency of the chapter 7 proceeding, on February 3, 2010, this Court entered its *Order Regarding the Amended Motion of Credit Suisse AG for Relief From the Automatic Stay* (CR 101) (the "Stay Relief Order"). The Stay Relief Order allows the state court (the "State Court") in *In re Tamarack Resort Foreclosure And Related Proceedings*, Case No. CV-08-114C, filed in the Fourth Judicial District of the State of Idaho, in and for the County of Valley (the "Foreclosure Action"), to proceed to determine the validity, priority and amount (including attorneys fees and costs) of any and all mortgages, liens, claims or interests regarding the Debtor's Real Property (as defined in the Stay Relief Order).

On April 9, 2010 (the "Conversion Date"), this Court granted the Debtor's motion to convert its case from a case under chapter 7 of the Bankruptcy Code to a case under chapter 11 of the Bankruptcy Code (CR 190). Debtor is a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On October 19, 2010, the Court entered the DIP Denial Opinion and related order, by which the Court denied the Debtor's *Motion for Entry of Order (I) Authorizing Post-Petition Financing; (II) Authorizing the Debtor's Use of Cash Collateral; and (III) Granting Adequate Protection* (CR 322) (the "DIP Financing Motion") and the Debtor's *Motion for Entry of an Order Approving the Appointment of Links Realty Advisors, Inc., By and Through Michael Fleischer, as Responsible Officer for the Debtor Effective as of September 24, 2010* (CR 323) (the "Responsible Officer Motion").

## III.

## BASIS FOR RELIEF

The Bankruptcy Code requires conversion or dismissal upon a showing of "cause," absent unusual circumstances. 11 U.S.C. § 1112(b). Section 1112(b)(1) of the Bankruptcy Code provides, in relevant part:

> [O]n request of a party in interest . . . absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1) (emphasis added).

The 2005 amendments to § 1112(b) reduced the bankruptcy court's discretion to convert or dismiss a chapter 11 case by changing "may" to "shall". "Under current § 1112(b), if a movant demonstrates cause, dismissal or conversion is now generally required." In re Wallace,

2010 WL 378351 at *3 (Bankr. D. Idaho Jan. 26, 2010); see also In re Gateway Access Solutions, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) ("Thus, the statutory language has been changed from permissive to mandatory").

Once cause has been established, conversion or dismissal is required "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of the estate." 11 U.S.C. § 1112(b)(1). It may also be possible for the party opposing conversion to prevail by satisfying the burden of proof under § 1112(b)(2)'s exception to conversion or dismissal, unless the relevant cause is continuing loss or diminution plus lack of reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(2).

As this Court has noted, § 1112(b) has been described as "linguistically difficult." In re Wallace, 2010 WL 378351 at *6 (citing 7 Collier on Bankruptcy ¶ 1112.05[2], 1112–44). In the face of the statute's difficult language, this Court has adopted the following as the appropriate interpretation of § 1112(b):

> Once "cause" has been demonstrated, the Court must convert or dismiss, unless the Court specifically identifies "unusual circumstances . . . that establish that such relief is not in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1). However, absent unusual circumstances, the Court must not convert or dismiss a case if (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time. 11 U.S.C. § 1112(b)(2); 7 Collier on Bankruptcy ¶ 1112.04[1] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev.2008).

Id. (quoting In re Orbit Petroleum, Inc., 396 B.R. 145, 148 (Bankr. D.N.M. 2008).

Section 1112(b)(4) provides a non-exclusive list of bases constituting "cause" and requiring conversion to chapter 7 or outright dismissal. See In re Wallace, 2010 WL 378351 at

*2. No fewer than four of the § 1112(b)(4) bases are present here and require the conversion or dismissal of the Debtor's chapter 11 case: (i) there are substantial and continuing losses and the absence of a reasonable likelihood of reorganization; (ii) the Debtor has grossly mismanaged this estate; (iii) the Debtor has failed to maintain appropriate insurance; and (iv) the Debtor has engaged in the unauthorized use of Cash Collateral. Further, there are no unusual circumstances establishing that conversion is not in the best interest of creditors and there is no reasonable likelihood that a plan will be confirmed within a reasonable time.

