Randal J. French
BAUER & FRENCH
1501 Tyrell Lane
Post Office Box 2730
Boise, Idaho 83701-2730
Telephone (208) 383-0090
Facsimile 383-0412
E-Mail rfrench@bauerandfrench.com
  ISB No. 3032

Attorneys for Tamarack Resort, LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re: ) | |
| ) | Bkr. Case No. 09-03911-TLM |
| Tamarack RESORT, LLC, ) | Chapter 11 |
| ) | |
| Debtor-in-Possession ) | |
| ) | |

### TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF POTENTIAL CLAIMS

COMES NOW, Tamarack Resort, LLC ("Tamarack" or "TRLLC"), the Debtor-in-possession, by and through its counsel of record, Randal J. French of the firm of Bauer & French, and submit its Memorandum in Support of Motion to Approve Use, Lease and Sublease of Property of the Estate. Tamarack seeks this Court's permission to use and lease property of the estate, pursuant to 11 U.S.C. §363(b)(1). Generally, Tamarack seeks authority to lease certain real property, improvements, fixtures and equipment, and to sublease certain real property, improvements and fixtures leased from the State of Idaho, to Tamarack Municipal Association ("TMA"), a homeowners association consisting of owners of real property contained in Tamarack Resort.

For the reasons stated herein, this Court should grant this Motion and Allow Tamarack to enter into a Sub-Lease and Lease Agreement, subleasing and leasing to TMA certain property of the estate, and allow Tamarack to use the property of the estate as stated in that Agreement.

In this motion, Tamarack discusses the various and sundry documents, Agreements and Consents involved.  The language of each document, Agreement or Consent controls over any discussion contained in this Memorandum, or in the accompanying motion.  Interested parties should review each document for the specific terms and conditions of each.  The discussion contained in this motion is not intended to vary, alter or control over the language of any of those documents.

Tamarack has entered into that certain Lease and Sublease Agreement with TMA, on or about November 19, 2010.  A true and correct copy of that Sublease and Lease Agreement ("Sublease") is attached as Exhibit A to the Affidavit in Support of Motion to Approve the Use, Lease and Sublease of Property of the Estate ("Supporting Affidavit").

TMA and Tamarack have addressed the event of conversion or dismissal of the case, in Article 9, p. 10.  If the case is converted, Tamarack is to seek the chapter 7 trustee's acceptance of the Sublease.  If the chapter 11 is dismissed or the Property is removed from the purview of the U. S. Bankruptcy Court, Tamarack's efforts shall include reaffirming the Sublease.  TMA assumes the risk that the Sublease may be rejected or terminated or that its quiet enjoyment may be interrupted, disturbed or terminated by bankruptcy court orders or actions of a chapter 7 trustee.  TMA waives any claim which it may have as a result of any such order or action.  The parties further agree that conversion to chapter 7, abandonment of some or all of the estate's assets or dismissal of the bankruptcy will not be events of default under the Sublease as to either party.

The date of Commencement of the sublease is the date on which this Court approves the Sublease.  Article 2, paragraph 2.1, p. 3.  The Sublease ends not later than April 30, 2011, or on

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF POTENTIAL CLAIMS p. 2

such earlier date as the either TMA or Tamarack terminates the Sublease, pursuant to the terms o

the Sublease, or at any time the Commercial Lease of state lands is terminated.  Article 3, para.

3.1, p. 4.

The State of Idaho, by and through the Idaho Board of Land Commissioners, by the Idaho

Department of Lands, has approved and executed its Consent to Sublease.  A true and correct

copy of that Consent is attached as Exhibit B to the Supporting Affidavit.