### A. The Debtor Has Suffered Continuing Losses and Has No Reasonable Prospect of Reorganization

Section 1112(b)(4)(A) provides that cause exists for conversion or dismissal where there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

The first prong of § 1112(b)(4)(A), substantial or continuing loss to or diminution of the estate, is satisfied by showing "[n]egative cash flow and an inability to pay current expenses as they come due." In re Gateway Access Solutions, Inc., 374 B.R. at 564 (citations omitted). Stated another way, "[d]iminution of the estate exists where, for example, the debtor's business has ceased . . . or the liabilities outstrip its assets." Bay Area Material Handling, Inc. v. United States Trustee (In re Bay Area Material Handling), 1996 WL 29262 at *2 (9th Cir. Jan. 25, 1996). As described in Collier, if the debtor "is operating with a sustained negative cash flow after the commencement of the case, these facts are sufficient to justify a finding of substantial or continuing loss to . . . the estate." 7 Collier on Bankruptcy, ¶ 1112.04[6][a][i] (16th ed. 2010) (citations omitted). The fact that an estate is administratively insolvent and is accumulating additional unpaid administrative costs supports a finding of substantial and continuing losses. In re Gateway Access Solutions, Inc., 374 B.R. at 564.

The second prong of § 1112(b)(4)(A) requires the "absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). "The issue of rehabilitation for purposes of § 1112 is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." In re Wallace, 2010 WL 378351 at *4 (citations omitted). Rehabilitation is not likely where a debtor pins its hopes on speculations about potential sales of assets or hypothetical projections of future deals. In re Gateway Access Solutions, Inc., 374 B.R. at 562-64. A debtor lacks a reasonable likelihood of rehabilitation where it "lacks income . . . lacks operating funds . . . or lacks employees, capital, or continuing revenue–generating activity." In re Bay Area Material Handling, Inc., 1996 WL 29262 at *2. Where the bankruptcy court finds no reasonable possibility of reorganization it need not delay dismissal or conversion. See Johnson v. Jem Development Co. (In re Johnson), 149 B.R. 158, 162 (9th Cir B.A.P. 1992) (affirming decision to convert less than four months after chapter 11 petition was filed).

Both prongs of § 1112(b)(4)(A) are met in this case. As for the first prong, there has been a substantial and continuing loss to the estate because the Debtor has negative cash flow and has been operating at a net loss during the course of this chapter 11 case. Even excluding unpaid post-petition administrative expenses in respect of professional fees for the Debtor's and the Committee's retained professionals, unpaid real and personal property taxes, and unpaid LID assessments, the cumulative net operating loss of the Debtor is $18,101. (*Chapter 11 Monthly Operating Report for August 2010* (CR 332) at 3 (the "August MOR").) Adding the Debtor's currently disclosed unpaid, and mostly past-due, postpetition administrative expenses in the amount of $94,194.88 (see August MOR at 14) results in a substantially greater net operating loss of $112,295.88. Moreover, this figure still does not include all unpaid post-petition

administrative claims, as the fees for services rendered by Venable LLP, CBRE, and counsel to the Official Committee of Unsecured Creditors have yet to be disclosed and are not yet reflected in the August MOR or any of the Debtor's prior monthly operating reports. The Debtor has already admitted that it has no ability to pay these professionals, and that the Debtor "essentially, can't do anything, can't advance the process" in its current financial state. (October 13 Transcript (CR 373) at 37:20-38:1) (the "October 13 Transcript", a copy of which is attached as Exhibit A to the accompanying Declaration of Elizabeth W. Walker in support of the Motion (the "Walker Declaration").

In addition, the reported net loss figure does not include the Debtor's significant unpaid post-petition real and personal property taxes and assessments that are likely to be asserted as administrative claims. These unpaid amounts are reflected in the recently filed governmental proofs of claim filed by Valley County in respect of unpaid real and personal property taxes, which reflects $268,536.21 in unpaid real property taxes as of July 19, 2010 (Valley County proof of claim filed October 26, 2010, as Claim No. 74), and $78,747.57 in unpaid personal property taxes as of July 19, 2010 (Valley County proof of claim filed October 26, 2010, as Claim No. 75).