Credit Suisse AG, Cayman Islands Branch, as administrative agent and collateral agent,

has executed a Consent of Credit Suisse to Lease/Sublease Agreement.  A true and correct copy

of that Consent is attached as Exhibit C  to the Supporting Affidavit.  CS consents to the TMA

Lease/Sublease, only, on certain terms, including securing bankruptcy court approval of the TMA

Lease/Sublease, TMA's strict compliance with the TMA Lease/Sublease and its obligations and

duties thereunder and Tamarack's providing to CS within 2 business days copies of

correspondence and notices between Tamarack and TMA, and all budgets, reports, and financial

information provided by TMA to Tamarack.

Credit Suisse AG has included, in its consent, a waiver and release of any and all claims,

defenses, and/or offsets, foreseeable and unforeseeable, known and unknown, now existing or

hereafter arising from the TMA Lease/Sublease, its performance or nonperformance, or the

consent to the TMA Lease/Sublease by CS, as agent.  Tamarack is not aware of any such claims

and does not anticipate any claims against CS arising from the TMA Lease/Sublease, its

performance or nonperformance, or the consent to the TMA Lease/Sublease by CS, as agent.

Tamarack therefore seeks approval of that waiver, release and relinquishment of any such claims

as part of the approval of this motion.

Pursuant to § 363(b)(1), and with court approval, Tamarack, after notice and a hearing,

"may use, sell or lease, other than in the ordinary course of business, property of the estate."  As

a debtor-in-possession, Tamarack has all of the rights of a trustee.  11 U.S.C. § 1107(a).

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE
USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF
POTENTIAL CLAIMS p. 3

Tamarack must demonstrate a good business reason to grant such an application." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.1983). In doing so, the court must "consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders." Id.

Judge Overstreet addressed the application of section 363(b)(1) in *In re Ernst Home Center, Inc*., 209 B.R. 974, 979 (Bkrtcy.W.D.Wash.,1997):

> Under Section 363(b)(1), Ernst may use, sell, or lease, other than in the ordinary course of its business, property of the estate. Ernst's decision to enter into the FADCO Transaction, which is outside of the normal course of its business, must be based on its reasonable business judgment. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986). The Court may approve the FADCO Transaction if Ernst has established "some articulated business justification" for the transaction. *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir.1983); *In re Walter*, 83 B.R. 14 (9th Cir. BAP 1988).

Here, allowing Tamarack to enter into this Sublease provides a variety of benefits to Tamarack and to the estate.  TMA has agreed to pay, and has already paid, $80,000 to the state of Idaho as partial consideration of the State's agreement to extend the time to assume or reject the lease of state lands, through June 30, 2011.  TMA has paid, through June 30,2011, premiums for general liability and environmental insurance policies, an estimated cost in TMA's budget of $85,000.  That is $165,000 of benefit to Tamarack.

TMA will also provide ongoing alpine ski operations and supporting equipment rental and food and beverage service.  That will support the lodging rental operations, which should enhance somewhat Tamarack's revenues.

The larger benefit is to support the ongoing marketing operations and to preserve the Estate's value as a four-season destination resort.  Tamarack believes that a buyer will be more interested in purchasing the resort operations if there is an ongoing ski hill operation.

The benefits Tamarack has identified reflect that Tamarack is exercising good business judgement and has a good reason to enter into the Sublease and Lease Agreement.  That the State

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF POTENTIAL CLAIMS p. 4

of Idaho, CS as Tamarack's major creditor, both have consented to the sublease demonstrates the

benefit to the estate that each sees in entering into this Sublease.

The State of Idaho has already agreed to extend the time during which Tamarack can

assume or reject the State Lease, Commercial Lease No. M-5042 dated June 11, 2002 for the

lease of 2,124 acres of state-owned land, reference below, to midnight, June 30, 2011.  Second

Stipulated Motion to Extend Time to Assume or Reject Unexpired Lease, Doc 424, filed

November 19, 2010.  It did so based upon an Agreement to Forbear and to Extend Time to

Assume or Reject Lease, by and between Credit Suisse AG, Cayman Islands Branch, Tamarack

resort, LLC, Tamarack Municipal Association, Inc., and the State of Idaho, Board of Land

Commissioners.  A copy of that Agreement is attached as Exhibit D to the Supporting Affidavit.