The statements of counsel to North Lake Recreational Sewer and Water District ("North Lake") at the hearing on the DIP Financing Motion further underscore the significance of the Debtor's unpaid postpetition LID obligations. At that hearing, North Lake's counsel informed the Court that the Debtor has an unpaid post-petition LID assessment in the amount of $1,848,000, and owes no less than $20,500 on account of past due post-petition operation and maintenance assessments. (October 12 Transcript (CR 372), at 18:12-19:5) (the "October 12 Transcript", a copy of which is attached as Exhibit B to the Walker Declaration). The Debtor

LA1 1899356         **CREDIT SUISSE AG'S MOTION TO CONVERT OR DISMISS**
8

admits that it does not have the ability to satisfy these post-petition LID assessments. (October 13 Transcript, at 22:10-16).

There is no question but that the Debtor's losses are substantial and have been continuing since the Conversion Date, and that the Debtor is administratively insolvent in amounts approaching or exceeding $2 million (and perhaps substantially more than that, depending upon the amount of the undisclosed post-petition fees and expenses fees incurred by estate professionals). The Debtor's losses and administrative insolvency will only accelerate with the passage of time, if this case is not converted or dismissed now.

As for the second prong of § 1112(b)(4)(A), there is no reasonable likelihood of rehabilitation in this case. The Debtor freely admits that in its present financial state it "will not be able to winterize or maintain its assets or administer this chapter 11 case." (DIP Financing Motion ¶ 1.). The Debtor is not operating, it lacks the resources required to maintain its assets and fund a chapter 11 reorganization or sale process (DIP Financing Motion ¶ 30), and it has "no ability to generate cash" (DIP Denial Opinion at 21).

This chapter 11 case has moved beyond the embryonic stage and the Debtor has had more than a reasonable opportunity to achieve rehabilitation. Despite this opportunity, the Debtor has been unable to achieve anything close to a reasonable likelihood of rehabilitation. Instead, during the Debtor's unfocused campaign of speculative sale opportunities and DIP financing motions, the value of assets available to pay creditors had eroded and the Debtor's losses have mounted. Therefore, cause exists to convert this case to a case under chapter 7 of the Bankruptcy Code or to dismiss this case entirely.

Liquidation of the Debtor's assets is the only reasonable course for this case to take, and it can be done more cheaply and efficiently by a chapter 7 trustee, or by the State Court

in the Foreclosure Action, than by the Debtor in this chapter 11 case. The Debtor, through Mr. Boespflug, has admitted as much, stating at the hearing on the DIP Financing Motion that, without the proposed DIP financing, the Debtor's assets would be liquidated in chapter 7 or in the Foreclosure Action. (October 12 Transcript, at 62:23–63:7).

### B.  The Debtor Has Grossly Mismanaged its Estate

"All creditors are entitled to a DIP bound to the full performance and accountability required by the Code." (DIP Denial Opinion at 40.) A debtor in possession owes fiduciary duties to its creditors and is obligated to follow the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the United States Trustee Guidelines (the "UST Guidelines"). In re Wallace, 2010 WL 378351 at *4 (Bankr. D. Idaho Jan. 26, 2010).

The failure by a debtor to observe its fiduciary duties or meet the requirements of the Bankruptcy Code, the Bankruptcy Rules and the reporting required by the UST Guidelines is gross mismanagement, which is cause for the conversion or dismissal of a chapter 11 case pursuant to § 1112(b)(4)(B) of the Bankruptcy Code. Id. at *4–5. Gross mismanagement also exists where a debtor in possession fails to maintain an effective corporate management team that is focused on successful reorganization. In re Gateway Access Solutions, Inc., 374 B.R. 556, 564–66 (Bankr. M.D. Pa. 2007).

In this case, the Debtor has grossly mismanaged its estate both by failing to maintain an effective corporate management team and by failing to observe its fiduciary obligations and Bankruptcy Code and reporting requirements. The Debtor's "management team," consisting entirely of Jean-Pierre Boespflug (Responsible Officer Motion ¶ 15), has been entirely ineffective. As the Debtor admits, "Mr. Boespflug . . . has not been successful in building consensus among the Debtor's creditors to support a potential sale transaction without new management." (Responsible Officer Motion ¶ 15.) Mr. Boespflug has been unsuccessful in

his haphazard attempts at rehabilitation of the Debtor, in part, because there is no confidence among creditors that he is acting in their best interest.