By that Agreement, CS agreed to pay, and has now paid, $290,920.51, to pay the

scheduled rent due January 1, 2010, together with late fees and interest.  CS also agreed to pay,

and has now paid, $45,000 to the state of Idaho as partial payment of the amount due January 1,

2011.  TMA agreed to pay, and has now paid, $80,000 to the state of Idaho as partial payment of

the amount due January 1, 2011.  The state of Idaho has agreed that Tamarack need not pay any

additional amounts in order to extend the time to assume or reject the lease to June 30, 2011.

### APPROVAL OF RELEASE OF CERTAIN CLAIMS

CS provided in its consent that

Neither the TMA Lease/Sublease nor the performance or nonperformance by the TMA of
any of its obligations or duties under the TMA Lease/Sublease nor the Agent's consent to
the TMA Lease/Sublease shall give rise to, for any basis for or be asserted as grounds for
any defense, offset or claim of any kind whatsoever by Tamarack against Agent or any of
the lenders under the Credit Agreements and Tamarack hereby fully and forever waives,
releases and relinquishes any and all such claims, defenses and/or offsets, foreseeable and
unforeseeable, known and unknown, now existing or hereafter arising.  Tamarack further
acknowledges and agrees that neither this Consent nor the TMA Lease/Sublease nor any
of Agent's Agreements herein or with respect to the TMA Lease/Sublease constitute a
waiver, settlement satisfaction or relinquishment of any claims, defenses, rights or
remedies of Agent or any of the Lenders under the Credit Agreements.

Consent of Credit Suisse to Lease/Sublease Agreement, p. 2, para. 4.

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE
USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF
POTENTIAL CLAIMS p. 5

Tamarack is not aware of any such claims and does not anticipate any claims against CS arising from the TMA Lease/Sublease, its performance or nonperformance, or the consent to the TMA Lease/Sublease by CS, as agent.  Tamarack therefore seeks approval of that waiver, release and relinquishment of any such claims as part of the approval of this motion.

> "In the context of approving compromises, the Court occupies the important role of ensuring that settlements between bankruptcy estates and third parties are 'fair and equitable.' " *In re White,* 08.3 I.B.C.R.---, (Bankr. D. Idaho, August 19, 2008), *citing In re A & C Props.,* 784 F.2d at 1381; *Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc .),* 292 B.R. 415,420 (9th Cir. B.A.P. 2003). In determining whether a proposed compromise is fair and equitable, the Court must consider:
>
> (a) the probability of success by the trustee in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection of any judgment recovered by the trustee; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.
>
> *In re A & C Props.,* 784 F.2d [1377] at 1381 [(9th Cir. 1986)].

*In re Courtney,* 2008 WL 4181183 (Bankr. D. Idaho)(Pappas, J.).  The Court exercises its discretion in determining whether to approve a compromise.  *In re Walsh Construction, Inc.,* 669 F.2d 1325 (9th Cir.1982).  The Court is to "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Pacific Gas & Electric Co.,* 304 B.R. 395, 417 (Bankr. N. D. Cal.2004); *In re A & C Properties, supra.*

Here, there is no suggestion that any cause of action now exists arising out of CS's Consent, on or about November 19, 2010, at the request of Tamarack and others, to Tamarack's Lease and Sublease of the Property.  Nor is it conceivable that TMA's action or inaction could give rise to a claim against CS.  The inclusion of language constituting a release of claims is evidence of extremely protective lawyering, not of a release of real, substantive claims against or defenses to claims asserted by CS arising out of its Consent or the Sublease.

However, CS' consent is specifically conditioned upon this language.  This Court should exercise its discretion to approve the release language as part of the approval of the Sublease.