Mr. Boespflug is a guarantor of certain of the Debtor's obligations and certain other obligations owed by non–debtor entities, such as West Mountain Golf, LLC ("WMG"). Throughout this chapter 11 case, Mr. Boespflug appears to have taken or proposed to take actions that would potentially reduce his guaranty exposure, at the expense of the interests of the Debtor's creditors. Although the Agent has not undertaken a full investigation of this conduct, at least one example of this self–dealing behavior is known. As part of its unauthorized use of cash collateral, the Debtor made payments to WMG in an apparent attempt to minimize the guaranty exposure Mr. Beospflug has to WMG's lender, Pacific Continental Bank. (Motion to Prohibit at 8–9 n.5.)

The Debtor has also engaged in gross mismanagement by failing its obligation of financial reporting imposed by the UST Guidelines. The UST Guidelines require debtors to file fulsome monthly operating reports ("MOR") no later than 20 days after the end of the month (the 20-day deadline is also reflected on the face of the MOR form itself). Each and every MOR in this case has been significantly late: the April MOR (CR 253) was 20 days late; the May MOR (CR 268) was 11 days late; the June MOR (CR 288) was 14 days late; the July MOR (CR 308) was 20 days late; and the August MOR (CR 332) was 10 days late. The September MOR was required to have been filed by no later than October 20, 2010, but has not yet been filed. The significant tardiness of the Debtor's financial reporting has hampered the ability of creditors to understand the Debtor's current financial position, evidences a lack of concern on the part of the Debtor for the UST Guidelines and the bankruptcy process, and is further evidence of the Debtor's gross mismanagement. See In re Wallace, 2010 WL 378351 at *4–5.

Moreover, the MORs filed in this case have been at best deficient, and at worst fraudulent or misleading. As the Agent previously informed this Court, on June 19, 2010, the Debtor delivered a "profit and loss" statement for the period April 7, 2010 to June 17, 2010 to the Agent's counsel. (Motion to Prohibit at 8.) This "profit and loss" statement identified $128,843.17 in expenditures including: (i) payments to Friends of Tamarack (an entity made up of the Debtor's insiders) in April and May 2010 totaling $21,000; and (ii) payments to WMG totaling $38,667 for maintenance of non–debtor property (a golf course upon which WMG's lender has initiated foreclosure proceedings (CR 104)).

These payments, made to insiders or made on behalf of non–debtors, were not properly disclosed. Despite over $100,000 in expenditures, the April MOR lists operating expenses as $0.00 and the May MOR discloses only $10,062.47 in operating expenses for "utilities" and "maintenance and security". Belatedly, in the June MOR, the Debtor disclosed substantial operating expenses of $91,923, although no real detail was provided, and the check register included in the MOR indicates that most of the expenses were actually incurred in April and May. (June MOR at 11.) The Debtor's failure to meet the minimum requirements of financial reporting is gross mismanagement. The reporting failure is heightened by the fact that this Court, the United States Trustee and creditors were unaware of significant payments made to insiders or on behalf of non–debtors. In addition, the MORs fail to disclose, as they are required to, all of the unpaid fees and expenses owed to the Debtor's retained professionals, including Venable LLP. Only the unpaid amounts owing to the Debtor's general bankruptcy counsel, Bauer & French, are disclosed. (See, e.g., August MOR at 2, 14.) Nor do the MORs disclose the substantial unpaid post-petition real and personal property taxes in this case, another category for

which disclosure is required on the face of the MOR. (See, e.g., August MOR at 2 (line item for "Post-petition Taxes Payable" is left blank).)

In addition, the Debtor has grossly mismanaged its estate by failing to satisfy the governance requirements of its own organizational document. The Debtor's operating agreement requires that the Debtor maintain a board of directors consisting of not less than four directors. (Responsible Officer Motion ¶ 12.) And yet, the Debtor admits that it has been operating with only two directors. (Responsible Officer Motion ¶ 14.) As this Court noted, it is questionable whether the actions of the two-member board of directors have been property authorized under the Debtor's governance document. (DIP Denial Opinion at 15 n.34.)

Finally, the Debtor has grossly mismanaged its estate by ignoring the requirements of the Bankruptcy Code. As discussed below, and detailed in the Motion to Prohibit, the Debtor engaged in the unauthorized use of cash collateral in violation of § 363(c)(2) of the Bankruptcy Code for months. For all of these reasons, cause exists to convert or dismiss this case based on the Debtor's gross mismanagement of its estate.