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF POTENTIAL CLAIMS p. 6

Mem in Sup of Mtn to Approve Use, Lease and Sublease of Prop of Estate\nrg\112210

SUMMARY OF SUBLEASE/LEASE PROVISIONS

A.      PROPERTY SUBJECT TO LEASE AND SUBLEASE AGREEMENT.

Tamarack proposes to sublease to TMA the real property, improvements and fixtures on
that real property (the "ski hill property") which Tamarack has leased from the State of Idaho.
Sublease, p. 2, para. A; p. 3, Article1, and Exhibit A to Sublease and Lease.  The ski hill property
consists of the unexpired Commercial Lease No. M-5042 dated June 11, 2002 for the lease of
2,124 acres of state-owned land between the State of Idaho, acting by and through the State
Board of Land Commissioners ("State"), and WestRock Associates, LLC, currently known as
Tamarack Resort, LLC ("Tamarack") as amended (the "Commercial Lease Agreement"); that
certain Landlord Estoppel and Agreement dated as of May 15, 2006, between the State and
Credit Suisse, Cayman Islands Branch ("Credit Suisse"), as collateral agent for certain lenders
(the "Estoppel Agreement"); and that certain Subordination, Attornment and Non-Disturbance
Agreement between Tamarack, Credit Suisse, and the State (the "SNDA").

Tamarack proposes to lease to TMA certain real property, improvements and fixtures
which it owns, subject to existing mortgages and liens, Sublease, p. 2, para. A; p. 3, Article1, and
Exhibit B to Sublease and Lease.  That consists of approximately 54.61 acres, as more
particularly described in Exhibit B, plus portions of Lot 15, Block 19 of Tamarack Resort
Planned Unit Development Phase 1 Village, and Lots 3 and 4 of Tamarack Resort Planned Unit
Development Phase 2 Village, that contains the Canoe Grill Building, the Sports Dome Building,
and the Ski Area Maintenance Facility.  Tamarack has also granted TMA the right to access over
Tamarack Resort Property for ingress and egress to these facilities.

Tamarack proposes to lease certain equipment and personal property, including five
chairlifts (the Tamarack Express, Summit Express, Discovery, Poma and Magic Carpet), the
TechnoAlpin Snowmaking System, three 2001 Bombardier ME 275 Groomers and one 2005
Pisten Bully PB 1000 Nordic Groomer, twelve snowmobiles and seven ATVs, a 2005 Caterpillar

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE
USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF
POTENTIAL CLAIMS p. 7
Mem in Sup of Mtn to Approve Use, Lease and Sublease of Prop of Estate\nrg\112210

Skid Steer and a 2005 Caterpillar Trencher.   Sublease, p. 2, para. A; p. 3, Article 1, and Exhibit

C to Sublease and Lease.  The property identified on Exhibits B and C may be collectively

identified as the Base Property.

> B.    SUMMARY OF TERMS AND CONDITIONS

Tamarack provides this brief summary of terms and conditions of the Sublease and Lease.

Please review the Sublease and Lease for all of the terms and conditions.

Article 3, TERM AND CONSIDERATION, p. 4, identifies the term of the Sublease and

some of the consideration for the Sublease.  Pursuant to the Sublease, TMA agrees to pay, and

has now paid, $80,000 as partial consideration of the agreement of the state of Idaho to extend

the time, until midnight, Thursday, June 30, 2011, for Tamarack to assume or reject the

Commercial Lease No. M-5042 dated June 11, 2002.  Paras. 3.1 and 3.2, p. 4.