### C. The Debtor has Failed to Maintain Appropriate Insurance

Pursuant to § 1112(b)(4)(C), cause exists to convert or dismiss where the debtor fails to "maintain appropriate insurance that poses a risk to the estate or to the public." 11 U.S.C. § 1112(b)(4)(C). Cause under § 1112(b)(4)(C) is found where the debtor has not insured or has significantly under-insured its assets against damage or destruction. In re Blixseth, 2009 WL 1525994 at *5 (Bankr. D. Mont. May 29, 2009). In this case, the Debtor has significantly under-insured its assets against certain risks, and has not maintained any insurance for other categories of risks. Further, all of the Debtor's remaining insurance policies are due to expire in the next three months with no funds available for renewal.

Since the conversion date, the Debtor has let two-thirds of its general liability insurance lapse. (See August MOR at 12.) The Debtor's $2 million general liability policy with Triple Crown Ins. Co. lapsed on August 1, 2010. (Id.) The Debtor is left with only $1 million in liability coverage through its NOVA policy. (Id.) One million dollars in general liability coverage is insufficient in light of the size and nature of the Debtor's property assets.

Moreover, the Debtor has allowed its coverage for environmental liabilities to lapse entirely. Prior to September 1, 2010, although not disclosed in any MOR, the Debtor had a policy with the Chubb Custom Insurance Company for coverage of $3 million against environmental liabilities. (See Email from Michael Fleischer to Megan Kane and Tad Bender, dated October 14, 2010, attached as Exhibit C to the Walker Declaration.) Upon information and belief, that policy was extended for 30 days through September 30, 2010, but was not extended beyond that date. Therefore, the Debtor has no insurance protection against potential environmental liability, subjecting its assets and estate to significant potential risks.

Finally, the Debtor's remaining four insurance policies are all set to expire in either December 2010 or January 2011, with no funding available for renewal. Mr. Boespflug stated at the hearing on the DIP Financing Motion that, without the DIP financing, there is "no possibility" of renewing the policies set to expire in December 2010. (October 12 Transcript at 62:11–17.) The inability to insure assets is yet another fact that supports immediate conversion or dismissal of this case to enable an expeditious liquidation of this estate. Cause exists to convert or dismiss this case because the Debtor has failed to maintain appropriate insurance and, accordingly, the estate and its creditors have been left at risk of significant future uninsured losses.

### D.    The Debtor Has Engaged in the Unauthorized Use of Cash Collateral

Cause to convert or dismiss a chapter 11 case exists where the debtor uses cash collateral without authorization in a manner that substantially harms at least one creditor. 11 U.S.C. § 1112(b)(4)(D); see also In re Wallace, 2010 WL 378351 at *5 (noting that unauthorized use is a basis for conversion or dismissal, but dismissing on other grounds). Section 1112(b)(4)(D) is part of the Bankruptcy Code's protections against the serious risk to recoveries from cash collateral that result when the debtor uses cash collateral without permission or court authorization. 7 Collier on Bankruptcy ¶ 1112.04[6][d] (16th ed. 2010).

Cause to convert or dismiss under § 1112(b)(4)(D) of the Bankruptcy Code is found where the movant shows unauthorized use of cash collateral and resulting harm. Id. Harm to the creditor is generally shown by diminution to the recoverable value of the collateral resulting from use of cash collateral that is more than merely incidental. Id.

As discussed in detail in the Motion to Prohibit, the Debtor has engaged in significant and repeated unauthorized use of the Agent's Cash Collateral. (Motion to Prohibit at 6–10.) During the first few months of this chapter 11 case, it became clear to the Agent that the Debtor was engaged in the unauthorized use of Cash Collateral. (Id. at 8–10.) Although the Agent is not certain of the full extent of such use, the Debtor provided evidence of its unauthorized use of no less than $101,985.33 of Cash Collateral through June 2010. (Id. at 10.)