TMA agrees to pay the cost of insurance, particularly for a general liability insurance

policy and an Environmental Impairment and Pollution Policy, as required by the Commercial

Lease No. M-5402.  *Id.*  TMA has budgeted $85,000 as an estimate of the cost of appropriate

insurance.  The general liability policy shall provide liability limits of not less than the greater of

$5 million per claim or $5 million aggregate, or such coverage as is required by the State to

maintain the state Land Lease in good standing.  *Id.*  TMA shall include as additional named

insureds on each such policy Tamarack, the State and CS.  *Id.*

In Article 4, SCOPE OF AGREEMENT/TENANT'S COVENANTS, Paragraph 4.1, p. 4,

identifies the services and activities TMA is to provide.  In part, those services and activities

include providing

> alpine ski equipment rental , food and beverage services for guests;
> alpine skiing for a minimum of three days per week and a minimum of 4 days on
> specified holidays;
> operation of 2 or more chairlifts;
> management and operations staff knowledgeable about ski area operations;
> insurance as discussed above and more specifically identified in paragraph 4.8, pp. 6-7 of
> the Sublease;

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE
USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF
POTENTIAL CLAIMS p. 8

marketing for resort operations, subject to the ski area operations budget attached to the Sublease as Ex. D;
appropriate security and emergency services, satisfying the Commercial Lease and applicable insurance policies.

Paragraph 4.2 reserves to TMA the right to curtail some, any or all services if revenues are insufficient to sustain operations, relevant to the projected revenue and expenses reflected in the Budget, Ex. D to the Sublease and Lease Agreement.

In Paragraph 4.3, Tamarack retains the right to provide any recreation activity which TMA does not provide. Tamarack also retains the right to terminate the Sublease on 15 days written notice if TMA does not provide the services identified in paragraph 4.1, subject to TMA's right to commence or resume any activities within fifteen days after receiving such notice.

TMA shall be solely responsible for all costs associated with the ski operation, and agrees to secure waivers from any and all vendors and providers of any and all rights to assert liens on Tamarack's property. Paragraph 4.4. TMA shall secure acknowledgments that all vendors and providers shall have sole recourse against TMA. *Id.*

TMA shall keep and maintain the Property in good order, repair and appearance. Para. 4.5. Tamarack shall have no obligation to build or rebuild any improvements, or to make any repairs, alterations or restorations, or to make any expenditure, to maintain or repair the Property. *Id.*

Tamarack agrees to allow TMA to use the name "Tamarack Ski Resort" and "Ski Tamarack" as an assumed business name, provided that TMA clearly states that it uses these names by permission only and that TMA is not affiliated with Tamarack. Para. 4.9, p. 7.

Article 5, STATE LEASE PROVISIONS, pp. 7-8, contains twelve subparagraphs. Tamarack summarizes some of those subparagraphs here.

Para. 5.1 limits the use of the property to "Permitted Uses" under the Commercial Lease and prohibits any use that would cause the cancellation of any insurance policy. Para. 5.2

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF POTENTIAL CLAIMS p. 9

provides that the Sublease is subordinate to the State Lease, and provides that any conflict between the two will be resolved in favor of the State Lease.  TMA must comply with the terms of the State Lease.  Para. 5.3.  The Sublease does not relieve Tamarack of its primary responsibility to pay and perform the terms of the State Lease.  Para. 5.4.

Para. 5.5 provides that any violation by TMA of the State Lease is grounds for termination of the Sublease.  The State shall not be liable to TMA for any acts of Tamarack, nor subject to any defenses or offsets which TMA may have against Tamarack.  Para. 5.6.  The remaining subparagraphs require any modifications to be in writing, make any obligation of Tamarack to indemnify TMA not binding on the State, make Tamarack and not the State liable for any breach or non-compliance with the sublease; give the state the power to continue the Sublease at its option, in the event of a termination of the State Lease; limit the liability of the State for the return of any prepayments or deposits; and require TMA to return the Property to Tamarack at the expiration or termination of the Sublease in the condition TMA received it, except for ordinary wear and tear.

Article 6, SUBORDINATION AND ATTORNMENT, p. 9, addresses the respective rights of TMA and the interests of the State, CS, liens and security interests including those asserted in pending state court foreclosure action and those arising from certain Receivership Certificates; and some or all liens asserted by other parties to the state court foreclosure action.  TMA acknowledges that its rights under the Sublease shall be subordinate to any and all of those interests.