The Agent subsequently filed the Motion to Prohibit, and negotiated with the Debtor regarding limited use of Cash Collateral. On August 27, 2010, the Court entered its *Order Authorizing Debtor's Limited Use of Cash Collateral and Granting Adequate Protection to Agent Pursuant to Bankruptcy Code §§ 105, 361, 362, 363 and 507 and Bankruptcy Rule 4001* (CR 303) (the "Cash Collateral Order") approving the limited use of Cash Collateral through September 13, 2010 as agreed to by the Agent. (DIP Denial Opinion at 7.) The Cash Collateral

Order only provided for limited use of Cash Collateral; it did not condone the Debtor's prior unauthorized use. This Court ruled that nothing contained in the Cash Collateral Order would prejudice the Agent with respect to any matter, including any prior use or misuse of Cash Collateral by the Debtor without consent. (Cash Collateral Order ¶ 15.)

Therefore, the Debtor's prior unauthorized use of Cash Collateral is cause for conversion or dismissal of this case. The Motion to Prohibit provides evidence that the Debtor used the Agent's Cash Collateral without authorization and provides evidence that such use was substantial. (Motion to Prohibit at 8–10.) The Agent has been substantially harmed by the Debtor's actions because the recoverable value of the Agent's Cash Collateral has decreased by no less than $101,985.33.

The Debtor does not currently have authorization to use Cash Collateral. The Agent authorized some minor uses of Cash Collateral after September 13, 2010, but such authorized use has terminated. Therefore, any current or future use by the Debtor of Cash Collateral is also cause for conversion or dismissal under § 1112(b)(4)(D) of the Bankruptcy Code. The Debtor's inability to use its Cash Collateral also provides further evidence that the Debtor cannot fund this chapter 11 case and that the best interests of creditors will be served by conversion or dismissal as soon as possible.

### E.    The Debtor Will be Unable to Show Unusual Circumstances or Likely Plan Confirmation

Once the movant establishes cause, the burden shifts to the debtor to prove that the "unusual circumstances" or § 1112(b)(2) exceptions apply to the otherwise mandatory conversion or dismissal. In re Gateway Access Solutions, Inc., 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007). Unusual circumstances are not defined by the Bankruptcy Code, but have been determined to be "conditions that are not common in most chapter 11 cases." In re Wallace,

2010 WL 378351 at *7 (Bankr. D. Idaho Jan. 26, 2010) (citations omitted). "Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest of creditors and the estate." Id. (finding that a contentious dispute over a creditor's claim is not an unusual circumstance). The § 1112(b)(2) exception to mandatory conversion or dismissal requires that the debtor prove the reasonable likelihood of confirming a plan within a reasonable time, and a reasonable justification or cure for the actions that led to "cause" in the first place. Id. at *7–8.

No unusual circumstances exist in this case. The immediate conversion or dismissal of the Debtor's chapter 11 case is in the best interests of creditors and the estate because the Debtor is unable to administer its case and there is no hope of rehabilitation. The Debtor's principal, Mr. Boespflug, acknowledged that if the proposed DIP loan were not approved, either conversion of this case to chapter 7 or resolution of this matter through the State Court foreclosure process would ensue. (October 12 Transcript at 63). Additionally, to the extent applicable, the § 1112(b)(2) exception cannot be invoked because there is no reasonable likelihood that a plan will be confirmed within a reasonable time and, in any event, the Debtor cannot justify or cure the actions described above that constitute "cause" for conversion or dismissal. See 11 U.S.C. § 1112(b)(2).

## IV.

## CONCLUSION

No fewer than four independent bases for cause exist to convert or dismiss the Debtor's chapter 11 case. In addition, no unusual circumstances exist that establish that conversion or dismissal would not be in the best interests of creditors and the estate, and no other exceptions to mandatory conversion or dismissal apply. Therefore, the Debtor's chapter 11 case

should be converted to a case under chapter 7 of the Bankruptcy Code, or, alternatively, the Debtor's chapter 11 case should be dismissed.

WHEREFORE, for the foregoing reasons, the Agent requests that the Court grant the Motion and enter an order (i) converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code, (ii) alternatively, dismissing the Debtor's chapter 11 case, and (iii) granting such other relief as may be just and proper.

DATED this 29th day of October, 2010.

SIDLEY AUSTIN LLP

By: *Elizabeth W. Walker*
Elizabeth W. Walker
Attorneys for Credit Suisse AG, Cayman
Islands Branch (formerly known as Credit
Suisse, Cayman Islands Branch)