Article 7, TERMINATION, p. 9, provides the conditions under which either party may terminate the Sublease.  TMA may terminate if, despite its best efforts, the material assumptions of the Budget cannot be sustained.  *Id.*, para. 7.1  Tamarack may terminate for any breach of a material term of this agreement, on fifteen days written notice.  *Id.,* para. 7.2.

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF POTENTIAL CLAIMS p. 10

Article 8, pp. 9-10, INDEMNIFICATION AND WAIVER, provides that TMA shall save, defend and hold harmless Tamarack, the state, the holders of the Mortgage Interests and their respective shareholders, members, managers, directors, officers, employees, and certain other persons from claims arising out of TMA's operation or use of the Property, any material breach by TMA under the Sublease.  Para. 8.1, pp. 9-10.  TMA agrees to save, defend and hold harmless the same parties from any and all expenses, losses, damages or claims arising out of any personal injury or property damage occurring on the Property during the term of the Sublease, and/or arising out of TMA's conduct, omissions and/or activities on the Property.  *Id.*  TMA waives any claims that it may have against Tamarack or its estate for any costs, expenses, losses, or liability of any kind which TMA incurs in the conduct of its activities on the Property.  *Id.*, para. 8.2.

In Article 9, QUIET ENJOYMENT, POTENTIAL BANKRUPTCY IMPACTS, the parties address TMA's right to quiet enjoyment of the Property, and requires Tamarack to seek bankruptcy court approval of the Sublease, and in the event of a conversion to chapter 7, to support the chapter 7 trustee's acceptance of this Agreement.  In the event that the chapter 11 is dismissed or the Property is removed from the purview of the U. S. Bankruptcy Court, Tamarack's efforts shall include reaffirming the Sublease.  TMA assumes the risk that the Sublease may be rejected or terminated or that its quiet enjoyment may be interrupted, disturbed or terminated by bankruptcy court orders or actions of a chapter 7 trustee.  TMA waives any claim which it may have as a result of any such order or action.  The parties further agree that conversion to chapter 7, abandonment of some or all of the estate's assets or dismissal of the bankruptcy will not be events of default under the Sublease as to either party.

In Article 10, LIEN, ENCROACHMENT AND OTHER TITLE MATTERS, TMA agrees that it will not create or allow to remain, and will promptly discharge at its own expense, any lien, encumbrance attachment, title retention agreement or claim upon the property, not

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF POTENTIAL CLAIMS p. 11

Mem in Sup of Mtn to Approve Use, Lease and Sublease of Prop of Estate\nrg\112210

including the State Lease, the Sublease or any matters that existed as of the Commencement Date of the Sublease.

In Article 11, PERMITTED CONTESTS, the parties provide a mechanism by which TMA can contest any claims made against it or the Property, provide for TMA's indemnification of Tamarack as to any such contest, and provides a thirty day time limit for TMA's removal of any lien placed on the Property.

Article 12, CONDEMNATION, and Article 13, EVENTS OF DEFAULT OF TENANT, contain standard provisions as to each topic.

Article 14, LANDLORD'S RIGHT TO CURE TENANT'S DEFAULT, allows Tamarack to take any actions necessary or appropriate in the event TMA defaults. TMA must pay to Tamarack any sums Tamarack pays on behalf of TMA and all costs and expenses Tamarack incurs including reasonable attorney fees and expenses.

Article 15, RISK OF LOSS, places on TMA all risk of loss as a consequence of a variety of causes or casualties, except as otherwise provided in the Agreement. TMA further waives any claim it may have from or based on any such event or occurrence.

In Article 16, SUBLETTING AND ASSIGNMENT, Tamarack prohibits any transfer of any interest whatsoever by TMA absent the written consent of Tamarack and the State. Tamarack may withhold any consent in its sole discretion.

In Article 17, ENVIRONMENTAL MATTERS, TMA agrees to keep the Property free of Hazardous Materials "as hereinafter defined." Hazardous Materials is a term defined in Article 2, p. 3. TMA agrees to provide Tamarack prompt written notice of any claim by any person that a significant release or disposal of Hazardous Material has occurred. TMA agrees to remove, repair, clean up and/or detoxify any Hazardous Material from the Property whether required by law, "which Hazardous Material is brought upon, used, discharged, and/or disposed of on the Property during the Term of this Agreement" and whether or not TMA was responsible for the

existence of such Hazardous Material.  TMA further agrees to indemnify, save, defend and hold

harmless the same Indemnified Persons as identified in Article 8 as to any losses, liabilities,

damages, injuries, costs and expenses and claims of any kind arising out of any Hazardous

Materials on the Property.  Tamarack retains the right, but not the obligation, to enter onto the

property to insure compliance with the terms of the Lease.

Article 18, MISCELLANEOUS, addresses a variety of miscellaneous matters.

This is a brief summary of the Sublease and Lease Agreement.  Interested parties should

carefully review the Sublease and lease Agreement, the Consents of CS and the State of Idaho,

and the Agreement to Forbear, for the specific terms of each.

CONCLUSION

For the reasons stated herein, Tamarack requests that this Court enter an Order approving

the Sublease and Lease Agreement, and approving the release of claims requested by CS as part

of its consent.

RESPECTFULLY SUBMITTED this __22__ day of  November, 2010.

BAUER & FRENCH

/s/
Randal J. French of the firm, Attorney for
Debtor

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on the __22__ day of November, 2010, a true and correct copy of the foregoing was served electronically through the CM/ECF system upon:

Office of the U.S. Trustee
Washington Group Central Plaza
720 Park Blvd., Ste. 220
Boise, ID 83712-7764

Jeffrey M Wilson
Wilson & McColl
PO Box 1544
Boise, ID 83701-1544

Monte Gray
Gray Law Offices, PLLC
PO Box 37
Pocatello, ID  83204-0037

Mark D. Perison
Mark D. Perison, P.A.
PO Box 6575
Boise, ID  83707-6575

Brad A. Goergen
Graham & Dunn PC
2801 Alaskan Way Ste 300
Seattle, WA  98121-1128

Charles W. Fawcett
Skinner Fawcett
PO Box 700
Boise, ID 83701-0700

Thomas G. Walker
Cosho Humphrey,  LLP
PO Box 9518
Boise, ID  83707-9518

David T. Krueck
Trout Jones Gledhill Fuhrman, P.A.
PO Box 1097
Boise, ID 83701-1617

David Penny
Cosho Humphrey, LLP
PO Box 9518
Boise, ID 83707-9518

Terry C. Copple
Davison Copple Copple & Copple, LLP
PO Box 1583
Boise, ID 83701-1583

Jill S. Holinka
Moore Smith Buxton & Turcke, Chtd.
950 W Bannock St Ste 520
Boise, ID  83702-6118

Soo Y. Kang
Greener Burke Shoemaker P.A.
950 W Bannock St Ste 900
Boise, ID  83702-6138

Paul J. Fitzer
Moore Smith Buxton & Turcke, Chtd.
950 W Bannock St Ste 520
Boise, ID  83702-6118

Lynnette Davis
Hawley Troxell Ennis & Hawley LLP
PO Box 1617
Boise, ID  83701-1617

T.J. Angstman
Angstman, Johnson & Associates, PLLC
3649 N Lakeharbor Ln
Boise, ID  83703-6913

P. Bruce Badger
Fabian & Clendenin
215 S State St Ste 1200
Salt Lake City, UT  84111-2334

Wyatt B. Johnson
Angstman, Johnson & Associates, PLLC
3649 N Lakeharbor Ln
Boise, ID  83703-6913

Bart W. Harwood
Hall Farley Oberrecht & Blanton PA
PO Box 1271
Boise, ID 83701-1271

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF POTENTIAL CLAIMS p. 14

Suzanne M. Fegelein
Elsaesser Jarzabek Anderson Elliott &
McDonald, Chtd.
PO Box 1049
Sandpoint, ID  83864-0855

Ford Elsaesser
Elsaesser Jarzabek Anderson Elliott &
McDonald, Chtd.
PO Box 1049
Sandpoint, ID  83864-0855

Randall A. Peterman
Moffatt Thomas Barrett Rock & Fields, Chtd
PO Box 829
Boise, ID 83701-0829

Joel G. Samuels
Sidley Austin, LLP
3269 N Knoll Dr
Los Angeles, CA  90068-1517

Larry E. Prince
Holland & Hart LLP
PO Box 2527
Boise, ID 83701-2527

John R. Hammond, Jr.
Batt Fisher Pusch & Alderman LLP
PO Box 1308
Boise, ID  83701-1308

Anna E. Eberlin
Meulerup Mollerup LLP
755 W Front St Ste 200
Boise, ID  83702-5802

Arnold L. Wagner
Meuleman Mollerup LLP
755 W Front St Ste 200
Boise, ID  83702-5802

Jason G. Dykstra
Meuleman Mollerup LLP
755 W Front St Ste 200
Boise, ID  83702-5802

Kevin A. Bay
Ryan, Swanson & Cleveland, PLLC
1201 3rd Ave Ste 3400
Seattle, WA  98101-3268

Terri R. Pickens
Pickens Law, PA
PO Box 915
Boise, ID 83701-0915

John W. Kluksdal
Hepworth Janis & Brody, Chtd.
PO Box 2582
Boise, ID 83701-2582

Elizabeth W. Walker
Sidley Austin, LLP
555 W 5th St
Los Angeles, CA  90013-1010

Stephen J. Lord
Attorney At Law
800 W State St Ste 200
Boise, ID  83702-5851

William F. Nichols
Davis F. VanderVelde
White Peterson
5700 E Franklin Rd Ste 200
Nampa, ID  83687-7901

Daniel C. Green
Racine Olson Nye Budge & Bailey Chartered
PO Box 1391
Pocatello, ID 83204-1391

Kelly Greene McConnell
Givens Pursley LLP
PO Box 2720
Boise, ID 83701-2720

Kimbell D. Gourley
Trout Jones Gledhill Fuhrman Gourley, P.A.
PO Box 1097
Boise, ID  83701-1097

TAMARACK RESORT, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE
USE, LEASE AND SUBLEASE OF PROPERTY OF THE ESTATE AND COMPROMISE OF
POTENTIAL CLAIMS p. 15

Mem in Sup of Mtn to Approve Use, Lease and Sublease of Prop of Estate\nrg\112210

Kenneth C. Howell
Hawley Troxell Ennis & Hawley LLP
PO Box 1617
Boise, ID  83701-1617

Nancy L. Isserlis
Winston & Cashatt, Lawyers
250 Northwest Blvd Ste 107A
Coeur d'Alene, ID 83814-2971

David P. Gardner
Winston & Cashatt, Lawyers
250 Northwest Blvd Ste 107A
Coeur d'Alene, ID 83814-2971

Susan E. Hamlin
Deputy Attorney General
Department of Environmental Quality
1410 N Hilton St 2nd Fl
Boise, ID  83706-1253

Cindy Elliott
Elsaesser Jarzabek Anderson Elliott &
McDonald, Chtd.
PO Box 1049
Sandpoint, ID  83864-0855

Laura E. Burri
RINGERT LAW CHARTERED
PO Box 2773
Boise, ID 83701-2773

Clay Shockley
Sasser & Inglis, P.C.
PO Box 5880
Boise, ID  83705-0880

      DATED this __22__ day of November, 2010.

                    BAUER & FRENCH

                    /s/
                    Randal J. French of the firm, Attorney for
                    Debtor-in-Possession